# EXHIBIT B



City of New York, State of New York, County of New York

I, Jacqueline Yorke, hereby certify that the document "**Appendix 11 2025.04.01 - EXPEDITION SIGNFICATION - Assign. H à H devant le TJ PARIS - SEDHV SOF(503422103.1) (002)**" is, to the best of my knowledge and belief, a true and accurate translation from French into English.

_____
Jacqueline Yorke

Sworn to before me this
April 8, 2026

_____
Signature, Notary Public

WENDY POON
Notary Public - State of New York
No. 01PO0000184
Qualified in Queens County
My Commission Expires February 02, 20 27

_____
Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS
1250 BROADWAY, 32ND FLOOR, NEW YORK, NY 10001  |  T 212.400.8840  |  F 212.689.1059  |  WWW.TRANSPERFECT.COM
OFFICES IN 90 CITIES WORLDWIDE

**Exhibit B**
**Page 31**

---

**SUMMONS TO APPEAR AT A SPECIFIED TIME BEFORE THE ENFORCEMENT JUDGE**

**OF THE PARIS JUDICIAL COURT**

---

**THE YEAR TWO THOUSAND TWENTY-FIVE AND THE** [stamp:] FIRST = APRIL at [handwritten:] *9:00 ss*

**AT THE REQUEST OF:**

**SOCIETE D'EXPLOITATION ET DE DETENTION HÔTELIERE VISTA**, a simplified joint-stock company with a share capital of 100,001,000.00 euros, registered with the Paris Trade and Companies Register under number 805.264.082, with its principal place of business located at 23 rue François Ier in Paris (75008), represented by its Chairman, who is domiciled in that capacity at the aforementioned registered office

Represented by:    Baker & McKenzie A.A.R.P.I (*Association d'Avocats à Responsabilité Professionnelle Individuelle* [Lawyers in partnership with individual professional liability])
Esq. Eric Lasry
Attorney at the Bar of Paris
1 rue Paul Baudry - 75008 Paris
Tel.: 01 44 17 53 00
Toque P 445

*which is established by this document and any subsequent proceedings, and at whose office the plaintiff has elected to be served,*

**I, THE UNDERSIGNED JUDICIAL COMMISSIONER,**

[stamp:] SELARL KALIACT BAILIFFS OF PROVENCE AND COTE D'AZUR - AIX-EN-PROVENCE OFFICE - 47 BIS BOULEVARD CARNOT 13100 AIX-EN-PROVENCE REPRESENTED BY MICHEL FREDERIC COUTANT AND JULIEN THIRY, ASSOCIATED BAILIFFS - NICOLAS HUMBERT, JUDICIAL OFFICERS, ONE OF WHOM IS A SALARIED EMPLOYEE, ONE OF THEM SIGNING BELOW

**HAVE SERVED NOTICE TO:**

**SOF CONSTRUCTION SAS**, a simplified joint-stock company with a single shareholder and a share capital of 5,000 euros, registered with the Aix-en-Provence Trade and Companies Register under number 883.588.212, with its principal place of business located at Château La Coste, 13610 Le Puy-Sainte-Réparade, represented by its President, domiciled in that capacity at the aforementioned registered office,

By this writ

**TO APPEAR IN COURT,**

**ON TUESDAY, APRIL 8, 2025 at 3:00 pm.**

**At the hearing before the Enforcement Judge of the Paris Judicial Court, located at Parvis du Tribunal de Paris, 75859 PARIS Cedex 17, France,**

*Pursuant to an order issued by the enforcement judge of the Paris Judicial Court on March 31, 2025, following a motion filed with him on the same day, both of which are set forth below,*

[stamp:] COPY

[stamp:] SELARL KALIACT BAILIFFS PROVENCE COTE D'AZUR
OFFICE OF AIX EN PROVENCE
ASSOCIATED JUDICIAL COMMISSIONERS
La Nativité 47 Bis Boulevard Carnot
13100 AIX EN PROVENCE
Tel. 04.42.38.02.16 Fax: 04.42.38.05.42
maître-coutant@orange.fr

**Exhibit B**
**Page 32**

1

**VERY IMPORTANT**

Within fifteen days of the date indicated at the top of this document, subject to an extension due to distance in accordance with Articles 643 and 644 of the Code of Civil Procedure, you are required to retain counsel to represent you before the Enforcement Judge of the Paris Judicial Court.

Otherwise, you risk having a judgment entered against you based solely on the evidence provided by your opponent.

Pursuant to Article 5 of Law No. 71-1130 of December 31, 1971, attorneys may practice law and appear in court without territorial restrictions before all courts and judicial or disciplinary bodies, subject to the provisions of Article 4.

They may appear before all the courts of first instance within the jurisdiction of the court of appeals in which they have established their professional residence, as well as before that court of appeals.

Notwithstanding the second paragraph, attorneys may not appear before any court other than the one in whose jurisdiction they have established their professional residence, whether in proceedings involving the seizure of real property, partition, or public auction; in cases involving legal aid; or in proceedings in which they are not acting as lead counsel and are also responsible for presenting the case in court.

Individuals with insufficient financial means may, if they meet the requirements set forth in Law No. 91-647 of July 10, 1991, on legal aid, be eligible for legal aid. To apply for this assistance, they must contact the legal aid office located at the headquarters of the judicial court in their place of residence.

Please be reminded of the provisions of Articles R. 121-8 through R. 121-10 of the Code of Civil Enforcement Procedures:

– *"The proceedings are conducted orally".*

– *"The judge may, pursuant to the second paragraph of Article 446-1 of the Code of Civil Procedure, exempt a party who so requests from appearing at a subsequent hearing. In such cases, the judge facilitates communication between the parties. Communication between them is conducted by certified mail with return receipt requested or by service of process between attorneys, and proof of such communication is provided to the judge within the time limit he or she sets. Following the final hearing, the court clerk's office will notify the parties of the date on which the judgment will be rendered".*

– *"During the proceedings, any party may also present its arguments in a letter addressed to the enforcement judge, provided that it can demonstrate that the opposing party was made aware of them prior to the hearing by registered letter with return receipt requested.*
  *The party exercising this right may choose not to appear at the hearing, in accordance with the second paragraph of Article 446-1 of the Code of Civil Procedure".*

Finally, please be reminded of the provisions of Articles 641, 642, and 643 of the Code of Civil Procedure:

– *"When a time limit is expressed in days, the day on which the act, event, decision, or notice that triggers the time limit does not count.*
  *When a time limit is expressed in months or years, it expires on the day of the last month or year that has the same date as the day of the act, event, decision, or notice that triggers the time limit. If the date does not fall on the same day of the month, the deadline expires on the last day of the month.*
  *"When a time period is expressed in months and days, the months are counted first, followed by the days".*

2

**Exhibit B**
**Page 33**

– *"Any deadline expires at midnight on the last day.*
*Any deadline that would normally expire on a Saturday, Sunday, or a public holiday or non-working day is extended until the next business day."*

– *"When the case is brought before a court with its seat in metropolitan France, the time limits for appearing in court, filing an appeal, filing an objection, filing a third-party objection in the circumstances provided for in Article 586, paragraph 3, filing a motion for review, and filing an appeal to the Court of Cassation are extended by:*
*1. One month for residents of Guadeloupe, French Guiana, Martinique, Réunion, Mayotte, Saint Barthélemy, Saint Martin, Saint Pierre and Miquelon, French Polynesia, the Wallis and Futuna Islands, New Caledonia, and the French Southern and Antarctic Lands;*
*2. Two months for those residing abroad".*

The exhibits on which the claim is based are listed according to the attached schedule.

3

**Exhibit B**
**Page 34**

## TABLE OF CONTENTS

I.    STATEMENT OF FACTS ..................................................................................................6

1.1    INTRODUCTION TO THE PARTIES..................................................................................6

(a)    SEDHV.............................................................................................................................6
(b)    SOF..................................................................................................................................6

1.2    THE CONTRACTUAL CONTEXT .......................................................................................6

(a)    The Delegated Project Management Contract dated September 20, 2019 .....................7
(b)    The general contractor agreement dated February 5, 2021 ...........................................7

1.3    THE HOTEL'S PARTIAL REOPENING IN SEPTEMBER 2021 .............................................8

1.4    SOF'S WITHDRAWAL FROM THE PROJECT IN APRIL 2022 ...........................................8

1.5    THE FINAL AND GENERAL STATEMENT...........................................................................9

1.6    THE PERFORMANCE BY SOF AND HSMC OF CONSTRUCTION WORK IN VIOLATION OF BUILDING PERMITS, WHICH LED TO CRIMINAL PROCEEDINGS...........................................................................................11

1.7    PENDING CIVIL PROCEEDINGS ......................................................................................11

(a)    The pending proceedings before the Paris Court of Appeal...........................................11
(b)    Proceedings before the Paris Economic Activities Court...............................................13
(c)    Proceedings before the Enforcement Judge of the Paris Judicial Court.........................13

II.    DISCUSSION.................................................................................................................15

1.1    ON JURISDICTION .........................................................................................................15

1.2    ON THE CONDITIONS FOR RELEASE .............................................................................15

(a)    Regarding the absence of a valid claim in principle......................................................16
(b)    Regarding the absence of collection threats .................................................................20
(c)    On the compensation for the damage suffered by SEDHV.............................................25

ON THESE GROUNDS ...........................................................................................................27

LIST OF EXHIBITS SUBMITTED IN SUPPORT OF THE WRIT OF SUMMONS ............................28

## MAY IT PLEASE THE ENFORCEMENT JUDGE

### SUBJECT MATTER OF CLAIM

Société d'Exploitation et de Détention Hôteliere Vista (hereinafter "**SEDHV**") is the owner of the Maybourne Riviera Hotel located in Roquebrune-Cap-Martin on the Côte d'Azur (hereinafter the "**Hotel**").

SEDHV has engaged SOF Construction (hereinafter "**SOF**") as general contractor and Hume St Management Consultants (hereinafter "**HSMC**") as project manager to carry out renovation and expansion work on the Hotel.

While SEDHV, SOF, and HSMC have been involved since 2022 in litigation concerning, among other things, the improper performance of the work and the payments claimed by SOF and HSMC, and while a case is currently pending before the Paris Court of Appeal, SOF felt it necessary to apply to the Enforcement Judge of the Paris Judicial Court to obtain authorization to take protective measures.

Pursuant to an order on motion dated December 9, 2024, issued on the basis of a truncated and inaccurate presentation of the facts by SOF, the Enforcement Judge authorized a judicial officer to (i) consult the NATIONAL REGISTER OF BANK AND SIMILAR ACCOUNTS (FICOBA) in order to identify bank accounts opened in the name of SEDHV, (ii) to attach receivables held by any banking institution in which SEDHV is likely to hold accounts, in the amount of 12,535,939 euros in principal and interest, and (iii) to register a judicial mortgage as a precautionary measure on certain real estate properties belonging to SEDHV.

On December 20, 2024, SOF initiated two garnishments against SEDHV's accounts held at Qatar National Bank Centrale Entrep and BNP Paribas, totaling 5,583,490.85 euros.

These two seizures were served on SEDHV on December 24, 2024.

SEDHV therefore filed a petition with the Enforcement Judge of the Paris Judicial Court to have these two provisional attachments lifted, via a writ of service issued by a judicial officer on January 28, 2025, for a hearing scheduled for February 19, 2025. Given that SOF submitted its response to the findings the day before the hearing, SEDHV had no choice but to request a postponement of the case. The next hearing has been set for May 21, 2025.

However, following the filing of this summons, and even though the proceedings are still pending, SOF has continued to enforce provisional measures against SEDHV. In fact, on February 24, 2025, SOF had two new provisional attachments placed on SEDHV's accounts at the two aforementioned banks, totaling 828,791.34 euros.

These two seizures were served on SEDHV on February 27, 2025.

Then, on March 7, 2025, SOF again placed a provisional attachment on SEDHV's account held at Qatar National Bank in the amount of 2,000.69 euros.

On the same day, SOF notified SEDHV of the registration of a provisional judicial mortgage in the amount of 1,200,000 euros on two of its properties located at 1551 Route de la Turbie in Roquebrune-Cap-Martin 06190 and 42 Avenue Winston Churchill in Roquebrune-Cap-Martin 06190, respectively.

Both the seizure and the registration of this provisional judicial mortgage were served on SEDHV on March 11, 2025.

Following a brief summary of the facts, it will be demonstrated below that the conditions for granting the aforementioned measures have not been met. SEDHV therefore requests that the Enforcement Judge of the Paris Judicial Court rescind the aforementioned order and lift the protective attachments that have been imposed.

5

**Exhibit B
Page 36**

In addition, SEDHV is filing counterclaims seeking compensation for the harm it has suffered as a result of the manifestly abusive nature of the measures taken.

6

## I.    STATEMENT OF FACTS

### 1.1    Introduction to the parties

#### (a)    SEDHV

1.    Since 2014, SEDHV has owned the hotel, formerly known as Vista – La Cigale, located at 551 Route de la Turbie in Roquebrune-Cap-Martin, Alpes-Maritimes (06190).

**Exhibit No. 1: Kbis extract from SEDHV**

2.    The hotel was purchased at a court auction for €30,500,000 after the previous owner filed for bankruptcy.

3.    In a decision dated November 5, 2014, the Commercial Court of Nice had in fact accepted the takeover bid submitted by French Properties Management ("**FPM**"), the French asset management company of His Highness Hamad bin Khalifa Al Thani, father of the current Emir of Qatar.

4.    SEDHV was established at that time for the purpose of acquiring the hotel and thus became its owner.

5.    FPM and SEDHV are thus both indirectly owned by His Highness Hamad bin Khalifa Al Thani, who has invested, in a private capacity, in several hotels and numerous high-end real estate developments around the world, particularly in France.

6.    In 2016, SEDHV decided to undertake a major renovation and expansion project that lasted nearly six years (hereinafter the "**Project**").

#### (b)    SOF

7.    SOF is a company incorporated under French law, owned by its president, Château La Coste Participation.

**Exhibit No. 2: Kbis extract from SOF**

8.    SOF and Château La Coste Participation are themselves indirectly owned by Patrick (Paddy) McKillen, an Irish businessman active in the real estate and luxury hospitality sectors, who heads, among other ventures, the 5-star hotel at Château La Coste in Le Puy-Sainte-Réparade. Mr. Patrick McKillen is currently facing serious financial difficulties, which have led to the foreclosure of his apartment on Place Vendôme (during which Mr. Patrick McKillen allegedly became violent toward the court officer, prompting his appearance before the Paris Criminal Court on January 22, 2025, on charges of assault and contempt of a public official[1]).

9.    SOF was incorporated in 2020 to serve as the general contractor for the hotel construction site under the supervision of HSMC, a company also owned by Mr. McKillen and acting as the project manager on the site.

10.    SOF has no employees. All of the work was carried out by subcontractors or service providers.

### 1.2    The contractual context

11.    The general contracting work for the Project had initially been awarded to Vinci Construction France and its subsidiary, Triverio Construction (hereinafter "**Vinci**").

---

[1]Exhibit No. 47: Press article from January 22, 2025: "Raid on his apartment on Place Vendôme in Paris takes a turn for the worse: a millionaire faces charges of assault" - Actu.fr

**Exhibit B**
**Page 38**

12. The hotel's location - at the top of a rocky outcrop - and the associated geotechnical challenges caused difficulties during construction, leading to delays in the project and additional costs.

13. In light of these difficulties, representatives of SEDHV's shareholder and Mr. Patrick McKillen have come together to ensure that the Project can be completed successfully and within a reasonable timeframe. Vinci's scope of work was subsequently limited to the structural work.

### (a)  The Delegated Project Management Contract dated September 20, 2019

14. HSMC was appointed by SEDHV as the delegated project manager under a contract dated September 20, 2019 (hereinafter the "**MOD Contract**") to supervise and coordinate the work (the "**Program**").

> **Exhibit No. 3: Delegated Project Management contract dated September 20, 2019**

15. The MOD Contract set the deadline for completion of the Project, as amended, for November 2022 (Article 2.3) and provided for a budget of 225,000,000 euros excluding tax (Article 7.1) (which included, in particular, the sum of 77,000,000 euros excluding tax allocated to Vinci for the completion of the structural work).

16. Under the terms of HSMC's compensation agreement, SEDHV was to pay a fixed fee of 20,000,000 euros (excluding tax), payable in nine quarterly installments of 2,000,000 euros (excluding tax) each, plus a final installment of the same amount upon completion of the work.

17. Furthermore, in the event that the actual costs of the work were lower than the maximum budget of 225,000,000 euros (excluding tax), HSMC was entitled to a performance-based fee equal to half of the actual savings achieved.

18. In this context, HSMC recommended that SEDHV revoke Vinci Construction France's role as general contractor, limit the company's involvement to structural work only, and terminate the remainder of its contract. SEDHV has therefore partially terminated the contract entered into with Vinci.

19. After ousting the parties initially involved in the project, HSMC then decided to award the general contracting work for the project to SOF (it should be noted that both companies are owned by Mr. McKillen).

### (b)  The general contractor agreement dated February 5, 2021

20. Under the contract dated February 5, 2021, SOF was responsible for carrying out the work until its completion, resolving any outstanding issues, and obtaining the certificate of compliance (hereinafter the "**SOF Contract**").

> **Exhibit No. 4: General contractor contract entered into between SEDHV and SOF**

21. Pursuant to Articles 3.1. and 3.2. of the SOF Contract:

   a) The work performed by SOF falls within the budget of 225,000,000 euros (excluding tax) referred to in Article 7.1 of the MOD Contract entered into with HSMC (Article 3.1);

   b) The portion of the budget allocated to work billed by SOF "*is estimated at a **maximum**[2] of one hundred forty-eight million euros excluding tax [14*8,000,000 euros excl. tax]*, including the cost*

---

[2] Emphasis added

*of FF&E"* (Article 3.1); this amount of 148,000,000 euros excluding tax corresponds to the budget of 225,000,000 euros excluding tax minus the amount of 77,000,000 euros excluding tax paid to Vinci;

 c) The amounts owed to SOF under the contract must correspond to the actual costs incurred in performing the work (Article 3.2); and

 d) All expenses incurred by SOF must be fully documented in a detailed and precise manner (Article 3.1).

22. The maximum amount that could be paid to SOF, based on the costs of the work actually performed, thus amounts to 148,000,000 euros, excluding tax.


### 1.3 The hotel's partial reopening in September 2021

23. By order dated September 10, 2021, the Mayor of Roquebrune-Cap-Martin authorized the early partial reopening of part of the hotel (13 rooms and a restaurant).

> **Exhibit No. 5: Order of September 10, 2021, issued by the Mayor of Roquebrune-Cap-Martin**

24. The site was scheduled to fully open in May 2022, with two major events organized for Chanel and Mercedes that were particularly significant for the hotel's launch.

> **Exhibit No. 6: Email from HSMC dated March 25, 2022**

25. The safety commission's inspection, which is required for the issuance of the full operating license, was therefore scheduled by HSMC, SOF, and SEDHV for April 29, 2022. The fire department's inspection to verify the fire safety system was scheduled to take place two days earlier, on April 27, 2022.


### 1.4 SOF's withdrawal from the project in April 2022

26. During a meeting on April 1, 2022, and in a subsequent letter from their legal counsel dated April 14, 2022, HSMC representatives unexpectedly demanded payment from SEDHV in the amount of €30,293,729 excluding tax, reduced to €15,952,510 excluding tax to account for an overpayment of €14,341,219 excluding tax to SOF, even though the work had not been completed and its cost could therefore not be calculated.

> **Exhibit No. 7: Letter from HSMC's counsels dated April 14, 2022**

27. According to this letter, HSMC's management engaged in pressure tactics and blackmail to secure payment of the amounts claimed, threatening SEDHV that, should it fail to pay the claimed amount, HSMC would refuse to complete the project and would report the matter to the relevant professional authorities and the safety commission.

28. At the same time, claiming that it was impossible for them to continue their duties as general contractor given the temporary withdrawal from the site of Mr. Frank Sinton (CEO of SOF), SOF unilaterally announced the suspension of their contract on April 19, 2022.

> **Exhibit No. 8: Letter from SOF to SEDHV dated April 19, 2022**

9

29. Such a suspension of the SOF Contract was completely unjustified, given that SOF's teams consist solely of subcontractors and are therefore fully capable of continuing their services in the absence of Mr. Sinton. He actually lives in England and only visited the construction site from time to time.

30. This sudden and unilateral suspension of the SOF Contract occurred less than nine days before the safety commission's inspection, which was required for the venue to host the event organized for Chanel on May 2.

> **Exhibit No. 9: Letter from SEDHV's counsels dated April 20, 2022**
>
> **Exhibit No. 10: Letter from HSMC to SEDHV dated April 20, 2022**

31. In a letter dated April 21, 2022, sent by certified mail with return receipt requested and via email, SEDHV formally notified SOF to resume performance of the Contract immediately; otherwise, it would be deemed to have unilaterally abandoned the project.

> **Exhibit No. 11: Letter from SEDHV to SOF dated April 21, 2022**

32. In the absence of a response, SEDHV invited SOF to a site visit on April 22, 2022, at 11:00 a.m. to conduct a joint inspection of the current progress of the work, as well as an inventory of materials.

33. Since SOF failed to appear, SEDHV had a judicial officer document the condition of the construction site on April 22, 2022. In a letter sent to SOF on the same day, SEDHV acknowledged SOF's unilateral decision to suspend work and abandon the construction site.

> **Exhibit No. 12: Letter from SEDHV to SOF dated April 22, 2022**

34. With just a few days to go before the visits by the fire department and the Safety Commission, scheduled for April 27 and 29, 2022, respectively, SEDHV found itself without a general contractor and facing an unfinished construction site.

35. SEDHV was therefore forced to urgently hire a contractor to carry out the necessary work before the safety commission's inspection.

36. The acceptance of the work was pronounced on May 2, 2022. A provisional and partial permit was granted for the Chanel event scheduled for that day, and the order authorizing full public access was issued on May 3, 2022.

> **Exhibit No. 13: Order authorizing the opening to the public of May 3, 2022**

37. As of May 6, 2022, SEDHV had notified HSMC of thousands of outstanding items and provided it with the work acceptance report, which indicated that the project had not been completed.

> **Exhibit No. 14: Letter from SEDHV to HSMC dated May 6, 2022**

### 1.5    The final and general statement

38. **SEDHV has already paid SOF the sum of €137,553,385 excluding tax** (or €165,064,062 including tax) as advance payments.

> **Exhibit No. 15: SOF Vendor Account - SEDHV Accounting Ledgers**

39. In accordance with Article 4.3 of the Contract, SOF was required to prepare its draft final general statement of account (hereinafter "**DGD**"), accompanied by all relevant supporting documents, within 20 calendar days of acceptance of the work, i.e., by May 22, 2022. SOF also agreed to provide any supporting documentation requested within five business days.

40. On April 14, 2022 (*i.e., even before completion!*), HSMC's legal counsel provided a summary table of the amounts allegedly owed to SOF, indicating that SEDHV had already paid SOF (or on SOF's behalf) the sum of €148,397,454.25 excluding tax and that, in light of the work performed, an excess of €14,341,219.25 excluding tax had been paid to SOF.

**Exhibit No. 7: Letter from HSMC's counsels dated April 14, 2022**

41. In the same letter, HSMC's legal counsel stated that unless SEDHV acknowledges the existence of additional work and pays the amount of 15,952,509.00 euros (excluding tax), the project cannot be considered complete.

42. HSMC added that it would be sure to notify the relevant authorities, the project architect, and the safety commission that the project had not been completed.

43. Such a process was unacceptable. In an official letter dated April 20, 2022, the SEDHV's counsel condemned such remarks - which amounted to blackmail - and demanded an immediate end to such actions.

**Exhibit No. 9: Letter from SEDHV's counsels dated April 20, 2022**

44. SOF finally sent its draft FGS on June 16, 2022, almost a month late.

45. This DGD indicated that SEDHV would owe SOF a total of 9,014,636.76 euros (including tax) instead of the surplus announced by the HSMC's legal counsel on April 14 of that year. In fact, SOF cited this time a "*lump-sum amount of 148 million euros excluding tax*", whereas the SOF Contract provides for a "*maximum amount of 148,000,000 euros excluding tax*" and the final cost of the work invoiced by the general contractor must be the subject of a detailed final statement based on invoices issued to date and supported by documentation.

**Exhibit No. 16: Draft FGS prepared by SOF on June 16, 2022**

46. In reply, SEDHV contested SOF's alleged claim for €9,014,636.76 including tax on July 15, 2022.

47. SOF suddenly claimed, in disregard of the terms of the SOF Contract, that its remuneration would consist of a lump sum amounting to €148,000,000 excluding tax, rather than a maximum amount of €148,000,000 excluding tax taking into account the actual cost of the work. Moreover, in violation of the terms of the SOF Contract, this draft FGS sent provided no information on the actual cost of the work carried out, nor the corresponding supporting documents.

48. In a letter dated July 15, 2022, SEDHV formally requested SOF to provide all documents that could support its cost estimate, while formally objecting to the payment of the amounts claimed, which were clearly unjustified.

**Exhibit No. 17: Letter from SEDHV to SOF dated July 15, 2022**

49. On December 23, 2022, SEDHV submitted its own draft DGD to SOF and expressed its strong disagreement with the draft submitted by SOF, noting that the invoices for work submitted accounted for only slightly more than half of the announced 148,000,000 euros (excluding tax).

50. SEDHV thus demonstrated to SOF that all amounts due for the completion of the work had already been paid, given the advance payment of 137,553,385 euros (excluding tax), an amount that more than covered the expenses incurred by SOF.

51. SEDHV noted in particular that, based on the work performed, an overpayment had been made to SOF (the amount of which was calculated using the DGD derived from the information provided by SOF).

**Exhibit B**

**Page 42**

52. Accordingly, it gave the latter formal notice to reimburse that amount within eight days. SEDHV has, in fact, filed a counterclaim in this regard as part of the proceedings initiated by SOF and currently pending before the Paris Court of Appeal.

> **Exhibit No. 18: Letter from SEDHV to SOF dated December 23, 2022**

53. In a completely unfair manner, SOF simply omitted to mention this formal notice from SEDHV before the enforcement judge, just as it did with SEDHV's letter to SOF dated January 11, 2023.

> **Exhibit No. 19: Letter from SEDHV to SOF dated January 11, 2023**

### 1.6 The performance by SOF and HSMC of construction work in violation of building permits, which led to criminal proceedings

54. In addition to these discussions, SEDHV was informed in January 2023 by the Prefect of the Alpes-Maritimes that work carried out by SOF and HSMC had been performed in violation of the building permits that had been granted, and that a criminal investigation was underway in this regard.

> **Exhibit No. 20: Amended building permit**
>
> **Exhibit No. 21: Letter from the Prefect of the Alpes-Maritimes dated January 30, 2023**

55. A notice of violation was thus issued by the Alpes-Maritimes Departmental Directorate for Territories and the Sea ("**DDTM**") for failure to comply with the original and amended building permits obtained, as well as with the provisions of the Natural Risk Prevention Plan for Landslides (the "**PPRN**") applicable to the municipality of Roquebrune-Cap-Martin.

56. **It thus appears that SOF and HSMC carried out construction work in violation of the building permit, which led to the unauthorized addition of more than 1,000 square meters and a utility room in an area where all construction is prohibited under the applicable PPRN, criminal offenses punishable by fines exceeding 66,000,000 euros and potentially requiring the demolition of the structures.**

57. Criminal proceedings are currently pending, in which SEDHV and its director have been summoned to appear before the court.

58. Amendment No. 4 was filed and approved by an order on October 28, 2024.

59. SEDHV is forced to partially close the hotel starting in December 2024 and to shut it down completely for 4.5 months starting in January 2025 in order to carry out compliance work, the cost of which is estimated at over 19,000,000 euros!

### 1.7 Pending civil proceedings

60. In parallel with the criminal proceedings, two civil lawsuits between SEDHV and SOF are currently pending.

#### (a) The pending proceedings before the Paris Court of Appeal

61. In a complaint filed on October 31, 2022, SOF brought an action against SEDHV before the judge presiding over summary proceedings at the Paris Commercial Court, seeking an order requiring SEDHV to pay the sum of €5,010,434.70 as reimbursement for expenses not covered by the contract that SOF allegedly advanced on behalf of SEDHV during the performance of the work.

62. By writ dated November 17, 2022, HSMC had SEDHV served with a summons to appear before the Paris Commercial Court to seek an order requiring SEDHV to pay it the sum of €17,623,119.60 excluding tax as an alleged success fee and the sum of €2,000,000 excluding tax as the final installment of its fixed fee.

63. In an order dated December 1, 2022, the judge presiding over the summary proceedings ruled that there was no basis for summary relief and referred the case initiated by SOF to the trial court for a full hearing. The two cases were then consolidated.

64. Taking all entities into account, SOF and HSMC estimated the total amount of their payment requests at €24,633,554.30.

65. In its counterclaim, SEDHV requested, among other things:

(i) the return of works of art wrongfully held by SOF,

(ii) the inclusion in the DGD of the amount of 20,554,349.46 euros (excluding tax), corresponding to the overpayment to SOF,

(iii) the inclusion in the DGD of the amount of 12,893,868.15 euros (excluding tax) for defects and non-conformities;

(iv) in the further alternative, the appointment of a court-appointed expert to determine the amounts to be included in the final and comprehensive statement of account for the work.

66. SOF vehemently opposed any discussion regarding the terms of the work's execution before the Paris Commercial Court.

67. In a ruling dated July 5, 2024, the Court - quite unexpectedly - dismissed the counterclaims regarding the amounts that should have been included in the DGD, finding, on the one hand, that the counterclaims were inadmissible because they lacked a sufficient connection to the main claim and, on the other hand, that considering them would risk unduly delaying the judgment.

**Exhibit No. 22: Judgment of the Paris Commercial Court of July 5, 2024**

68. In that same judgment, the Court ordered SEDHV to pay SOF the sum of €4,688,877.77 for invoices that SOF had allegedly paid on SEDHV's behalf. The Court also ordered SOF to return to SEDHV the works of art that had been improperly held in a warehouse.

69. The judgment was made subject to provisional enforcement.

70. **SEDHV has fulfilled all the obligations imposed on it.**

**Exhibit No. 23: SEDHV's consent to the attachment of debts effected by SOF against QNB, dated July 18, 2024**

**Exhibit No. 24: Service reports of the service of the release of the attachment of debts on SEDHV's bank accounts held at Qatar National Bank Centrale Entrep and BNP Paribas, dated July 23 and 29, 2024**

71. In a statement filed with the court clerk's office on September 2, 2024, HSMC filed an appeal of the judgment. For its part, SEDHV filed a cross-appeal against SOF on October 4, 2024.

**Exhibit No. 25: Notice of appeal filed by SEDHV against SOF on October 4, 2024**

**Exhibit No. 26: Motions in the appeal filed**

72. Before the Paris Court of Appeal, SEDHV is seeking to have the judgment of July 5, 2024, set aside, particularly insofar as it ordered SEDHV to pay the sum of 4,688,877.77 euros to SOF and declared SEDHV's counterclaims inadmissible.

73. In requesting a new ruling, SEDHV further asks the Court to declare admissible the counterclaims it filed before the lower court and to order SOF to pay it the sum of 12,893,868.15 euros, excluding tax (to be finalized), for the cost of defects and non-conformities, and the sum of 20,554,349.46 euros excluding tax for the costs of the Hotel's construction work.

74. SOF thus took care not to inform the enforcement judge that the Paris Court of Appeal is currently hearing a claim filed against it by SEDHV for an amount of 33,448,217.61 euros excluding tax (to be finalized).

### (b)    Proceedings before the Paris Economic Activities Court

75. While the case between the same parties is currently pending before the Paris Court of Appeal, SOF has decided to file a new lawsuit with the Paris Economic Activities Court.

76. In a subsequent filing dated October 7, 2024, SOF sought an order requiring SEDHV to pay the sum of 18,455,939 euros, this time in connection with the terms of performance of the work, which, according to SOF, break down as follows:

- 3,655,939 euros (including tax) for the balance of the work

- 8,800,000 euros (including tax) for the release of the retention

- 6,000,000 euros (including tax) for an alleged wrongful termination of the SOF Contract

**Exhibit No. 27: Summon issued by SOF to SEDHV on October 7, 2024, to appear before the Paris Commercial Court**

77. A preliminary hearing has been scheduled for February 4, 2025, at which time SEDHV filed a motion regarding lis pendens (given the existence of proceedings before the Court of Appeal involving exactly the same subject matter), requesting, in the alternative, that the court stay proceedings pending the decision of the Paris Court of Appeal.

78. **SOF's motion for preliminary injunctive relief makes no mention of the existence of this latter proceeding either.**

### (c)    Proceedings before the Enforcement Judge of the Paris Judicial Court

79. Thus, by multiplying its actions, SOF applied to the Enforcement Judge of the Paris Judicial Court.

80. Pursuant to an order issued by the enforcement judge on December 9, 2024, SOF therefore seized, on December 20, 2024, the sum of 873,959 euros from SEDHV's account held at Qatar National Bank and the sum of 4,710,423.27 euros from SEDHV's accounts held at BNP Paribas, as security for the sum of 12,535,939 euros.

**Exhibits No. 28 and 29: Notifications to SEDHV regarding a provisional attachment of claims dated December 24, 2024, on SEDHV's bank accounts held at**

14

**Qatar National Bank Centrale Entrep and BNP Paribas**

81. These two seizures were subsequently reported to SEDHV on December 24, 2024.

82. In an official letter dated January 15, 2025, SEDHV's counsel requested from SOF's counsel the documents submitted in support of the motion filed with the enforcement judge, some of which are new, as they were not submitted in the parallel proceedings.

83. SOF's counsel simply rejected this request for information, even though it was standard practice and in line with the principles of collegiality.

84. In an official letter dated January 20, 2025, the SEDHV's counsel reiterated their request.

**Exhibit No. 37: Official talks between the SEDHV and SOF boards from January 15 to 20, 2025**

85. SEDHV therefore filed a petition with the Enforcement Judge of the Paris Judicial Court to have these provisional attachments lifted, via a writ of service issued by a judicial officer on January 28, 2025. The hearing on these two seizures, originally scheduled for February 19, 2025, has been postponed to May 21, 2025, due to SOF's extremely late submission of its response, the day before the hearing, which is simply unacceptable.

86. Following this motion to lift the attachment, SOF continued to take provisional measures against SEDHV, thereby taking advantage of the lengthy adjournment it was able to obtain due to the late submission of its pleadings to SEDHV.

87. Thus, on February 24, 2025, SOF had two new provisional attachments placed on SEDHV's accounts at the two aforementioned banks, totaling 828,791.34 euros.

88. These two seizures were notified to SEDHV on February 27, 2025.

**Exhibits No. 39 and 40: Notifications to SEDHV regarding a provisional attachment of claims dated February 24, 2025, on SEDHV's bank accounts held at Qatar National Bank Centrale Entrep and BNP Paribas**

89. On March 7, 2025, SOF again placed a provisional attachment on SEDHV's account at Qatar National Bank in the amount of 2,000.69 euros. On the same day, SOF notified SEDHV of the registration of a provisional judicial mortgage to secure the sum of 1,200,000 euros on two of its properties located at 1551 Route de la Turbie in Roquebrune-Cap-Martin 06190 and 42 Avenue Winston Churchill in Roquebrune-Cap-Martin 06190, respectively.

90. Both the seizure and the registration of this provisional judicial mortgage were notified to SEDHV on March 11, 2025.

**Exhibits No. 41 and 42: Notifications to SEDHV regarding a provisional attachment of a debt dated March 7, 2025, on SEDHV's bank account held at Qatar National Bank Centrale Entrep, and a provisional judicial mortgage dated March 7, 2025, filed with the Nice 1 Land Registry.**

91. In light of the increasing number of provisional measures taken by SOF, based on an order that is clearly intended to be revoked, SEDHV had no choice but to request that the Enforcement Judge of the Paris Judicial Court authorize it to serve SOF with a summons at a specified time in order to obtain, as a matter of

urgency, the lifting of all provisional measures taken pursuant to the Enforcement Judge's order of December 9, 2024.

**Exhibit No. 43: Motion by SDHV to obtain permission to serve SOF at a specified time**

92. The Enforcement Judge of the Paris Judicial Court granted this authorization to SEDHV by an order dated March 31, 2025.

**Exhibit No. 44: Order of the Enforcement Judge of the Paris Judicial Court dated March 31, 2025**

This is the current status of the case as it stands before the enforcement judge of the Paris Judicial Court.

## II.    DISCUSSION

### 1.1    On jurisdiction

93. Pursuant to Article R. 512-2 of the Code of Civil Enforcement Procedures:

*"The motion to lift the protective measure is brought before the judge who authorized the order. If the measure was taken without prior authorization from the judge, the matter is brought before the enforcement judge in the jurisdiction where the debtor resides. "However, where the measure is based on a claim falling within the jurisdiction of a commercial court, an application to lift the measure may be filed, prior to any trial, with the presiding judge of the commercial court of that same jurisdiction."*

### 1.2    On the conditions for release

94. Pursuant to Article L. 511-1 of the Code of Civil Enforcement Procedures:

*"Any person whose claim appears to be well-founded in principle may request the court's authorization to take a protective measure against the debtor's assets, without prior notice, if the person can demonstrate circumstances that could jeopardize the recovery of the debt.*

*The protective measure takes the form of a protective attachment or a judicial lien."*

95. Article R. 512-1 of the Code of Civil Enforcement Procedures specifies that if the conditions required for a provisional attachment are not met, the protective measure may be lifted at any time.

96. The conditions set forth in Article L. 511-1, namely, the existence of a claim that appears to be well-founded in principle and the existence of circumstances that threaten the collection of the claim, are cumulative.

97. In this case, none of the conditions required for the granting of provisional measures have been met.

98. In its petition, SOF did not hesitate to distort the facts, to conceal the existence of the proceedings currently pending on the merits (in which SEDHV has contested the claims of SOF and HSMC), as well as the claims made by SEDHV in those proceedings, in order to claim that it holds a claim that is, in principle, valid against SEDHV (**a**).

99. Furthermore, it provided a presentation that was, *at the very least*, inaccurate regarding SEDHV's financial situation (and even misleading regarding that of the group to which it belongs), given that the risk of non-recovery is non-existent in this case (**b**), and it did so for the sole purpose of deliberately harming SEDHV's interests.

**Exhibit B**
**Page 47**

16

100. SEDHV is therefore also justified in seeking the release of the assets that have been seized and the revocation of the order, as well as compensation for the damages caused by the wrongful seizures carried out against it (c).

### (a)    Regarding the absence of a valid claim in principle

101. The enforcement judge has sole discretion to determine whether the claim in question appears to be well-founded in principle. Although proof of a certain claim is not required, the enforcement judge is nevertheless required to consider objections, even those concerning the merits of the claim, if they are likely to call into question the existence of such a claim[3].

102. In the context of a private construction contract, it is still necessary for a "*final statement of account signed by the parties specifying that the contract has been fully performed* [to have been prepared] *and the accounts definitively settled*" in order to consider that the existence of the claim is not disputable[4].

103. This is clearly not the case here, since, on the contrary, the parties have never finalized the final general statement of account, and two proceedings concerning the settlement of accounts for the work are currently pending before the Court of Appeal and the Paris Economic Activities Court.

104. In its motion for protective measures, SOF claims that its claim of 12,535,939 euros (including tax), on the basis of which the injunctions were ordered, breaks down as follows:

- the amount of 3,655,939 euros, including tax, for the balance of the work

- the amount of 8,880,000 euros, including tax, as a retention

105. None of these alleged claims are well-founded in principle.

> ➢ Regarding the absence of any outstanding balance for the work, in the amount of 3,655,939 euros, including tax

106. Since SEDHV has already paid SOF the sum of 137,553,385 euros (excluding tax), SOF claims to be owed by SEDHV the balance of the contract price for the work, which it alleges has not been paid despite the acceptance of the work.

107. This is completely false.

**1) First, the claim asserted by SOF in this regard stems from a distortion of the terms of the SOF Contract entered into between the Parties.**

108. In order to claim a debt, in violation of the agreements reached between the Parties, SOF had initially claimed that it was entitled to receive a lump-sum payment of 148,000,000 euros, excluding tax.

> **Exhibit No. 30: Emails dated January 27, 2021 regarding the price clause of the SOF Contract**

109. SOF thus claimed in bad faith that the contract price was a lump sum, even though the parties had clearly agreed that it was a maximum price.

110. It is expressly stated in the SOF Contract that its remuneration would be calculated based on the actual cost of the Work, up to a maximum amount of 148,000,000 euros, excluding tax.

---

[3] Cass. 2nd civ., Jan. 14, 2021, No. 19-18.844, Published in the bulletin. Read online: https://www.doctrine.fr/d/CASS/2021/JURITEXT000043045899
[4] Cass. 3rd civ., July 8, 1992, No. 90-16.500, Bull. 1992 III No. 240 p. 147. Read online: https://www.doctrine.fr/d/CASS/1992/CASSP3A542676FF20AC150AFB

**Exhibit B**
**Page 48**

111. Article 3.1 of the SOF Contract (**Exhibit No. 4**) states:

> The portion of the budget allocated to the work invoiced by the General Contractor is estimated at a maximum of one hundred forty-eight million euros, excluding tax (148,000,000 euros excl. tax), including the cost of FF&E. The final cost of the work to be invoiced by the General Contractor must be the subject of a detailed final statement based on invoices issued to date and supported by documentation.
>
> The General Contractor agrees to provide supporting documentation for all invoices, including a breakdown of costs by category and the relevant accounting records, and agrees to make these available to the Project Owner upon request.

112. SOF thus claimed before the Commercial Court that it was owed a debt representing the balance of its alleged lump-sum compensation, in clear violation of the terms of the SOF Contract.

113. Despite SEDHV's requests for the production of documents and for expert opinions filed with the Commercial Court, SOF refused to provide any such information, thereby preventing the finalization of their accounts.

114. It should also be noted that HSMC itself concluded that SEDHV overpaid SOF by 14,341,219 euros!

**Exhibit No. 7: Letter from HSMC's counsels dated April 14, 2022**

115. On several occasions, and contrary to SOF's statements, SEDHV has contested the very basis of the amounts claimed for the work:

- By letters of July 15 and September 7, 2022, SEDHV opposed the request for payment of a "lump-sum" price of 148,000,000 euros excluding tax;

**Exhibit No. 17: Letter from SEDHV to SOF dated July 15, 2022**

**Exhibit No. 31: Letter from SEDHV to SOF dated September 7, 2022**

- In its pleadings before the Paris Commercial Court and again before the Court of Appeals, SEDHV is seeking an order requiring SOF to pay the sum of 20,554,349.46 euros, representing the overpayment for the work.

**Exhibit No. 32: Summary conclusions of SEDHV filed with the Paris Commercial Court on May 30, 2024, p. 19**

116. SOF therefore argues, to no avail, that SEDHV "*never*" requested reimbursement of an overpayment. A reading of the letter dated December 23, 2022, proves the opposite.

**Exhibit No. 18: Letter from SEDHV to SOF dated December 23, 2022**

117. In its decision of July 5, 2024, the Commercial Court ruled that the SOF Contract did not in fact provide for a lump-sum payment, but rather for compensation calculated based on the actual cost of the work.

118. After its argument was rejected, SOF completely changed its position before the enforcement judge.

119. SOF has now abandoned its argument regarding the lump-sum payment and expressly acknowledges that its compensation did indeed correspond to the costs of the work actually performed.

18

120. Citing a report prepared by a private consulting firm, Lynkea, SOF now claims, unilaterally and using a highly questionable methodology, that the total cost of the work amounts to… 149,068,008 euros excluding tax, a sum that exceeds the maximum contractual limit of 148,000,000 euros excluding tax!

> **Exhibit No. 33: Report by Lynkea dated December 13, 2023, released by SOF**

121. This claim is contradictory, but also completely unfounded.

122. After refusing, throughout the proceedings pending before the Paris Commercial Court, to provide a DGD in accordance with the provisions of the SOF Contract and accompanied by supporting documents, as well as to comply with the expert assessment procedure requested in the alternative by SEDHV, SOF relies on a report prepared unilaterally by a private expert (Lynkea) to set the cost of the work at an amount that is curiously equal to, or even greater than, the maximum amount provided for in the Contract.

123. However, the Lynkea report must be disregarded for several reasons, as highlighted in the report prepared by Edouard Loeper and Didier Faury of Prorevise, a firm of certified public accountants, court-appointed experts, and statutory auditors:

> **Exhibit No. 34: Report from the firm ProRevise dated January 30, 2024**

- First and foremost, Lynkea expresses a significant reservation and does not guarantee the accuracy or completeness of the data presented[5]! The firm further states that it was unable to analyze the details of the expenses recorded in SOF's accounts, which serve as the basis for calculating the actual cost of the Program[6];

- Second, Lynkea states in its report that the cost of the work corresponds to the entries recorded in a subaccount of SOF's general ledger labeled "SOF," which is allegedly "exclusively related to the project," without, however, providing any justification for this alleged connection. No details regarding this "SOF" subaccount are provided, nor is any supporting documentation offered to confirm that the total for this subaccount indeed corresponds to the hotel construction project and not to SOF's other activities;

- Third, the amounts are artificially "inflated" by including numerous unjustified internal chargebacks, amounts unrelated to the project, and the application of multiplier coefficients that are not only not provided for in the contract but also completely unfounded, all with the sole aim of exceeding the threshold of 148,000,000 euros;

- Fourth, the Lynkea report does not include in its appendices the data on which it was based; thus, neither the details nor the supporting documents or invoices are provided to substantiate the total amounts reported, contrary to the methodology recommended by the Paris Court of Appeal;

124. A report prepared by a private expert in a non-adversarial proceeding and containing such deficiencies does not establish a claim that is well-founded in principle.

**2) SOF also fails to mention that it abandoned the project and that more than 6,000 reservations were recorded during the final inspection. However, while reservations do not prevent acceptance of the works, they suspend its effects with respect to the relevant parts of the work[7].**

---

[5] **Exhibit No. 33**: Lynkea Report, pp. 4-5: *"Under no circumstances do we guarantee, either expressly or implicitly, the accuracy or completeness of the information provided or the results of any requests made."*
[6] **Exhibit No. 33**: Lynkea Report, pp. 4–5: "***We were unable to verify or review each of the accounting documents associated with the expenses recorded in SOF's general ledger. "This constitutes a caveat to our work***" (emphasis added); see also p. 23.
[7] Dalloz Construction Law (ed. Ph. Malinvaud), 2018/2019 ed., sec. 481.163

19

**Exhibit B
Page 50**

125. A report prepared by Mr. Yves Guerpillon, a construction expert at the Lyon Administrative Court of Appeal, has estimated the restoration costs to date at 16,161,677.67 euros excluding tax, of which 12,893,868.15 euros excluding tax relates to defects and non-conformities.

> **Exhibit No. 35: Report No. 1 by Mr. Guerpillon, dated December 2023, regarding defects and non-conformities at the Maybourne Riviera Hotel**

126. According to the latest estimates, these costs amount to approximately 18,000,000 euros.

127. SEDHV, which is thus responsible for covering the cost of the restoration work, has filed a claim in the Commercial Court and has now appealed to the Court of Appeals seeking an order requiring SOF to pay it the sum of 12,893,868.15 euros excluding tax for this purpose.

128. SOF once again failed to mention this in its motion to the enforcement judge.

129. Thus, contrary to its claims, SOF does not have a claim against SEDHV that is valid in principle.

130. On the contrary, it owes the company the sum of 20,554,349.46 euros excluding tax, corresponding to the overpayment made by SEDHV for construction costs, as well as the sum of 12,893,868.15 euros excluding tax for the cost of defects and non-conformities.

131. It should be noted once again that the judge of the Commercial Court simply failed to rule on SEDHV's counterclaims regarding the costs of the work, for reasons that are entirely unfounded.

132. In fact, the Commercial Court wrongly dismissed these claims on the grounds that, on the one hand, they lacked a sufficient connection to the main claim and, on the other hand, considering them might unduly delay the judgment.

133. However, Article 4 of the Code of Civil Procedure provides: *"The subject matter of the dispute is determined by the respective claims of the parties. These claims are set forth in the complaint and in the answer. However, the subject matter of the dispute may be modified by incidental claims when such claims are sufficiently connected to the original claims."*

134. The judge is therefore required to rule both on the main claims brought by the plaintiffs and on the incidental claims raised by the defendant, which define the subject matter of the dispute. This refers to the office of the judge.

135. Counterclaims are incidental claims governed by paragraph 1 of Article 70 of the Code of Civil Procedure, and are admissible if they are sufficiently connected to the original claims.

136. A sufficient connection may be established when the main claim and the counterclaim *"both arise from the same disputed factual situation or the same contract"*[8].

137. In this case, the claims filed by SEDHV and SOF undoubtedly stem from the same factual situation: the renovation work on the Hotel. There is therefore undoubtedly a sufficient connection between these claims.

138. Furthermore, the claim for compensation filed by SEDHV rendered any attempt to establish such a link unnecessary in any event, pursuant to the second paragraph of Article 70 of the Code of Civil Procedure, which provides that *"(...) a claim for set-off is admissible even in the absence of such a connection, unless the judge decides to dismiss it if it risks unduly delaying the judgment on the entire matter"*.

139. Consequently, SEDHV's counterclaims were sufficiently connected, and the Commercial Court erred in finding otherwise. It was equally erroneous for the court to rule that these claims were inadmissible on the grounds that considering them would unduly delay the judgment, given that these counterclaims were raised by SEDHV in its initial pleadings before the Commercial Court.

---

[8] C. Tirvaudey-Bourdin, "Extension of Jurisdiction," *JCI. Civil Procedure: Fasc. 600-85, Special Issue No. 90, citing Solus H. and Perrot R., Private Judicial Law, Vol.* III, Sirey, 1991, no. 1034.

> ➢ Regarding the absence of a claim arising from the alleged retention of a guarantee in the amount of 8,880,000 euros, including tax

140. According to Article 25 of the SOF Contract:

*"A 5% retention will be applied to the amounts due to the General Contractor under its Contract, including for additional work, to serve as a guarantee of satisfactory completion."*

141. SOF estimates this retention to be 8,800,000 euros including tax (equivalent to 7,400,000 euros excluding tax, which corresponds to 5% of 148,000,000 euros excluding tax). SOF claims that this amount is owed to it in addition to the alleged balance for the work.

**However, SOF's reasoning is clearly flawed.**

142. In accordance with the provisions of Law No. 71-584 of July 16, 1971, and Article 25 of the SOF Contract, the retention is a 5% deduction from the amounts owed to SOF. In practice, this retention is intended to be applied to each invoice paid by SEDHV to SOF, and is released once the reservations have been lifted. However, in this case, SEDHV did not withhold the 5% retention from the invoices paid to SOF, but paid the full amounts listed on those invoices. SEDHV therefore owes no amount in connection with any retention of title.

143. Above all, it should be noted, for the sake of completeness, that in a ruling dated November 16, 2011, the Paris Court of Appeal held that the claims made by the project owner in legal proceedings may constitute an objection under Article 2 of Law No. 71-584 of July 16, 1971[9].

**In this case, such an objection is justified and fully substantiated in the pleadings and documents submitted by SEDHV.**

144. In its summary conclusions, the SEDHV stated that:

*"Mr. Guerpillon's report currently estimates the costs of bringing the project into compliance, resolving the reservations and defects at 16,161,677.67 euros excluding tax, of which 12,893,868.15 euros excluding tax relates to defects and non-conformities resulting from work for which **SOF is responsible, it being noted that the work is still in progress and SEDHV continues to receive quotes and invoices in this regard."*** (emphasis added)

> **Exhibit No. 32: Summary conclusions of SEDHV filed with the Paris Commercial Court on May 30, 2024, p. 23**

145. **SOF's alleged claim regarding the retention, as well as the alleged balance for the work, is therefore entirely without merit.**

### (b)    Regarding the absence of collection threats

146. Pursuant to Article L. 511-1 of the Code of Civil Enforcement Procedures, which applies to provisional measures, it is incumbent upon the creditor seeking enforcement to demonstrate that there are threats to the recovery of the debt[10]. Case law holds that the size of the debt alone is not sufficient to establish the existence of a risk[11].

---

[9] Paris Court of Appeal, Division 4 – Ch. 5, Nov. 16, 2011, No. 10/14049. Read online: https://www.doctrine.fr/d/CA/Paris/2011/RC8F68D5A20717F2DDE5A
[10] TGI Paris, JEX, Apr. 28, 2005, No. 05/80250. Read online: https://www.doctrine.fr/d/TGI/Paris/2005/FRA6DCA48D09CE404B2938;
[11] CA Versailles, 16th ch., Nov. 4, 2010, No. 10/04141. Read online: https://www.doctrine.fr/d/CA/Versailles/2010/B672F8B6983AA01345646

**Exhibit B
Page 52**

147. The release must therefore be ordered if the debtor provides evidence of solvency[12]. A profit that is less than the amount of the claimed debt and the lack of available cash are not sufficient to establish a risk of non-recovery.

148. In this case, SOF argues that the recovery of its claim is at risk because SEDHV's financial statements for the 2023 fiscal year show an accounting loss of 24.7 million euros and, according to SOF, this financial situation poses "*an undeniable risk of insolvency for its creditors*". SOF fails to specify that this accounting loss is almost entirely attributable to simple accounting entries that ultimately do not result in any actual outflow of cash, such as depreciation, amortization, and accrued but unpaid interest on its intra-group debt. The amount of its non-cash accounting expenses alone thus totals more than 21.7 million euros, thereby seriously calling into question both the reliability of SOF's analysis and the alleged collection risk it claims to be relying on.

149. According to SOF, this risk is also characterized by the fact that the hotel will be closed during the first half of 2025. In doing so, SOF links SEDHV's creditworthiness to the hotel's profitability, failing to mention that SEDHV is part of a group whose financial strength is beyond question.

150. Such remarks are particularly inappropriate given that the hotel's closure in the first half of 2025 is specifically due to SOF's poor execution of the work and to violations of the Urban Planning Code by both SOF and HSMC.

151. Following the discovery of numerous non-compliances and the issuance of an infringement report by the DDTM, SEDHV, together with the City Hall and the Prefecture, was required to file an Amended Building Permit No. 4 aimed at rectifying all the alleged violations attributable to SOF and HSMC. SEDHV is, in fact, required to carry out work to bring the property into compliance, resolve outstanding issues, and address defects, which necessitates the hotel's closure for five months.

152. These compliance works and clearing of reservations - which stem from failures on the part of SOF and HSMC and must therefore be borne by them in the main proceedings - have so far cost more than 18 million euros.

153. It is also important to note that SEDHV is indirectly owned by His Highness Hamad bin Khalifa Al Thani, the former Emir of Qatar and father of the current Emir, His Highness Hamad bin Khalifa Al Thani.

154. SOF cannot, therefore, seriously claim that SEDHV has cash flow difficulties.

155. This is all the more true given that H.H. Hamad bin Khalifa Al Thani's financial support for SEDHV was formalized in a cash flow agreement signed by several companies within his group, including SEDHV (the "**Cash Flow Agreement**"), on June 30, 2021.

> **Exhibit No. 45: Cash Management Agreement between SEDHV and Azolla Finance dated June 30, 2021**

156. Under the terms of the Cash Management Agreement, each signatory company may request one or more cash advances from Azolla Finance (the "**Centralizing Company**") as needed:

---

[12] TGI Paris, JEX, March 19, 2008, No. 08/80494. Read online: https://www.doctrine.fr/d/TGI/Paris/2008/FR956E6AA711146B884E93

1.3    In the event that a Participating Company does not have sufficient cash on hand to carry out a given transaction, it may request that the Centralizing Company grant it one or more cash advances subject to the terms and conditions set forth below, through current-account advances granted to the Centralizing Company by one or more other Participating Companies that have excess cash on hand at that time, such advances to be debited by the Centralizing Company from the accounts of the Participating Companies, under the conditions set forth below.

157. However, the accounts of the Centralizing Company show available cash of more than 116,000,000 euros as of December 31, 2023.

**Exhibit No. 46: Azolla Finance's Financial Statements for Fiscal Year 2023**

158. In addition, SEDHV receives financial support from its ultimate beneficial owner, His Highness Hamad bin Khalifa Al Thani, who confirmed his commitment in a letter dated February 8, 2024.

**Exhibit No. 47: Letter of support of February 8, 2024**

159. In addition, SEDHV is part of a consolidated group whose consolidated financial statements for the 2023 fiscal year show available cash of more than €190 million, total assets at fair value of more than €2.8 billion, and net revenue of more than €120 million.

**Exhibit No. 48: Consolidated Financial Statements of Lys Holding 1 S.à.r.l. for the 2023 Fiscal Year**

160. It is therefore clear that SEDHV is assured of having the necessary cash flow to continue its operations, meaning that SOF's alleged claim is in fact not at risk of non-payment.

161. Conversely, it is a matter of record that Patrick McKillen, the ultimate beneficiary of SOF, is facing very serious financial difficulties, which have notably led to the seizure of his apartment on Place Vendôme in Paris[13]. Since this seizure was only made public because of the charges of assault against the judicial officer brought against Mr. Patrick McKillen, it is highly likely that there are other seizures involving his real estate as well.

162. As evidence of its financial strength, SEDHV had no difficulty in contributing more than 239 million euros to the project over a six-year period during which the hotel was undergoing renovations and was not generating any profit. SOF itself acknowledges that SEDHV has already paid it the sum of 13,205,124.90 excluding tax (or 165,064,062 euros including tax) in advance payments during the same period when the hotel was not operating.

163. In this regard, it is important to note that the amount of 132,051,249 euros (excluding tax) is the result of a calculation error. The total amount of 165,064,062 euros (including tax) is correct. In reality, SEDHV paid the sum of 137,753,385 euros excluding tax (165,064,062 euros including tax). Furthermore, SEDHV's solvency is clearly not correlated with the hotel's current profitability.

164. When SEDHV was ordered by the Paris Commercial Court to pay SOF the sum of 4,688,877.77 euros and the sum of 25,000 euros pursuant to Article 700, SEDHV paid that amount.

165. **Finally**, according to case law, there is no risk of recovery when the debtor owns real estate whose value exceeds the amount of the debt in question[14]. However, in this case, SEDHV owns the hotel, the value of which far exceeds the amount of the debt claimed by SOF.

---

[13]Exhibit No. 47:

[14] Paris Court of Appeal, Division 1, Section 5, March 29, 2023, No. 22/20765. Read online: https://www.doctrine.fr/d/CA/Paris/2023/CAPAB3DE696BC50346B1D2B

166. The mere fact that SEDHV's counsel commissioned a study on options for restructuring the group in France and analyzed, in the abstract, the pros and cons of selling this hotel as part of an internal restructuring (a sale that, incidentally, did not take place) is not sufficient to call into question this obvious fact: the value of SEDHV's real estate assets far exceeds the amount of SOF's alleged claim, especially since SEDHV has no bank debt and owes money only to other companies within its group.

167. This is further proof that there is absolutely no risk of non-payment regarding SOF's alleged debt, as SEDHV has always paid its debts on time.

168. SOF cannot therefore seriously argue that the risk stems from SEDHV's unreasonable refusal to acknowledge a debt.

169. SEDHV seeks only to ensure the performance of the SOF Agreement entered into between the Parties. SEDHV's position is all the more justified given (i) the numerous inconsistencies in the DGD drafts provided by SOF, (ii) the fact that SOF altered the amount of its financial claims regarding the work throughout the first-instance proceedings before the Paris Commercial Court, and (iii) the 6,000 reservations, the numerous defects and urban planning non-compliances that were identified in the work carried out by SOF, forcing SEDHV to close the Hotel in the first half of 2025 to remedy them.

> **Exhibit No. 36: Amending building permit No. 3 issued on December 15, 2023**

170. **Under these circumstances, SOF has failed to demonstrate that there is any threat to the collection of its alleged debt. Assuming that SOF's claim is valid (which is disputed), SEDHV is not in a financial situation that would jeopardize the recovery of the debt.**

171. Furthermore, pursuant to Article 10 of the Civil Code, the Court of Cassation holds that the principle of loyalty requires the petitioner to "*demonstrate good faith **in the presentation of the facts in support of its petition**"*[15].*According to the Paris Court of Appeal, this requirement is necessary due to the extraordinary nature of the measure, which was obtained without a hearing*[16].

172. In a judgment dated December 20, 2024, the Paris Judicial Court thus revoked an order granted on motion and annulled a seizure report issued pursuant to that order on the grounds that the petitioner had concealed material information that had prevented the judge from objectively assessing the issues at stake in the motion.

*"By withholding this information, which it could not have been unaware of, given that it was the applicant in the original application in Turkey, Gök Triko **failed to present, in support of its motion, all the objective facts necessary to enable the judge to fully grasp the issues at stake in the proceedings for which the seizure of counterfeit goods was sought. In doing so, they failed to act in good faith when filing their motion and prevented the judge from fully exercising his discretion to assess the circumstances of the case in order to grant an appropriate remedy.***

*Consequently, the order issued in response to this motion must be revoked, and the report of seizure for infringement drawn up pursuant to that order must be annulled."*

> **Exhibit No. 38: Paris Judicial Court, 3rd ch, 2nd sect, December 20, 2024, Case No. 24/09419**

---

[15] Cass. com., December 6, 2023, No. 22-11.071 (emphasis added).

[16] Paris Court of Appeal, November 6, 2020, Case No. 20/01647. Read online: https://www.doctrine.fr/d/CA/Paris/2020/C60C991111CA69E9E0E43: *"the extraordinary nature of [a] measure, **obtained without a hearing and authorizing investigations or protective measures at a third party's premises without their consent, which requires the petitioner to act in good faith and to provide the judge with an accurate account of the facts underlying their petition**"* (emphasis added).

173. In this case, SOF presented the facts of the matter in a particularly biased manner and, in particular, failed to mention in its petition the existence of two proceedings concerning the performance of the work that are **currently pending** before the Court of Appeal and the Paris Economic Activities Court, in order to claim that it holds a claim against SEDHV that is valid in principle.

174. SOF thus engaged in a misleading presentation of the facts, which justifies the revocation of the order.

### (c)    On the compensation for the damage suffered by SEDHV

175. Under Article L. 512-2 of the Code of Civil Enforcement Procedures, when a judge has ordered the release of property, the applicant may be ordered to compensate for any damages caused by the provisional measure.

176. In a ruling of March 24, 2023, the Paris Court of Appeal held that protective attachment measures carried out when the conditions for their implementation were not met necessarily cause prejudice to the attached party[17].

177. Abuse occurs when a provisional attachment involves such a large sum that it paralyzes the operations of the allegedly debtor company by depriving it of its available assets[18].

178. The provisional seizures totaling 12,535,939 euros were clearly initiated, in part just before the end-of-year holidays, with the intention of harming SEDHV's interests. They are unfair both in their purpose and in their effect.

179. In reality, SOF sought through its petition for attachment what it had been unable to obtain from the Court, namely payment of approximately 20,000,000 euros.

180. **For all the reasons set forth above, SEDHV requests the revocation of the enforcement judge's order of December 9, 2024, the lifting of all provisional measures implemented by SOF pursuant to that order, and an order requiring SOF to pay the sum of 50,000 euros in damages for wrongful seizure.**

* * *

Finally, because it would be unfair to require SEDHV to bear the costs it was compelled to incur in order to defend its rights, we request that Your Honor, the Enforcement Judge to order SOF to pay them the sum of 15,000 euros pursuant to Article 700 of the Code of Civil Procedure, as well as all costs.

---

[17] Paris Court of Appeal, Division 1, Section 5, March 29, 2023, No. 22/20765. Read online: https://www.doctrine.fr/d/CA/Paris/2023/CAPAB3DE696BC50346B1D2B

[18] Dijon Court of Appeal, Dec. 16, 2008, No. 08/00693. Read online: https://www.doctrine.fr/d/CA/Dijon/2008/SKF847A00045A68E78C6B1: "*It correctly held that the risks to the recovery of the debt had not been established in this case, since DYN'AERO's financial stability was not compromised, and that the incidents that occurred during another provisional attachment proceeding should be addressed separately, that the transfer of inventory and operations abroad had not been demonstrated, that the early warning procedure was not significant, and that the attachment in question had the effect of paralyzing DYN'AERO and dooming it in the short term by depriving it of all cash flow*"

25

**Exhibit B**
**Page 56**

- **ORDER** SOF CONSTRUCTION SA to pay SOCIETE D'EXPLOITATION ET DE DETENTION HOTELIERE VISTA the sum of 50,000 euros in damages for wrongful seizure;

- **ORDER** SOF CONSTRUCTION SA to pay SOCIETE D'EXPLOITATION ET DE DETENTION HOTELIERE VISTA the sum of 15,000 euros pursuant to Article 700 of the Code of Civil Procedure;

- **ORDER** SOF CONSTRUCTION SA to pay all costs.

*SUBJECT TO ALL RESERVATIONS.*

27

**List of exhibits submitted in support of the writ of summons**

**Exhibit No. 1:**    Kbis extract from SEDHV

**Exhibit No. 2:**    Kbis extract from SOF

**Exhibit No. 3:**    Delegated Project Management Agreement entered into between SEDHV and HSMC on September 20, 2019, and its translation

**Exhibit No. 4:**    General Contractor Agreement entered into between SEDHV and SOF on February 5, 2021

**Exhibit No. 5:**    Order of September 10, 2021, issued by the Mayor of Roquebrune-Cap-Martin

**Exhibit No. 6:**    Email from HSMC of March 25, 2022 and its translation

**Exhibit No. 7:**    Letter from HSMC's counsel dated April 14, 2022 and its translation

**Exhibit No. 8:**    Letter from SOF to SEDHV dated April 19, 2022, and its translation

**Exhibit No. 9:**    Letter from SEDHV's counsels dated April 20, 2022

**Exhibit No. 10:**    Letter from HSMC to SEDHV dated April 20, 2022 and its translation

**Exhibit No. 11:**    Letter from SEDHV to SOF dated April 21, 2022

**Exhibit No. 12:**    Letter from SEDHV to SOF dated April 22, 2022

**Exhibit No. 13:**    Order authorizing the opening to the public of May 3, 2022

**Exhibit No. 14:**    Letter from SEDHV to HSMC dated May 6, 2022

**Exhibit No. 15:**    SOF Vendor Account - SEDHV Accounting Ledgers

**Exhibit No. 16:**    Draft FGS prepared by SOF on June 16, 2022

**Exhibit No. 17:**    Letter from SEDHV to SOF dated July 15, 2022

**Exhibit No. 18:**    Letter from SEDHV to SOF dated December 23, 2022

**Exhibit No. 19:**    Letter from SEDHV to SOF dated January 11, 2023

**Exhibit No. 20:**    Amended building permit No. 1

**Exhibit No. 21:**    Letter from the Prefect of the Alpes-Maritimes dated January 30, 2023

**Exhibit No. 22:**    Judgment of the Paris Commercial Court of July 5, 2024

**Exhibit No. 23:**    SEDHV's consent to the attachment order served by SOF against QNB, dated July 18, 2024

**Exhibit No. 24:**    Minutes of the service of the order lifting the attachment on SEDHV's bank accounts held at Qatar National Bank Centrale Entrep and BNP Paribas, dated July 23 and 29, 2024

**Exhibit No. 25:**    Summons for an incidental appeal served by SEDHV on SOF on October 4, 2024

**Exhibit No. 26:**    SEDHV's motions in its appeal against SOF

28

**Exhibit B**
**Page 58**

**Exhibit No. 27:** Summon issued by SOF to SEDHV on October 7, 2024, to appear before the Paris Commercial Court

**Exhibit No. 28:** Notice to SEDHV regarding a provisional attachment of claims dated December 24, 2024, on SEDHV's bank accounts held at Qatar National Bank Centrale Entrep

**Exhibit No. 29:** Notice to SEDHV of a provisional attachment of claims dated December 24, 2024, on SEDHV's bank accounts held at BNP Paribas

**Exhibit No. 30:** Emails dated January 27, 2021 regarding the price clause of the SOF Contract

**Exhibit No. 31:** Letter from SEDHV to SOF dated September 7, 2022

**Exhibit No. 32:** Summary conclusions of SEDHV filed with the Paris Commercial Court on May 30, 2024

**Exhibit No. 33:** Report by Lynkea dated December 13, 2023, provided by SOF

**Exhibit No. 34:** ProRevise's Financial Report No. 2 on the analysis of the accounting and financial data provided by SOF and HSMC on January 30, 2024

**Exhibit No. 35:** Report No. 1 by Mr. Guerpillon, dated December 2023, regarding defects and non-conformities at the Maybourne Riviera Hotel

**Exhibit No. 36:** Amended Building Permit No. 3 issued on December 15, 2023

**Exhibit No. 37:** Official exchanges between the SEDHV and SOF's counsels from January 15 to 20, 2025

**Exhibit No. 38:** Paris Court of General Jurisdiction, 3rd Chamber, 2nd Section, December 20, 2024, Case No. 24/09419

**Exhibit No. 39:** Notice to SEDHV regarding a provisional attachment of claims dated February 24, 2025, on SEDHV's bank accounts held at Qatar National Bank Centrale Entrep

**Exhibit No. 40:** Notice to SEDHV of a provisional attachment of claims dated February 24, 2025, on SEDHV's bank accounts held at BNP Paribas

**Exhibit No. 41:** Notice to SEDHV of a provisional attachment of claims dated March 7, 2025, on SEDHV's bank accounts held at Qatar National Bank Centrale Entrep

**Exhibit No. 42:** Notice to SEDHV of a provisional judicial mortgage dated March 7, 2025, filed with the Nice 1 Land Registry

**Exhibit No. 43:** Motion by SDHV to obtain permission to summon SOF for a hearing at a court-specified time

**Exhibit No. 44:** Order of the Enforcement Judge of the Paris Judicial Court dated March 31, 2025

**Exhibit No. 45:** Cash Management Agreement between SEDHV and Azolla Finance dated June 30, 2021

**Exhibit No. 46:** Azolla Finance's Financial Statements for Fiscal Year 2023

**Exhibit No. 47:** Press article from January 22, 2025: "Raid on his apartment on Place Vendôme in Paris takes a turn for the worse: a millionaire faces charges of assault" - Actu.fr

**Exhibit No. 48:** Consolidated Financial Statements of Lys Holding I S.à r.l. as of December 31, 2023

29

**Exhibit B
Page 59**

**ORDER ON APPLICATION**

**We, the enforcement judge of the Paris Judicial Court,**

| | |
|---|---|
| *In view of the foregoing petition, the grounds set forth, and the documents submitted; Pursuant to Article R. 121-12 of the Code of Civil Enforcement Procedures; Given the urgency of the matter,* | Marie CORNET<br>Judge |

WE AUTHORIZE the SOCIÉTÉ D'EXPLOITATION ET DE DÉTENTION HÔTELIÈRE VISTA to summon the company SOF CONSTRUCTION SA before the enforcement judge of the judicial court:

AT THE HEARING OF [handwritten:] *04/08/2025 at 03:00 p.m.*

WE ORDER that the summons must be served no later than [handwritten:] *04/05/2025*

WE ORDER that a copy of the documents attached to the application must be served with the summons,

WE ORDER that this Order shall be filed with the clerk of this court,

**Executed in Paris, on** [handwritten:] *03/31/2025*

**For the enforcement judge of the Paris Judicial Court**

**For the Clerk**

[signature]
[stamp:] PARIS JUDICIAL COURT
2020-0284

6

**Exhibit B
Page 60**

[handwritten:] *25/643*

*To the Enforcement Judge of the Paris Judicial Court*

---

**APPLICATION FOR AUTHORIZATION**

**TO SUMMON AT A SPECIFIED TIME**

**THE PROCEEDINGS BEFORE THE ENFORCEMENT JUDGE OF THE PARIS JUDICIAL COURT**

---

**AT THE REQUEST OF:**

**SOCIÉTÉ D'EXPLOITATION ET DE DÉTENTION HÔTELIÈRE VISTA,** a simplified joint-stock company with a share capital of 100,001,000.00 euros, registered with the Paris Trade and Companies Register under number 805.264.082, with its registered office located at 23 rue François Ier in Paris (75008), represented by its Chairman, domiciled in that capacity at the aforementioned registered office.

Represented by:                **Baker & McKenzie A.A.R.P.I**
                               Esq. Eric Lasry
                               Attorney at the Bar of Paris
                               1 rue Paul Baudry - 75008 Paris
                               Tel.: 01 44 17 53 00
                               Toque P 445

[stamp:] MAIL RECEIVED

On   MARCH 31, 2025

*enforcement judge*

*which is established by this document and any subsequent proceedings, and at whose office the plaintiff has elected to be served,*

**Requests that the Enforcement Judge of the Paris Judicial Court grant authorization to serve, at the time indicated, due to the urgency of the matter and for the reasons set forth below, the summons and the documents listed below.**

---

**STATEMENT OF GROUNDS**

Société d'Exploitation et de Détention Hôtelière Vista (hereinafter "**SEDHV**") is the owner of the Mayboume Riviera Hotel located in Roquebrune-Cap-Martin on the Côte d'Azur (hereinafter the "**Hotel**").

SEDHV has engaged SOF Construction (hereinafter "**SOF**") as general contractor and Hume St Management Consultants (hereinafter "**HSMC**") as project manager to carry out renovation and expansion work on the Hotel.

While SEDHV, SOF, and HSMC have been involved since 2022 in litigation concerning, among other things, the improper performance of the work and the payments claimed by SOF and HSMC, and while a case is currently pending before the Paris Court of Appeal, SOF felt it necessary to apply to the enforcement judge of the Paris Judicial Court to obtain authorization to take protective measures.

1

**Exhibit B**
**Page 61**

Pursuant to an order on motion dated December 9, 2024, issued on the basis of a truncated and inaccurate presentation of the facts by SOF, the enforcement judge authorized a judicial officer to (i) consult the NATIONAL REGISTER OF BANK AND SIMILAR ACCOUNTS (FICOBA) to identify bank accounts opened in the name of SEDHV, (ii) to place provisional attachments on claims held by any banking institution in which SEDHV is likely to hold accounts in the amount of 12,535,939 euros in principal and interest, and (iii) to register a provisional judicial mortgage on certain real estate properties belonging to SEDHV.

On December 20, 2024, SOF initiated two garnishments against SEDHV's accounts held at Qatar National Bank Centrale Entrep and BNP Paribas, totaling 5,583,490.85 euros.

These two seizures were reported to SEDHV on December 24, 2024, Christmas Eve.

By a writ of process issued on January 18, 2025, SEDHV promptly filed a motion with the enforcement judge of the Paris Judicial Court seeking the release of these provisional attachments.

Originally scheduled for February 19, 2025, the hearing on SEDHV's motion to lift the attachment order has been postponed to May 21, 2025, following SOF's submission of its brief the day before the originally scheduled hearing.

Although SOF is fully aware of the objections raised by SEDHV and of this ongoing proceeding, it continues to impose an increasing number of interim measures against SEDHV, thereby taking advantage of the stay of proceedings that was ordered due to the deliberate delay in filing its brief.

Such behavior is completely unacceptable and amounts to a relentless campaign against SEDHV.

Thus, on February 24, 2025, SOF had two new provisional attachments placed on SEDHV's accounts at the two aforementioned banks, totaling 828,791.34 euros.

These two seizures were reported to SEDHV on February 27, 2025.

On March 7, 2025, SOF again placed a provisional attachment on SEDHV's account at Qatar National Bank in the amount of 2,000.69 euros.

On the same day, SOF notified SEDHV of the registration of a precautionary judicial mortgage in the amount of 1,200,000 euros on two of its properties located at 1551 Route de la Turbie in Roquebrune-Cap-Martin 06190 and 42 Avenue Winston Churchill in Roquebrune-Cap-Martin 06190, respectively.

Both the seizure and the registration of this provisional judicial mortgage were reported to SEDHV on March 11, 2025.

Thus, it is clear from the facts set out above that SOF is seeking an increasing number of provisional measures in order to seize the sum of 12,535,939 euros from SEDHV, even though the conditions for granting such measures have not been met. In fact, in seeking authorization to take provisional measures, SOF misrepresented the facts and concealed the existence of pending proceedings on the merits in order to claim that it held a claim that was well-founded in principle. Furthermore, it misrepresented the financial situation of SEDHV and the group to which it belongs in order to justify alleged collection threats, as is amply demonstrated in the draft summons attached to this petition.

Furthermore, the proliferation of these measures and the very large sums involved are clearly likely to paralyze the operations of the SEDHV.

2

**Exhibit B
Page 62**

These measures, both in number and scope, are severely disrupting and undermining the operations of SEDHV, which is unable to cover the hotel's normal operating expenses, settle the various charges for which it is responsible, including the salaries of the Hotel's staff, and to pay the invoices for the work that SEDHV was forced to undertake due to SOF and HSMC's breach of their commitments.

Since SEDHV has no means of defense until May 21,the date on which the hearing for oral arguments was set by the enforcement judge of the Paris Judicial Court, it is vulnerable to an increasing number of provisional measures taken by SOF.

Consequently, it is imperative that SEDHV secure, as soon as possible, the revocation of the order issued upon motion by the enforcement judge of the Paris Judicial Court on December 9, 2024, and the lifting of all provisional measures taken by SOF pursuant to that order.

**Given the clear urgency of the situation, the damages and risks to which SEDHV is exposed, SEDHV hereby requests that the Enforcement Judge of the Paris Judicial Court grant authorization to summon SOF at the time indicated <u>to the first available hearing</u>, in revocation of the order on motion issued by the Enforcement Judge of the Paris Judicial Court on December 9, 2024, and to lift all provisional measures taken by SOF on the basis of that order.**

Executed in Paris, March 28, 2025

[signature]

_____

Eric Lasry

3

**Exhibit B**
**Page 63**

**List of exhibits to the request**

**Exhibit No. 1:**  Kbis extract from SEDHV

**Exhibit No. 2:**  Kbis extract from SOF

**Exhibit No. 3:**  Delegated Project Management Agreement entered into between SEDHV and HSMC on September 20, 2019, and its translation

**Exhibit No. 4:**  General Contractor Agreement entered into between SEDHV and SOF on February 5, 2021

**Exhibit No. 5:**  Order of September 10, 2021, issued by the Mayor of Roquebrune-Cap-Martin

**Exhibit No. 6:**  Email from HSMC of March 25, 2022 and its translation

**Exhibit No. 7:**  Letter from HSMC's counsel dated April 14, 2022 and its translation

**Exhibit No. 8:**  Letter from SOF to SEDHV dated April 19, 2022, and its translation

**Exhibit No. 9:**  Letter from SEDHV's counsels dated April 20, 2022

**Exhibit No. 10:**  Letter from HSMC to SEDHV dated April 20, 2022 and its translation

**Exhibit No. 11:**  Letter from SEDHV to SOF dated April 21, 2022

**Exhibit No. 12:**  Letter from SEDHV to SOF dated April 22, 2022

**Exhibit No. 13:**  Order authorizing the opening to the public of May 3, 2022

**Exhibit No. 14:**  Letter from SEDHV to HSMC dated May 6, 2022

**Exhibit No. 15:**  SOF Vendor Account - SEDHV Accounting Ledgers

**Exhibit No. 16:**  Draft FGS prepared by SOF on June 16, 2022

**Exhibit No. 17:**  Letter from SEDHV to SOF dated July 15, 2022

**Exhibit No. 18:**  Letter from SEDHV to SOF dated December 23, 2022

**Exhibit No. 19:**  Letter from SEDHV to SOF dated January 11, 2023

**Exhibit No. 20:**  Amended building permit No. 1

**Exhibit No. 21:**  Letter from the Prefect of the Alpes-Maritimes dated January 30, 2023

**Exhibit No. 22:**  Judgment of the Paris Commercial Court of July 5, 2024

**Exhibit No. 23:**  SEDHV's consent to the attachment order served by SOF against QNB, dated July 18, 2024

**Exhibit No. 24:**  Minutes of the service of the order lifting the attachment on SEDHV's bank accounts held at Qatar National Bank Centrale Entrep and BNP Paribas, dated July 23 and 29, 2024

**Exhibit No. 25:**  Notice of appeal filed by SEDHV against SOF on October 4, 2024

**Exhibit No. 26:**  SEDHV's motions in its appeal against SOF

**Exhibit No. 27:**  Summon issued by SOF to SEDHV on October 7, 2024, to appear before the Paris Commercial Court

4

**Exhibit B**
**Page 64**

**Exhibit No. 28:** Notice to SEDHV regarding a provisional attachment of claims dated December 24, 2024, on SEDHV's bank accounts held at Qatar National Bank Centrale Entrep

**Exhibit No. 29:** Notice to SEDHV of a provisional attachment of claims dated December 24, 2024, on SEDHV's bank accounts held at BNP Paribas

**Exhibit No. 30:** Emails dated January 27, 2021 regarding the price clause of the SOF Contract

**Exhibit No. 31**: Letter from SEDHV to SOF dated September 7, 2022

**Exhibit No. 32:** Summary conclusions of SEDHV filed with the Paris Commercial Court on May 30, 2024

**Exhibit No. 33:** Report by Lynkea dated December 13, 2023, released by SOF

**Exhibit No. 34:** ProRevise's Financial Report No. 2 on the analysis of the accounting and financial data provided by SOF and HSMC on January 30, 2024

**Exhibit No. 35:** Report No. 1 by Mr. Guerpillon, dated December 2023, regarding defects and non-conformities at the Maybourne Riviera Hotel

**Exhibit No. 36:** Amended Building Permit No. 3 issued on December 15, 2023

**Exhibit No. 37:** Official exchanges between the SEDHV and SOF's counsel from January 15 to 20, 2025

**Exhibit No. 38:** Paris Court of General Jurisdiction, 3rd Chamber, 2nd Section, December 20, 2024, Case No. 24/09419

**Exhibit No. 39:** Notice to SEDHV regarding a provisional attachment of claims dated February 24, 2025, on SEDHV's bank accounts held at Qatar National Bank Centrale Entrep

**Exhibit No. 40:** Notice to SEDHV of a provisional attachment of claims dated February 24, 2025, on SEDHV's bank accounts held at BNP Paribas

**Exhibit No. 41:** Notice to SEDHV of a provisional attachment of claims dated March 7, 2025, on SEDHV's bank accounts held at Qatar National Bank Centrale Entrep

**Exhibit No. 42:** Notice to the SEDHV of a provisional judicial mortgage dated March 7, 2025, filed with the Nice 1 Land Registry

**Exhibit No. 43:** *Reserved*

**Exhibit No. 44:** *Reserved*

**Exhibit No. 45:** Cash Management Agreement between SEDHV and Azolla Finance dated June 30, 2021

**Exhibit No. 46:** Azolla Finance's Financial Statements for Fiscal Year 2023

**Exhibit No. 47:** Press article from January 22, 2025: "Raid on his apartment on Place Vendôme in Paris takes a turn for the worse: a millionaire faces charges of assault" - Actu.fr

**Exhibit No. 48:** Consolidated Financial Statements of Lys Holding I S.à r.l. as of December 31, 2023

**Exhibit No. 49:** Draft summons for a specific time before the enforcement judge of the Paris Judicial Court

5

**Exhibit B**
**Page 65**

## ORDER ON APPLICATION

We, the enforcement judge of the Paris Judicial Court,

*In view of the foregoing petition, the grounds set forth, and the documents submitted,*
*Pursuant to Article R. 121-12 of the Code of Civil Enforcement Procedures,*
*Given the urgency,*

WE AUTHORIZE SOCIÉTÉ D'EXPLOITATION ET DE DÉTENTION HÔTELIÈRE VISTA to summon the company SOF CONSTRUCTION SA before the enforcement judge of the judicial court:

AT THE HEARING OF _____

WE ORDER that the summons must be served no later than _____,

WE ORDER that a copy of the documents attached to the application must be served with the summons,

WE ORDER that this Order shall be filed with the clerk of this court,


**Executed in Paris, on**



**For the enforcement judge of the Paris Judicial Court**



**For the Clerk**

[logo:] Kaliact

**KALIACT BAILIFFS PROVENCE AND THE COTE D'AZUR**

<u>OFFICE OF AIX EN PROVENCE</u>

**Michel Frédéric COUTANT**
**Julien THIRY**

Associate Judicial Officers

47 bis B Boulevard Carnot

13100 AIX EN PROVENCE

[icon] :04 42 38 02 16

[icon] : 04 42 38 05 42

[icon] : aix@huissiers-khpca.fr

Website: www.maitre-cojtant.fr

# JUDICIAL COMMISSIONER'S WRIT

*CERTIFIED COPY*

| COST OF THE SUMMONS | |
|---|---|
| Decree No. 2016-230 of February 26, 2016 Order of February 28, 2024 setting the regulated fees for judicial officers | |
| Increased fee for urgency (Art A444-12) | 178.56 |
| Fees (Art L444-1) | 343.20 |
| COPY OF EXHIBITS | |
| Travel expenses (Art A444-48) | 9.40 |
| **Total excl. tax** | 531.16 |
| VAT (20.00%) | 106.23 |
| **Total excluding postage** | 637.39 |
| Postage (Art R444-3) | |
| Standard Postage | 5.06 |
| **Total incl. tax** | 642.45 |
| **Deed exempt from tax** | |

[logo]

References: V – 32377

Mandate No. 65 - MRCPM

# METHOD OF PERSONAL DELIVERY (LEGAL ENTITY)

ON: TUESDAY, APRIL FIRST, TWO THOUSAND TWENTY-FIVE at nine fifty-five

At the request of:
S.A.S. SOCIÉTÉ D'EXPLOITATION ET DE DÉTENTION HÔTELIERE VISTA

Being mandated for the purpose of serving a writ of: AIX Summons

This document was issued by the undersigned judicial officer based on the statements made to him, to:

**S.A.S SOF CONSTRUCTION SAS, registered under No. 883588212 in the Commercial and Companies Register of AIX-EN-PROVENCE, with its principal place of business at Château La Coste, LE PUY-SAINTE-RÉPARADE (13610), acting in legal proceedings through its current President, who is domiciled in that capacity at the aforementioned principal place of business**

in accordance with the terms and conditions set forth below.

I went to the address listed above, and while there, a copy of this document was delivered to **Léa GANGLOFF, the buyer, who acknowledged receipt,**

who stated that he or she was authorized to receive a copy of the document and confirmed that the recipient's residence or registered office was still at that address.

The letter required under <u>Article 658 of the Code of Civil Procedure</u> was sent today or on the first business day following the date hereof to the above addressee's residence, along with a copy of the document. The bailiff's seal is affixed to the envelope.

This document consists of 765 pages.

The cost of the document is listed opposite.

I have highlighted the sections regarding service.

Nicolas HUMBERT

[signature]

[stamp:] ★ SELARL KALIACT ★
BAILIFFS PROVENCE COTE D'AZUR

**Exhibit B**
**Page 67**

---

### ASSIGNATION A HEURE INDIQUEE DEVANT LE JUGE DE L'EXECUTION

### DU TRIBUNAL JUDICIAIRE DE PARIS

---

L'AN DEUX MILLE VINGT-CINQ ET LE PREMIER ~~===~~ AVRIL à *9 heures 55*

A LA DEMANDE DE :

**SOCIETE D'EXPLOITATION ET DE DETENTION HÔTELIERE VISTA**, société par actions simplifiée au capital social de 100.001.000,00 euros, immatriculée au Registre du Commerce et des Sociétés de Paris sous le numéro 805.264.082, dont le siège social est sis 23 rue François Ier à Paris (75008), prise en la personne de son Président domicilié en cette qualité audit siège

Ayant pour avocat constitué :    Baker & McKenzie A.A.R.P.I
                                 Me Eric Lasry
                                 Avocat au Barreau de Paris
                                 1 rue Paul Baudry - 75008 Paris
                                 Tél. : 01 44 17 53 00
                                 Toque P 445

*Lequel se constitue sur la présente et ses suites et au cabinet duquel la demanderesse élit domicile.*

**J'AI, COMMISSAIRE DE JUSTICE SOUSSIGNE,**

SELARL KALIACT HUISSIERS PROVENCE COTE D'AZUR - OFFICE D'AIX EN PROVENCE - 47 BIS BOULEVAR CARNOT 13100 AIX EN PROVENCE REPRESENTÉE PAR MICHEL FREDERIC COUTANT ET JULIEN THIRY COMMISSAIRES DE JUSTICE ASSOCIÉS - NICOLAS HUMBERT COMMISSAIRE DE JUSTICE SALARIE L'UN D'EUX SOUSSIGNE

**DONNE ASSIGNATION A :**

**SOF CONSTRUCTION SAS**, société par actions simplifiée à associé unique au capital social de 5.000 euros, immatriculée au Registre du Commerce et des Sociétés d'Aix-en-Provence sous le numéro 883.588.212, dont le siège social est sis Château La Coste 13610 Le Puy-Sainte-Réparade, prise en la personne de son Président domicilié en cette qualité audit siège,

Par le présent exploit

**D'AVOIR A COMPARAITRE,**

### LE MARDI 8 AVRIL 2025 à 15 HEURES

**A l'audience et par-devant le Juge de l'exécution du Tribunal judiciaire de Paris sis Parvis du Tribunal de Paris, 75859 PARIS Cedex 17, France,**

*En vertu d'une ordonnance rendue par le juge de l'exécution du tribunal judiciaire de Paris le 31 mars 2025, à la suite d'une requête soutenue devant lui le même jour, ces deux actes étant dénoncés au pied des présentes,*

1

**TRES IMPORTANT**

Dans les quinze jours de la date indiquée en tête du présent acte, sous réserve de l'allongement en raison de la distance conformément aux articles 643 et 644 du Code de procédure civile, vous êtes tenue de constituer avocat pour être représentée devant le Juge de l'exécution du Tribunal judiciaire de Paris.

A défaut, vous vous exposez à ce qu'un jugement soit rendu à votre encontre sur les seuls éléments fournis par votre adversaire.

En vertu de l'article 5 de la loi n° 71-1130 du 31 décembre 1971, les avocats exercent leur ministère et peuvent plaider sans limitation territoriale devant toutes les juridictions et organismes juridictionnels ou disciplinaires, sous les réserves prévues à l'article 4.

Ils peuvent postuler devant l'ensemble des tribunaux judiciaires du ressort de la cour d'appel dans lequel ils ont établi leur résidence professionnelle et devant ladite cour d'appel.

Par dérogation au deuxième alinéa, les avocats ne peuvent postuler devant un autre tribunal que celui auprès duquel est établie leur résidence professionnelle ni dans le cadre des procédures de saisie immobilière, de partage et de licitation, ni au titre de l'aide juridictionnelle, ni dans des instances dans lesquelles ils ne seraient pas maîtres de l'affaire chargés également d'assurer la plaidoirie.

Les personnes dont les ressources sont insuffisantes peuvent, si elles remplissent les conditions prévues par la loi n° 91-647 du 10 juillet 1991 sur l'aide juridique, bénéficier d'une aide juridictionnelle. Elles doivent, pour demander cette aide, s'adresser au bureau d'aide juridictionnelle établi au siège du Tribunal judiciaire de leur domicile.

Il vous est rappelé les dispositions des articles R. 121-8 à R. 121-10 du Code des procédures civiles d'exécution :

- *"La procédure est orale"*.

- *"Le juge peut, conformément au second alinéa de l'article 446-1 du code de procédure civile , dispenser une partie qui en fait la demande de se présenter à une audience ultérieure. Dans ce cas, le juge organise les échanges entre les parties. La communication entre elles est faite par lettre recommandée avec demande d'avis de réception ou par notification entre avocats et il en est justifié auprès du juge dans les délais qu'il impartit. A l'issue de la dernière audience, le greffe informe les parties de la date à laquelle le jugement sera rendu"*.

- *"En cours d'instance, toute partie peut aussi exposer ses moyens par lettre adressée au juge de l'exécution, à condition de justifier que la partie adverse en a eu connaissance avant l'audience par lettre recommandée avec demande d'avis de réception.*
  *La partie qui use de cette faculté peut ne pas se présenter à l'audience, conformément au second alinéa de l'article 446-1 du code de procédure civile"*.

Enfin, il vous est également rappelé les dispositions des articles 641, 642 et 643 du Code de procédure civile :

- *"Lorsqu'un délai est exprimé en jours, celui de l'acte, de l'événement, de la décision ou de la notification qui le fait courir ne compte pas.*
  *Lorsqu'un délai est exprimé en mois ou en années, ce délai expire le jour du dernier mois ou de la dernière année qui porte le même quantième que le jour de l'acte, de l'événement, de la décision ou de la notification qui fait courir le délai. A défaut d'un quantième identique, le délai expire le dernier jour du mois.*
  *Lorsqu'un délai est exprimé en mois et en jours, les mois sont d'abord décomptés, puis les jours"*.

2

– "*Tout délai expire le dernier jour à vingt-quatre heures.*
*Le délai qui expirerait normalement un samedi, un dimanche ou un jour férié ou chômé est prorogé jusqu'au premier jour ouvrable suivant*".

– "*Lorsque la demande est portée devant une juridiction qui a son siège en France métropolitaine, les délais de comparution, d'appel, d'opposition, de tierce opposition dans l'hypothèse prévue à l'article 586 alinéa 3, de recours en révision et de pourvoi en cassation sont augmentés de :*
*1. Un mois pour les personnes qui demeurent en Guadeloupe, en Guyane, à la Martinique, à La Réunion, à Mayotte, à Saint-Barthélemy, à Saint-Martin, à Saint-Pierre-et-Miquelon, en Polynésie française, dans les îles Wallis et Futuna, en Nouvelle-Calédonie et dans les Terres australes et antarctiques françaises ;*
*2. Deux mois pour celles qui demeurent à l'étranger*".

Les pièces sur lesquelles la demande est fondée sont énumérées sur un bordereau annexé aux présentes.

3

## TABLE DES MATIERES

I.     EXPOSE DES FAITS .................................................................................................... 7

1.1    PRÉSENTATION DES PARTIES ................................................................................... 7

(a)    SEDHV ................................................................................................................ 7
(b)    SOF ..................................................................................................................... 7

1.2    LE CONTEXTE CONTRACTUEL .................................................................................. 7

(a)    Le contrat de maitrise d'ouvrage déléguée du 20 septembre 2019 .................. 8
(b)    Le contrat de contractant général du 5 février 2021 ....................................... 8

1.3    L'OUVERTURE PARTIELLE DE L'HÔTEL AU MOIS DE SEPTEMBRE 2021 ................. 9

1.4    L'ABANDON DU CHANTIER PAR SOF EN AVRIL 2022 ............................................ 9

1.5    LE DÉCOMPTE GÉNÉRAL ET DÉFINITIF ................................................................. 10

1.6    LA RÉALISATION PAR SOF ET HSMC DE TRAVAUX EN VIOLATION DES PERMIS DE CONSTRUIRE AYANT DONNÉ LIEU À UNE PROCÉDURE PÉNALE ................................................. 12

1.7    LES PROCÉDURES CIVILES EN COURS ................................................................... 12

(a)    La procédure pendante devant la Cour d'appel de Paris ............................... 12
(b)    La procédure devant le Tribunal des activités économiques de Paris ........... 14
(c)    La procédure devant le Juge de l'exécution du Tribunal judiciaire de Paris .. 14

II.    DISCUSSION ............................................................................................................ 16

1.1    SUR LA COMPÉTENCE ............................................................................................ 16

1.2    SUR LES CONDITIONS DE LA MAINLEVÉE .............................................................. 16

(a)    Sur l'absence de créance fondée en son principe ........................................... 17
(b)    Sur l'absence de menaces de recouvrement .................................................... 21
(c)    Sur la réparation du préjudice subi par SEDHV ............................................ 25

PAR CES MOTIFS ......................................................................................................... 26

BORDEREAU DES PIECES COMMUNIQUEES A L'APPUI DE L'ASSIGNATION ........................... 28

4

**PLAISE A MADAME OU MONSIEUR LE JUGE DE L'EXECUTION**

<u>**OBJET DE LA DEMANDE**</u>

La Société d'Exploitation et de Détention Hôtelière Vista (ci-après « **SEDHV** ») est propriétaire de l'hôtel Maybourne Riviera situé à Roquebrune-Cap-Martin sur la Côte d'Azur (ci-après l'« **Hôtel** »).

SEDHV a mandaté les sociétés SOF Construction (ci-après « **SOF** »), en qualité de contractant général, et Hume St Management Consultants (ci-après « **HSMC** »), en qualité de maître d'ouvrage délégué, en vue de réaliser des travaux de rénovation et d'extension de l'Hôtel.

Alors que SEDHV, SOF et HSMC sont engagées depuis 2022 dans une procédure contentieuse portant notamment sur la mauvaise exécution des travaux et sur les rémunérations alléguées par SOF et HSMC et qu'une instance est actuellement pendante devant la Cour d'appel de Paris, SOF a cru devoir saisir le Juge de l'exécution du Tribunal judiciaire de Paris en vue d'obtenir une autorisation de procéder à des mesures conservatoires.

Suivant ordonnance sur requête en date du 9 décembre 2024, rendue sur la base d'une présentation tronquée et inexacte des faits par SOF, le Juge de l'exécution a autorisé un commissaire de justice à (i) consulter le FICHIER NATIONAL DES COMPTES BANCAIRES ASSIMILES (FICOBA) afin d'identifier les comptes bancaires ouverts aux noms de SEDHV, (ii) pratiquer des saisies conservatoires de créances entre les mains de tout établissement bancaire au sein duquel SEDHV est susceptible de détenir des comptes à hauteur de 12.535.939 euros en principal et intérêts, et (iii) inscrire une hypothèque judiciaire à titre conservatoire sur certains biens immobiliers appartenant à SEDHV.

Le 20 décembre 2024, SOF a fait pratiquer deux saisies sur les comptes de SEDHV dans les livres des banques Qatar National Bank Centrale Entrep et BNP Paribas à hauteur de la somme de 5.583.490,85 euros.

Ces deux saisies ont été dénoncées à SEDHV le 24 décembre 2024.

SEDHV a donc assigné SOF en mainlevée de ces deux saisies conservatoires devant le Juge de l'exécution du Tribunal judiciaire de Paris par exploit de commissaire de justice en date du 28 janvier 2025, pour l'audience du 19 février 2025. Compte tenu de la communication des conclusions en réponse de SOF <u>la veille de l'audience, SEDHV n'a pas eu d'autre choix que de solliciter un renvoi de cette affaire. La prochaine audience a été fixée au 21 mai 2025.</u>

Toutefois, postérieurement à cette assignation, et alors même que cette procédure est toujours en cours, SOF a continué à exercer des mesures conservatoires à l'encontre de SEDHV. En effet, le 24 février 2025, SOF a fait pratiquer deux nouvelles saisies conservatoires sur les comptes de SEDHV dans les livres des deux banques précitées à hauteur de 828.791,34 euros.

Ces deux saisies ont été dénoncées à SEDHV le 27 février 2025.

Puis, le 7 mars 2025, SOF a de nouveau pratiqué une saisie conservatoire sur le compte de SEDHV dans les livres de la banque Qatar National Bank pour un montant de 2.000,69 euros.

Le même jour, SOF a notifié à SEDHV l'inscription d'une hypothèque judiciaire à titre provisoire d'un montant de 1.200.000 euros sur deux de ses immeubles respectivement situés 1551 route de la Turbie à Roquebrune-Cap-Martin 06190 et 42 avenue Winston Churchill à Roquebrune-Cap-Martin 06190.

Cette saisie et l'inscription de cette hypothèque judiciaire provisoire ont toutes deux été dénoncées à SEDHV le 11 mars 2025.

Après un bref rappel des faits, il sera ci-après démontré que les conditions pour l'octroi de mesures susvisées ne sont pas réunies. SEDHV sollicite en conséquence du Juge de l'exécution du Tribunal judiciaire de Paris la rétractation de l'ordonnance susvisée et la mainlevée des saisies conservatoires opérées.

5

**Exhibit B**
**Page 72**

Par ailleurs, SEDHV formule des demandes reconventionnelles au titre de la réparation du préjudice qu'elle subit eu égard au caractère manifestement abusif des mesures pratiquées.

6

## I.    EXPOSE DES FAITS

### 1.1    Présentation des parties

#### (a)    SEDHV

1.    Depuis 2014, SEDHV est propriétaire de l'Hôtel, anciennement dénommé Vista – La Cigale, sis 551 Route de la Turbie à Roquebrune-Cap-Martin dans les Alpes-Maritimes (06190).

**Pièce n° 1 : Extrait Kbis de SEDHV**

2.    L'Hôtel a été acquis à la barre du Tribunal, pour un prix de 30.500.000 euros, à la suite du placement en redressement judiciaire du précédent propriétaire.

3.    Par décision en date du 5 novembre 2014, le Tribunal de commerce de Nice avait en effet retenu l'offre de reprise formulée par la société French Properties Management (« **FPM** »), société de gestion des actifs en France de son Altesse Hamad bin Khalifa Al Thani, père de l'actuel Emir du Qatar.

4.    SEDHV avait alors été constituée pour les besoins de l'acquisition de l'Hôtel et en est donc devenue propriétaire.

5.    FPM et SEDHV sont ainsi toutes deux indirectement détenues par son Altesse Hamad bin Khalifa Al Thani, lequel a investi, à titre privé, dans plusieurs hôtels et de nombreux ensembles immobiliers de tout premier rang à travers le monde, et notamment en France.

6.    En 2016, SEDHV a décidé d'entreprendre un vaste projet de rénovation et d'extension qui a duré près de six ans (ci-après le « **Projet** »).

#### (b)    SOF

7.    SOF est une société de droit français, détenue par sa présidente, la société Château La Coste Participation.

**Pièce n° 2 : Extrait Kbis de SOF**

8.    SOF et Château La Coste Participation sont indirectement elles-mêmes détenues par Monsieur Patrick (Paddy) McKillen, homme d'affaires irlandais intervenant dans le secteur immobilier et de l'hôtellerie de luxe, à la tête notamment de l'hôtel 5 étoiles à Château La Coste situé au Puy Sainte-Réparade. Monsieur Patrick McKillen rencontre actuellement d'importants problèmes financiers, ayant d'ailleurs conduit à la saisie de son appartement place Vendôme (saisie à l'occasion de laquelle Monsieur Patrick McKillen se serait d'ailleurs montré violent à l'encontre de la commissaire de justice, ce qui a justifié sa comparution devant le Tribunal correctionnel de Paris le 22 janvier 2025 pour violences et outrage sur officier de service public[1]).

9.    SOF a été constituée en 2020 pour exercer l'activité de contractant général sur le chantier de l'Hôtel sous la supervision de HSMC, société également détenue par Monsieur McKillen et intervenant sur le chantier en qualité de maître d'ouvrage délégué.

10.    SOF n'a aucun salarié. L'intégralité des travaux a été réalisée par des sous-traitants ou prestataires.

### 1.2    Le contexte contractuel

11.    Les travaux d'entreprise générale du Projet avaient initialement été confiés à la société Vinci Construction France, ainsi qu'à sa filiale, la société Triverio Construction (ci-après « **Vinci** »).

---

[1] Pièce n° 47 : Article de presse du 22 janvier 2025 : « La saisie dans son appartement place Vendôme à Paris dérape : un millionnaire face aux juges pour violences » - Actu.fr

7

12. La situation de l'Hôtel - au sommet d'un piton rocheux - et les contraintes géotechniques associées, ont été à l'origine de difficultés lors de la réalisation des travaux, entrainant un ralentissement du Projet, ainsi que des coûts supplémentaires.

13. Au vu de ces difficultés, les représentants de l'actionnaire de SEDHV et Monsieur Patrick McKillen se sont rapprochés pour permettre au Projet d'être mené jusqu'à son terme et dans des délais raisonnables. La mission de Vinci a par la suite été limitée à la réalisation du gros-œuvre.

### (a)  Le contrat de maitrise d'ouvrage déléguée du 20 septembre 2019

14. HSMC a été désignée par SEDHV comme maître d'ouvrage délégué aux termes d'un contrat en date du 20 septembre 2019 (ci-après le « **Contrat de MOD** ») pour la supervision et la coordination des travaux (le « **Programme** »).

> **Pièce n° 3 : Contrat de maîtrise d'ouvrage déléguée du 20 septembre 2019**

15. Le Contrat de MOD fixait la date limite d'achèvement du Projet tel que modifié, à novembre 2022 (article 2.3) et prévoyait une enveloppe budgétaire de 225.000.000 euros HT (article 7.1) (laquelle incluait notamment la somme de 77.000.000 euros HT destinée à Vinci au titre de la finalisation des travaux de gros œuvre).

16. Le mode de rémunération de HSMC prévoyait le versement par SEDHV d'un honoraire fixe de 20.000.000 euros HT, versé en 9 échéances trimestrielles de 2.000.000 euros HT chacune, auxquelles s'ajoutait une dernière échéance du même montant à la date d'achèvement des travaux.

17. En outre, dans l'hypothèse où les coûts effectifs des travaux seraient inférieurs au budget maximal de 225.000.000 euros HT, HSMC avait droit à un honoraire de résultat correspondant à la moitié des économies effectivement réalisées.

18. Dans ce cadre, HSMC a recommandé à SEDHV de retirer à la société Vinci Construction France sa mission d'entreprise générale, de limiter l'intervention de cette dernière aux seuls travaux de gros-œuvre et de résilier son contrat pour le surplus. SEDHV a donc procédé à la résiliation partielle du contrat conclu avec Vinci.

19. Après avoir évincé les intervenants initialement investis sur ce projet, HSMC a alors décidé de confier les travaux d'entreprise générale du Projet à SOF (étant rappelé que les deux sociétés sont détenues par Monsieur McKillen).

### (b)  Le contrat de contractant général du 5 février 2021

20. Par contrat du 5 février 2021, SOF fut chargée de la réalisation des travaux jusqu'à leur achèvement, la levée des réserves et l'obtention de l'attestation de non contestation de la conformité (ci-après le « **Contrat SOF** »).

> **Pièce n° 4 : Contrat de contractant général conclu entre SEDHV et SOF**

21. En vertu des articles 3.1. et 3.2. du Contrat SOF :

   a) Les travaux effectués par la société SOF s'inscrivent dans le cadre de l'enveloppe budgétaire de 225.000.000 euros HT, visée à l'article 7.1 du Contrat de MOD conclu avec HSMC (article 3.1) ;

   b) La part de l'enveloppe budgétaire de dédiée aux travaux qui sont facturés par SOF « *est estimée à la somme __maximale__[2] de cent quarante-huit millions d'euros hors taxes [148.000.000 euros HT], incluant le coût des FF&E* » (article 3.1) ; cette somme de 148.000.000 euros HT correspond à

---

[2] Souligné par nos soins

**Exhibit B
Page 75**

l'enveloppe budgétaire de 225.000.000 euros HT diminuée de la somme de 77.000.000 euros HT payée à Vinci ;

c) Les sommes dues à la société SOF au titre du marché doivent correspondre aux coûts réellement engagés pour la réalisation des travaux (article 3.2) ; et

d) L'ensemble des dépenses engagées par la société SOF doivent être intégralement justifiées de manière détaillée et précise (article 3.1).

22. Le montant maximal des sommes qui pouvaient être versées à SOF, sur la base des coûts des travaux effectivement réalisés, s'élève ainsi à la somme de 148.000.000 euros HT.

### 1.3    L'ouverture partielle de l'Hôtel au mois de septembre 2021

23. Par arrêté en date du 10 septembre 2021, le Maire de la commune de Roquebrune-Cap-Martin a autorisé l'ouverture partielle anticipée d'une partie de l'Hôtel (13 chambres et un restaurant).

**Pièce n° 5 : Arrêté du 10 septembre 2021 du Maire de Roquebrune-Cap-Martin**

24. L'ouverture complète du site était quant à elle prévue pour le mois de mai 2022 avec deux événements majeurs organisés pour Chanel et Mercedes qui étaient particulièrement importants pour le lancement de l'Hôtel.

**Pièce n° 6 : Email de HSMC du 25 mars 2022**

25. La visite de la commission de sécurité nécessaire à la délivrance de l'autorisation totale d'exploiter avait donc été fixée par HSMC, SOF et SEDHV le 29 avril 2022. La visite des pompiers destinée à valider le dispositif incendie devait intervenir deux jours plus tôt, le 27 avril 2022.

### 1.4    L'abandon du chantier par SOF en avril 2022

26. Au cours d'une réunion du 1er avril 2022, et par lettre subséquente de leurs conseils du 14 avril 2022, les représentants d'HSMC ont inopinément réclamé à SEDHV le paiement d'une somme de 30.293.729 euros HT, ramenée à 15.952.510 euros HT pour tenir compte d'un trop versé de 14.341.219 euros HT à SOF, et ce alors même que les travaux n'étaient pas achevés et leur coût ne pouvait donc pas être calculé.

**Pièce n° 7 : Lettre des conseils de HSMC du 14 avril 2022**

27. Aux termes de cette lettre, les conseils de HSMC se sont livrés à des manœuvres faites de pression et de chantage, pour obtenir paiement des sommes ainsi réclamées, menaçant SEDHV, à défaut de paiement par cette dernière de la somme ainsi réclamée, de refuser l'achèvement du chantier et d'en informer les autorités professionnelles et la commission de sécurité.

28. Parallèlement et prétextant qu'il était impossible pour elle de poursuivre sa mission de contractant général compte-tenu du retrait provisoire du chantier de Monsieur Frank Sinton (directeur général de SOF), SOF prononçait unilatéralement le 19 avril 2022 la suspension de son contrat.

**Pièce n° 8 : Lettre de SOF à SEDHV du 19 avril 2022**

29. Une telle suspension du Contrat SOF était totalement injustifiée, dans la mesure où les équipes de SOF sont uniquement constituées de sous-traitants et donc parfaitement aptes à poursuivre leurs prestations en l'absence de Monsieur Sinton. Ce dernier réside d'ailleurs en Angleterre et ne se déplaçait sur le chantier que par intermittence.

9

30. Cette suspension soudaine et unilatérale du Contrat SOF est intervenue moins de neuf jours avant la visite de la commission de sécurité, nécessaire à l'exploitation pour la tenue de l'événement organisé pour Chanel le 2 mai suivant.

> **Pièce n° 9 : Lettre des conseils de SEDHV du 20 avril 2022**
>
> **Pièce n° 10 : Lettre de HSMC à SEDHV du 20 avril 2022**

31. Par courrier du 21 avril 2022 adressé par lettre recommandée avec accusé de réception et par email, SEDHV a mis en demeure SOF de reprendre sans délai l'exécution du Contrat, faute de quoi il serait pris acte de l'abandon unilatéral du chantier.

> **Pièce n° 11 : Lettre de SEDHV à SOF du 21 avril 2022**

32. Faute de réponse, SEDHV a convoqué SOF à une visite du chantier le 22 avril 2022 à 11 heures pour faire procéder à un constat contradictoire de l'état d'avancement des travaux à date, ainsi qu'à un inventaire des approvisionnements.

33. SOF ne s'étant pas présentée, SEDHV a fait constater l'état du chantier par commissaire de justice le 22 avril 2022. Par lettre adressée à SOF le même jour, SEDHV a pris acte de la décision unilatérale de SOF de suspendre les travaux et d'abandonner le chantier.

> **Pièce n° 12 : Lettre de SEDHV à SOF du 22 avril 2022**

34. A quelques jours de la visite des pompiers et de la Commission de sécurité, respectivement prévues les 27 et 29 avril 2022, SEDHV s'est ainsi retrouvée sans contractant général et face à un chantier inachevé.

35. SEDHV a donc été contrainte dans l'urgence de missionner un prestataire pour effectuer les travaux nécessaires avant le passage de la commission de sécurité.

36. La réception des travaux a été prononcée le 2 mai 2022. Une autorisation provisoire et partielle a été accordée en vue de la tenue de l'évènement Chanel prévu le jour même et l'arrêté d'ouverture totale au public a été délivré le 3 mai 2022.

> **Pièce n° 13 : Arrêté autorisant l'ouverture au public du 3 mai 2022**

37. Dès le 6 mai 2022, SEDHV a fait part à HSMC de milliers de réserves et lui a transmis le procès-verbal de réception des travaux qui traduisait l'absence d'achèvement.

> **Pièce n° 14 : Lettre de SEDHV à HSMC du 6 mai 2022**

### 1.5   Le décompte général et définitif

38. **SEDHV a d'ores et déjà versé à SOF la somme de 137.553.385 euros HT** (soit 165.064.062 euros TTC) au titre des acomptes.

> **Pièce n° 15 : Compte fournisseur SOF - livres comptables SEDHV**

39. Conformément à l'article 4.3 du Contrat, SOF devait établir son projet de décompte général définitif (ci-après « **DGD** »), accompagné de toutes les pièces justificatives y afférentes, dans un délai de 20 jours calendaires à compter de la réception des travaux, soit le 22 mai 2022. SOF s'engageait par ailleurs à remettre dans un délai de cinq jours ouvrables toute pièce justificative qui lui serait demandée.

40. Le 14 avril 2022 (soit avant même l'achèvement !), les conseils de HSMC communiquaient un tableau récapitulatif des sommes prétendument dues à SOF, indiquant que SEDHV avait déjà réglé à SOF (ou pour le

10

compte de SOF) la somme de 148.397.454,25 euros HT et qu'au regard des travaux réalisés, un excédent de 14.341.219,25 euros HT avait été versé à SOF.

> **Pièce n° 7 : Lettre des conseils de HSMC du 14 avril 2022**

41. Aux termes de ce même courrier, les conseils de HSMC ont précisé que faute pour SEDHV de reconnaitre l'existence de travaux supplémentaires et de payer la somme de 15.952.509,00 euros HT, le chantier ne saurait être considéré comme achevé.

42. HSMC ajoutait qu'elle ne manquerait pas d'informer les autorités professionnelles, l'architecte du projet et la commission de sécurité de l'absence d'achèvement du projet.

43. Un tel procédé était inacceptable. Par lettre officielle du 20 avril 2022, les conseils de SEDHV ont condamné de tels propos – s'apparentant à du chantage – et exigé qu'il soit immédiatement mis fin à de tels agissements.

> **Pièce n° 9 : Lettre des conseils de SEDHV du 20 avril 2022**

44. SOF a finalement transmis son projet de DGD le 16 juin 2022, soit avec près d'un mois en retard.

45. Ce DGD indiquait qu'un montant de 9.014.636,76 euros TTC serait dû par SEDHV à SOF au lieu de l'excédent annoncé par les Conseils de HSMC le 14 avril précédent. En effet, SOF invoquait cette fois-ci une somme « *forfaitaire de 148 M euros HT* », alors que le Contrat SOF prévoit une « *somme maximale de 148.000.000 euros HT* » et que le coût définitif des travaux facturés par le contractant général doit faire l'objet d'un décompte définitif détaillé sur la base des factures émises à date, et justifié.

> **Pièce n° 16 : Projet de DGD établi par SOF le 16 juin 2022**

46. En réponse, SEDHV contestait dès le 15 juillet 2022 la créance alléguée par SOF pour un montant de 9.014.636,76 euros TTC.

47. SOF prétendait subitement et sans tenir compte des termes du Contrat SOF que sa rémunération serait constituée par une somme forfaitaire de 148.000.000 euros HT et non par une somme maximale de 148.000.000 euros HT tenant compte du coût réel des travaux. Au surplus, en violation des termes du Contrat SOF, ce projet de DGD transmis n'apportait aucune information sur le coût réel des travaux effectués, ni les justificatifs correspondants.

48. Par lettre en date du 15 juillet 2022, SEDHV mettait en demeure SOF de communiquer l'ensemble des documents susceptibles de justifier son estimation des coûts, tout en s'opposant formellement au paiement des sommes réclamées, manifestement indues.

> **Pièce n° 17 : Lettre de SEDHV à SOF du 15 juillet 2022**

49. Le 23 décembre 2022, SEDHV communiquait son propre projet de DGD à SOF et exprimait son profond désaccord sur celui communiqué par cette dernière, les factures de travaux communiquées ne comptabilisant que pour un peu plus de la moitié des 148.000.000 euros HT annoncés.

50. SEDHV démontrait ainsi à SOF que l'ensemble des sommes dues au titre de la réalisation des travaux avait d'ores et déjà été réglées, compte tenu du versement de l'acompte de 137.553.385 euros HT, ce montant couvrant largement les dépenses exposées par SOF.

51. SEDHV précisait surtout qu'au regard des travaux réalisés, un trop versé avait été payé à SOF (dont le montant a été calculé sur la base du DGD construit au vu des éléments communiqués par SOF).

11

**Exhibit B**
**Page 78**

52.  Elle mettait en conséquence en demeure cette dernière de rembourser ce montant dans un délai de huit jours. SEDHV a d'ailleurs présenté une demande reconventionnelle à cet égard dans le cadre de l'instance initiée par SOF et actuellement pendante devant la Cour d'appel de Paris.

**Pièce n° 18 : Lettre de SEDHV à SOF du 23 décembre 2022**

53.  De façon tout à fait déloyale, SOF a, devant le Juge de l'exécution, purement et simplement occulté cette mise en demeure de SEDHV, tout comme la lettre de SEDHV à SOF du 11 janvier 2023.

**Pièce n° 19 : Lettre de SEDHV à SOF du 11 janvier 2023**

### 1.6  La réalisation par SOF et HSMC de travaux en violation des permis de construire ayant donné lieu à une procédure pénale

54.  En parallèle de ces échanges, SEDHV a été informée en janvier 2023 par le Préfet des Alpes-Maritimes que des travaux effectués par SOF et HSMC l'avaient été en violation des permis de construire accordés, et qu'une enquête pénale était en cours à cet égard.

**Pièce n° 20 : Permis de construire modificatif**

**Pièce n° 21 : Lettre du Préfet des Alpes-Maritimes du 30 janvier 2023**

55.  Un procès-verbal d'infraction a ainsi dressé par la direction départementale des territoires et de la mer des Alpes-Maritimes (« **DDTM** ») pour non-respect des permis de construire initiaux et modificatifs obtenus, ainsi que des dispositions du plan de prévention des risques naturels de mouvement de terrain (le « **PPRN** ») applicable à la commune de Roquebrune-Cap-Martin.

56.  **Il apparait ainsi que SOF et HSMC ont réalisé des travaux en méconnaissance du permis de construire, ce qui a conduit à la création non autorisée de plus de 1000 m² et d'un local technique dans une zone où toute construction est interdite par le PPRN applicable, infractions pénales passibles d'amendes de plus de 66.000.000 euros et pouvant exiger la démolition des travaux.**

57.  Une procédure pénale est pendante, au cours de laquelle SEDHV et son dirigeant ont été cités à comparaitre devant le Tribunal juridictionnel.

58.  Un permis modificatif n° 4 a été déposé et validé par un arrêté le 28 octobre 2024.

59.  SEDHV se voit contrainte de fermer l'Hôtel de façon partielle à compter de décembre 2024, et de procéder à une fermeture totale pendant 4,5 mois à compter de janvier 2025 pour procéder aux travaux de mise en conformité, dont le coût est estimé à plus de 19.000.000 euros !

### 1.7  Les procédures civiles en cours

60.  Parallèlement à la procédure pénale, deux actions civiles opposant SEDHV et SOF sont actuellement pendantes.

#### (a)  La procédure pendante devant la Cour d'appel de Paris

61.  Par exploit du 31 octobre 2022, SOF a attrait SEDHV devant le Juge des référés du Tribunal de commerce de Paris pour solliciter sa condamnation au paiement de sommes de 5.010.434,70 euros au titre du remboursement

12

de dépenses hors marché que SOF aurait prétendument avancées pour le compte de SEDHV au cours de l'exécution des travaux.

62. Par exploit du 17 novembre 2022, HSMC a fait délivrer à SEDHV une assignation au fond devant le Tribunal de commerce de Paris pour voir condamner SEDHV à lui payer la somme de 17.623.119,60 euros HT au titre d'un prétendu honoraire de résultat et la somme de 2.000.000 euros HT au titre du dernier versement correspondant à son honoraire fixe.

63. Par ordonnance du 1er décembre 2022, le Juge des référés a déclaré qu'il n'y avait pas lieu à référé, et a procédé à un renvoi au fond de l'instance initiée par SOF. Les deux procédures ont ensuite été jointes.

64. Toutes entités confondues, SOF et HSMC évaluaient globalement l'ensemble de leurs demandes en paiement à la somme de 24.633.554,30 euros.

65. A titre reconventionnel, SEDHV a sollicité, entre autres :

   (i) la restitution d'œuvres d'art indûment détenues par SOF,

   (ii) l'intégration dans le DGD de la somme de 20.554.349,46 euros HT correspondant au trop-versé à SOF,

   (iii) l'intégration dans le DGD de la somme de 12.893.868,15 euros HT au titre des désordres et non conformités ;

   (iv) à titre très subsidiaire, la désignation d'un expert judiciaire afin de déterminer les sommes à intégrer dans le décompte général et définitif des travaux.

66. SOF s'est farouchement opposée devant le Tribunal de commerce de Paris à tout débat sur les conditions d'exécution des travaux.

67. Par jugement du 5 juillet 2024, le Tribunal a – de façon tout à fait surprenante – rejeté les demandes reconventionnelles concernant les sommes devant être pourtant intégrées dans le DGD, considérant que ces dernières seraient irrecevables car dépourvues de lien suffisant avec la demande principale, d'une part, et qu'un examen risquerait de retarder à l'excès le jugement, d'autre part.

> **Pièce n° 22 : Jugement du Tribunal de commerce de Paris du 5 juillet 2024**

68. Aux termes de ce même jugement, le Tribunal a condamné SEDHV à payer la somme de 4.688.877,77 euros à SOF au titre des factures qui auraient été par elle prises en charge pour le compte de SEDHV. Le Tribunal a également condamné SOF à restituer à SEDHV les œuvres d'art indument retenues dans un entrepôt.

69. Le jugement fut assorti de l'exécution provisoire.

**70. SEDHV s'est acquittée de l'ensemble des condamnations prononcées à son encontre.**

> **Pièce n° 23 : Acte d'acquiescement de SEDHV à la saisie-attribution pratiquée par SOF entre les mains de QNB, en date du 18 juillet 2024**
>
> **Pièce n° 24 : Procès-verbaux de signification de mainlevée de saisie attribution sur les comptes bancaires de SEDHV dans les livres de Qatar National Bank Centrale Entrep et BNP Paribas des 23 et 29 juillet 2024**

71. Par déclaration enregistrée au greffe le 2 septembre 2024, HSMC a interjeté appel du jugement. Pour sa part, SEDHV a assigné SOF en appel provoqué le 4 octobre 2024.

13

**Exhibit B**
**Page 80**

Pièce n° 25 : Assignation en appel provoqué délivrée par SEDHV à SOF le 4 octobre 2024

Pièce n° 26 : Conclusions d'appel provoqué

72. Devant la Cour d'appel de Paris, SEDHV sollicite l'infirmation du jugement du 5 juillet 2024, notamment en ce qu'il a condamné SEDHV à payer la somme de 4.688.877,77 euros à SOF et déclaré irrecevables les demandes reconventionnelles de SEDHV.

73. Sollicitant qu'il soit statué à nouveau, SEDHV demande par ailleurs à la Cour de déclarer recevables les demandes reconventionnelles par elle présentées devant les premiers juges et de condamner SOF à lui verser la somme de 12.893.868,15 euros HT (à parfaire) au titre du coût des désordres et non conformités, et la somme de 20.554.349,46 euros HT au titre des coûts de travaux de l'Hôtel.

74. SOF s'est ainsi bien gardée d'indiquer au Juge de l'exécution que la Cour d'appel de Paris est actuellement saisie d'une demande en condamnation à son égard présentée par SEDHV pour un montant de 33.448.217,61 euros HT (à parfaire).

### (b)    La procédure devant le Tribunal des activités économiques de Paris

75. Alors que l'instance opposant les mêmes parties est actuellement pendante devant la Cour d'appel de Paris, SOF a décidé d'intenter une nouvelle action devant le Tribunal des activités économiques de Paris.

76. Suivant exploit du 7 octobre 2024, SOF a en effet sollicité la condamnation de SEDHV au paiement de la somme de 18.455.939 euros, cette fois-ci au titre des conditions d'exécution des travaux qui se décomposent selon elle comme suit :

- 3.655.939 euros TTC au titre du solde des travaux

- 8.800.000 euros TTC au titre de la restitution de la retenue de garantie

- 6.000.000 euros TTC pour une prétendue résiliation abusive du Contrat SOF

Pièce n° 27 : Assignation devant le Tribunal de commerce de Paris délivrée par SOF à SEDHV le 7 octobre 2024

77. Une première audience a été fixée au 4 février 2025, date à laquelle SEDHV a régularisé des conclusions d'incident sur la litispendance (compte tenu de l'existence de la procédure devant la Cour d'appel ayant exactement le même objet), sollicitant à titre subsidiaire le sursis à statuer dans l'attente de la décision de la cour d'appel de Paris.

78. **La requête aux fins de mesures conservatoires de SOF est tout autant silencieuse sur l'existence de cette dernière procédure.**

### (c)    La procédure devant le Juge de l'exécution du Tribunal judiciaire de Paris

79. C'est ainsi que, multipliant les actions, SOF a saisi le Juge de l'exécution du tribunal judiciaire de Paris.

80. Autorisée par ordonnance du Juge de l'exécution du 9 décembre 2024, SOF a donc pratiqué le 20 décembre 2024 une saisie de la somme de 873.959 euros sur le compte de SEDHV dans les livres de la banque Qatar National Bank et une saisie de la somme de 4.710.423,27 euros sur les comptes de SEDHV dans les livres de BNP Paribas, en garantie de la somme de 12.535.939 euros.

Pièces n° 28 et 29 : Actes de dénonciation à SEDHV d'une saisie conservatoire de

14

créance du 24 décembre 2024 sur les comptes bancaires de SEDHV dans les livres de Qatar National Bank Centrale Entrep et BNP Paribas

81. Ces deux saisies ont ensuite été dénoncées à SEDHV le 24 décembre 2024.

82. Par courrier officiel du 15 janvier 2025, les conseils de SEDHV ont sollicité auprès des conseils de SOF les pièces communiquées à l'appui de la requête soutenue devant le Juge de l'exécution, dont certaines sont nouvelles car n'ayant pas été communiquées dans le cadre des procédures parallèles.

83. Les conseils de SOF se sont tout simplement opposés à cette demande de communication, pourtant usuelle et conforme aux principes de confraternité.

84. Par courrier officiel du 20 janvier 2025, les conseils de SEDHV ont réitéré leur demande.

Pièce n° 37 : Echanges officiels entre les conseils de SEDHV et SOF du 15 au 20 janvier 2025

85. SEDHV a donc assigné SOF en mainlevée de ces saisies conservatoires devant le Juge de l'exécution du Tribunal judiciaire de Paris par exploit de commissaire de justice du 28 janvier 2025. L'audience de plaidoiries portant sur ces deux saisies, initialement fixée au 19 février 2025, a été renvoyée au 21 mai 2025 compte tenu de la communication très tardive par SOF de ses conclusions en réponse, la veille de l'audience, ce qui est tout simplement inacceptable.

86. Postérieurement à cette assignation en mainlevée, SOF a continué à pratiquer des mesures conservatoires à l'encontre de SEDHV, profitant ainsi du long renvoi dont elle a pu bénéficier en raison de la communication tardive de ses conclusions à SEDHV.

87. Ainsi, le 24 février 2025, SOF a fait pratiquer deux nouvelles saisies conservatoires sur les comptes de SEDHV dans les livres des deux banques précitées à hauteur de 828.791,34 euros.

88. Ces deux saisies ont été dénoncées à SEDHV le 27 février 2025.

Pièces n° 39 et 40 : Actes de dénonciation à SEDHV d'une saisie conservatoire de créance du 24 février 2025 sur les comptes bancaires de SEDHV dans les livres de Qatar National Bank Centrale Entrep et BNP Paribas

89. Le 7 mars 2025, SOF a de nouveau pratiqué une saisie conservatoire sur le compte de SEDHV dans les livres de la banque Qatar National Bank pour un montant de 2.000,69 euros. Le même jour, SOF a notifié a SEDHV l'inscription d'une hypothèque judiciaire à titre provisoire pour sûreté de la somme de 1.200.000 euros sur deux de ses immeubles respectivement situés 1551 route de la Turbie à Roquebrune-Cap-Martin 06190 et 42 avenue Winston Churchill à Roquebrune-Cap-Martin 06190.

90. Cette saisie et l'inscription de cette hypothèque judiciaire provisoire ont toutes deux été dénoncées à SEDHV le 11 mars 2025.

Pièces n° 41 et 42 : Actes de dénonciation à SEDHV d'une saisie conservatoire de créance du 7 mars 2025 sur le compte bancaire de SEDHV dans les livres de Qatar National Bank Centrale Entrep et d'une hypothèque judiciaire provisoire du 7 mars 2025 au service de la publicité foncière de Nice 1.

91. Face à la multiplication des mesures conservatoires prises par SOF, sur le fondement d'une ordonnance qui a manifestement vocation à être rétractée, SEDHV n'a eu d'autre choix que de requérir du Juge de l'exécution du

15

Tribunal judiciaire de Paris qu'il l'autorise à assigner SOF à heure indiquée afin d'obtenir, en urgence, la mainlevée de l'ensemble des mesures conservatoires prises sur le fondement du Juge de l'exécution du 9 décembre 2024.

> **Pièce n° 43 : Requête de SDHV aux fins d'être autorisée à assigner SOF à heure indiquée**

92. Le Juge de l'exécution du Tribunal judiciaire de Paris a accordé cette autorisation à SEDHV par une ordonnance du 31 mars 2025.

> **Pièce n° 44 : Ordonnance du Juge de l'exécution du Tribunal judiciaire de Paris du 31 mars 2025**

C'est en l'état que l'affaire se présente aujourd'hui devant le Juge de l'exécution du Tribunal judiciaire de Paris.

## II.    DISCUSSION

### 1.1    Sur la compétence

93. Aux termes de l'article R. 512-2 du Code des procédures civiles d'exécution :

> « *La demande de mainlevée est portée devant le juge qui a autorisé la mesure. Si celle-ci a été prise sans autorisation préalable du juge, la demande est portée devant le juge de l'exécution du lieu où demeure le débiteur. Toutefois, lorsque la mesure est fondée sur une créance relevant de la compétence d'une juridiction commerciale, la demande de mainlevée peut être portée, avant tout procès, devant le président du tribunal de commerce de ce même lieu* ».

### 1.2    Sur les conditions de la mainlevée

94. Aux termes de l'article L. 511-1 du Code des procédures civiles d'exécution :

> « *Toute personne dont la créance paraît fondée en son principe peut solliciter du juge l'autorisation de pratiquer une mesure conservatoire sur les biens de son débiteur, sans commandement préalable, si elle justifie de circonstances susceptibles d'en menacer le recouvrement.*
>
> *La mesure conservatoire prend la forme d'une saisie conservatoire ou d'une sûreté judiciaire.* »

95. L'article R. 512-1 du Code des procédures civiles d'exécution précise que si les conditions prévues pour pratiquer une saisie conservatoire ne sont pas réunies, la mainlevée de la mesure conservatoire peut être ordonnée à tout moment.

96. Les conditions posées à l'article L. 511-1, tenant d'une part à l'existence d'une créance paraissant fondée en son principe et d'autre part à l'existence de circonstances menaçant le recouvrement de la créance, sont cumulatives.

97. En l'espèce, aucune des conditions prescrites pour octroyer des mesures conservatoires n'est réunie.

98. Dans sa requête, SOF n'a pas hésité à dénaturer les faits, à dissimuler l'existence des actions actuellement pendantes au fond (dans le cadre desquelles SEDHV a contesté les prétentions de SOF et HSMC), ainsi que les demandes formulées par SEDHV dans ces procédures, et ce afin de prétendre détenir une créance fondée en son principe à l'égard de SEDHV (**a**).

99. Elle s'est en outre livrée à une présentation *a minima* inexacte s'agissant de la situation financière de SEDHV (voire fallacieuse s'agissant de celle du groupe auquel elle appartient) tant le risque de non-recouvrement est inexistant en l'espèce (**b**), et ce, dans le seul but de nuire délibérément aux intérêts de SEDHV.

16

**Exhibit B**
**Page 83**

100. SEDHV est donc également bien fondée à solliciter la mainlevée des saisies pratiquées et la rétractation de l'ordonnance, ainsi que l'indemnisation du préjudice occasionné par les saisies pratiquées abusivement à son encontre (**c**).

### (a)    Sur l'absence de créance fondée en son principe

101. Le juge de l'exécution apprécie souverainement si la créance invoquée paraît fondée en son principe. Si la preuve d'une créance certaine n'est pas requise, il incombe néanmoins au juge de l'exécution d'examiner les contestations même portant sur le fond du droit, si elles sont de nature à remettre en question l'existence d'une telle créance[3].

102. Dans le cadre d'un marché de travaux privé, encore faut-il qu'un « *décompte définitif signé par les parties précisant que le contrat avait été totalement exécuté* [ait été établi] *et les comptes définitivement arrêtés* » pour considérer que le principe de la créance n'est pas contestable[4].

103. Ce n'est manifestement pas le cas en l'espèce puisque les parties n'ont au contraire jamais finalisé le décompte général définitif et que deux procédures relatives à l'arrêt des comptes des travaux sont actuellement pendantes devant la Cour d'appel et devant le Tribunal des activités économiques de Paris.

104. Dans sa requête aux fins de mesures conservatoires, SOF prétend que sa créance de 12.535.939 euros TTC, sur le fondement de laquelle les mesures ont été ordonnées, se décomposerait de la manière suivante :

- la somme de 3.655.939 euros TTC au titre du solde des travaux

- la somme de 8.880.000 euros TTC au titre de la retenue de garantie

105. Aucune de ces prétendues créances ne sont fondées en leur principe.

> Sur l'absence de créance au titre des travaux, pour un montant de 3.655.939 euros TTC

106. SEDHV ayant d'ores et déjà versé à SOF la somme de 137.553.385 euros HT, cette dernière prétend être titulaire vis-à-vis de SEDHV d'une créance au titre du solde du prix des travaux, qui ne lui aurait pas été versé en dépit de la réception des Travaux.

107. Cela est totalement faux.

**1) Tout d'abord, la créance alléguée par SOF à ce titre résulte d'une dénaturation des termes du Contrat SOF conclu entre les Parties.**

108. Pour prétendre détenir une créance, et ce en violation des accords convenus entre les Parties, SOF avait initialement prétendu être en droit de recevoir un paiement forfaitaire de 148.000.000 euros HT.

**Pièce n° 30: Emails du 27 janvier 2021 relatifs à la clause prix du Contrat SOF**

109. SOF prétendait ainsi de mauvaise foi que le prix du contrat aurait été forfaitaire, alors qu'il était clairement convenu entre les parties qu'il s'agissait d'un prix maximum.

110. Il résulte en effet expressément des termes du Contrat SOF que sa rémunération serait calculée sur la base du coût réel des Travaux et dans la limite d'un montant maximum de 148.000.000 euros HT.

---

[3] Cass. 2e civ., 14 janv. 2021, n° 19-18.844, Publié au bulletin. Lire en ligne :
https://www.doctrine.fr/d/CASS/2021/JURITEXT000043045899
[4] Cass. 3e civ., 8 juill. 1992, n° 90-16.500, Bull. 1992 III N° 240 p. 147. Lire en ligne :
https://www.doctrine.fr/d/CASS/1992/CASSP3A542676FF20AC150AFB

17

**Exhibit B**
**Page 84**

111. L'article 3.1. du Contrat SOF (**Pièce n° 4**) stipule en effet :

> La part de l'enveloppe budgétaire dédiée au travaux qui sont facturés par le Contractant Général est estimée à la somme maximale de cent quarante-huit millions d'euros hors taxes (148.000.000 € HT), incluant le coût des FF&E. Le coût définitif des travaux qui doivent être facturés par le Contractant Général devra faire l'objet d'un décompte définitif détaillé sur la base des factures émises à date, et justifiée.
>
> Le Contractant Général s'engage à justifier toutes ses factures avec le détail des coûts par nature, et les pièces comptables afférentes, et acceptent de les mettre à disposition du Maître d'Ouvrage sur simple demande de ce dernier.

112. C'est donc en violation manifeste des termes du Contrat SOF que SOF a prétendu devant le Tribunal de commerce détenir une créance au titre du solde de sa prétendue rémunération forfaitaire.

113. En dépit des demandes de communication de pièces et demandes d'expertise formulées par SEDHV devant le Tribunal de commerce, SOF a refusé, toute communication, empêchant ainsi la finalisation des comptes entre elles.

114. Il doit d'ailleurs être rappelé qu'HSMC a considéré elle-même que SEDHV a versé à SOF un excédent de 14.341.219 euros !

> **Pièce n° 7 : Lettre des conseils de HSMC du 14 avril 2022**

115. A plusieurs reprises, et contrairement aux propos de SOF, SEDHV a contesté le principe même des sommes réclamées au titre des travaux :

- Par lettres des 15 juillet et 7 septembre 2022, SEDHV s'opposait à la demande de paiement d'un prix « forfaitaire » de 148.000.000 euros HT ;

> **Pièce n° 17 : Lettre de SEDHV à SOF du 15 juillet 2022**
>
> **Pièce n° 31 : Lettre de SEDHV à SOF du 7 septembre 2022**

- Dans ses écritures devant le Tribunal de commerce de Paris et à nouveau devant la Cour d'appel, SEDHV demande la condamnation de SOF au paiement de la somme de 20.554.349,46 euros correspondant au trop-versé au titre des travaux.

> **Pièce n° 32 : Conclusions récapitulatives de SEDHV régularisées devant le Tribunal de commerce de Paris le 30 mai 2024, p. 19**

116. SOF soutient donc vainement que SEDHV n'aurait « *jamais* » sollicité le remboursement d'un trop-versé. La lecture de la lettre du 23 décembre 2022 démontre le contraire.

> **Pièce n° 18 : Lettre de SEDHV à SOF du 23 décembre 2022**

117. Dans sa décision du 5 juillet 2024, le Tribunal de commerce a jugé que le Contrat SOF ne prévoyait effectivement pas une rémunération forfaitaire, mais bien une rémunération calculée sur la base du coût réel des travaux.

118. Son argumentation ayant été rejetée, SOF a totalement changé de position devant le juge de l'exécution.

119. SOF abandonne désormais son argumentation selon laquelle la rémunération forfaitaire et reconnait expressément que sa rémunération correspondait bien aux coûts des travaux effectivement réalisés.

18

120. Se prévalant d'un rapport établi par un expert privé, le cabinet Lynkea, de façon unilatérale et selon une méthodologie très critiquable, SOF soutient désormais que le coût total des travaux s'élèverait à la somme de … 149.068.008 euros HT, soit une somme excédant le plafond contractuel maximal de 148.000.000 euros HT !

> **Pièce n° 33 : Rapport du cabinet Lynkea du 13 décembre 2023 communiqué par SOF**

121. Cette présentation est contradictoire, mais également totalement infondée.

122. Après s'être opposée, tout au long de la procédure pendante devant le Tribunal de commerce de Paris, à communiquer un DGD conforme aux dispositions du Contrat SOF et accompagné des documents justificatifs, ainsi qu'à la procédure d'expertise sollicitée à titre subsidiaire par SEDHV, SOF se fonde sur un rapport établi unilatéralement par un expert privé (Lynkea) pour fixer le coût des travaux à une somme curieusement égale, voire supérieure au montant maximum prévu au Contrat.

123. Or, le rapport de Lynkea doit être écarté pour plusieurs raisons, comme cela est mis en évidence par le rapport établi par Messieurs Edouard Loeper et Didier Faury du cabinet Prorevise, experts-comptables, experts judiciaires et commissaires aux comptes :

> **Pièce n° 34 : Rapport du cabinet ProRevise du 30 janvier 2024**

- En premier lieu, Lynkea émet une importante réserve et refuse lui-même de garantir l'exactitude ou le caractère complet des données présentées[5] ! Le cabinet indique en outre qu'il n'a pas été en mesure d'analyser le détail des dépenses inscrites dans la comptabilité de SOF servant de base au calcul du coût réel du Programme[6] ;

- En deuxième lieu, Lynkea considère dans son rapport que le coût des travaux correspondrait aux écritures inscrites dans un sous-compte du Grand Livre Comptable de SOF dénommé « SOF » qui serait « lié exclusivement au chantier », sans toutefois apporter de justification sur ce lien prétendu. Aucun détail de ce sous-compte « SOF » n'est également présenté, ni justificatif de manière à pouvoir effectivement confirmer que le total de ce sous-compte correspond bien au chantier de l'hôtel et non pas aux autres activités de SOF ;

- En troisième lieu, les sommes sont artificiellement « gonflées » par la prise en compte de nombreuses refacturation internes non justifiées, la prise en compte de sommes sans aucun lien avec le chantier et l'application de coefficients multiplicateurs non seulement non prévus contractuellement mais encore complètement infondés, et ce dans le seul objectif de dépasser le seuil de 148.000.000 euros ;

- En quatrième lieu, le rapport de Lynkea ne comporte pas en annexe les données sur la base desquelles il a été élaboré, le détail, ni les justificatifs ou factures ne sont ainsi présentés à l'appui du total des sommes annoncé, contrairement à la méthodologie préconisée par la Cour d'appel de Paris ;

124. Un rapport établi par un expert privé de façon non-contradictoire et contenant de telles lacunes ne permet pas d'établir une créance fondée en son principe.

**2) SOF omet par ailleurs de rappeler qu'elle a abandonné le chantier et que plus de 6.000 réserves ont été relevées lors de la réception des travaux. Or, si les réserves ne font pas obstacle à la réception, elles en suspendent les effets pour les parties d'ouvrage concernées[7].**

---

[5] **Pièce n° 33 :** Rapport Lynkea, pp. 4-5 : « *En aucun cas, nous ne saurions garantir, de manière expresse ou implicite, l'exactitude ou le caractère complet des éléments présentés ou le résultat des demandes établies* ».

[6] **Pièce n° 33 :** Rapport Lynkea, pp. 4-5 : « *nous n'avons pas pu vérifier ou consulter chacune des pièces comptables associées aux dépenses inscrites au Grand Livre de SOF. Cela constitue une réserve à notre travail* » (souligné par nos soins) ; v. aussi p. 23.

[7] Dalloz action Droit de la construction (dir. Ph. Malinvaud), ed. 2018/2019, spéc. 481.163

19

125. Un rapport établi par Monsieur Yves Guerpillon, expert construction près la Cour administrative d'appel de Lyon, a évalué à ce jour les coûts de remise en état à 16.161.677,67 euros HT, dont 12.893.868,15 euros HT concerne des désordres et non-conformités.

> **Pièce n° 35 : Rapport n° 1 de M. Guerpillon de décembre 2023 relatif aux désordres et non-conformités de l'hôtel Maybourne Riviera**

126. Au dernier état des évaluations, ces coûts approchent la somme de 18.000.000 euros.

127. SEDHV, qui doit ainsi supporter les travaux de remise en état, a sollicité devant le Tribunal de commerce et désormais devant la Cour d'appel la condamnation de SOF à lui verser la somme de 12.893.868,15 euros HT à ce titre.

128. SOF s'est abstenue, une fois encore, d'en faire état devant le Juge de l'exécution aux termes de sa requête.

129. Ainsi, contrairement à ses allégations, SOF ne détient pas de créance fondée en son principe à l'égard de SEDHV.

130. Bien au contraire, elle est débitrice à son égard de la somme de 20.554.349,46 euros HT correspondant au trop-versé par SEDHV au titre des coûts de travaux, ainsi que de la somme de 12.893.868,15 euros HT au titre du coût des désordres et non-conformités.

131. Il convient à nouveau de rappeler que le juge du Tribunal de commerce n'a tout simplement pas statué sur les demandes reconventionnelles de SEDHV relatives aux coûts des travaux pour des raisons totalement infondées.

132. En effet, le Tribunal de commerce a considéré à tort ces demandes irrecevables aux motifs qu'elles seraient dépourvues de lien suffisant avec la demande principale, d'une part, et qu'un examen risquerait de retarder à l'excès le jugement, d'autre part.

133. Or, l'article 4 du Code de procédure civile dispose : « *L'objet du litige est déterminé par les prétentions respectives des parties. Ces prétentions sont fixées par l'acte introductif d'instance et par les conclusions en défense. Toutefois l'objet du litige peut être modifié par des demandes incidentes lorsque celles-ci se rattachent aux prétentions originaires par un lien suffisant.* »

134. Le juge est donc tenu de statuer aussi bien sur les demandes principales formées par les demandeurs à l'instance que sur les demandes incidentes formées par le défendeur qui fixent l'objet du litige. Il s'agit de l'office du juge.

135. Les demandes reconventionnelles sont des demandes incidentes régies par l'alinéa 1er de l'article 70 du Code de procédure civile, et sont recevables si elles se rattachent aux prétentions originaires par un lien suffisant.

136. Le lien suffisant peut être retenu lorsque la demande principale et la demande reconventionnelle « *procèdent l'une et l'autre d'une même situation de fait litigieuse ou d'un même contrat* »[8].

137. En l'espèce, les demandes de SEDHV et de SOF procèdent sans aucun doute d'une même situation de fait : les travaux de rénovation de l'Hôtel. Il existe donc incontestablement un lien suffisant entre ces demandes.

138. De surcroit, la demande en compensation formée par SEDHV rendait en tout état de cause inutile la recherche d'un tel lien, par application du second alinéa de l'article 70 du Code de procédure civile puisque celui-ci dispose que « *(...) la demande en compensation est recevable même en l'absence d'un tel lien, sauf au juge à la disjoindre si elle risque de retarder à l'excès le jugement sur le tout* ».

139. Par conséquent, les demandes reconventionnelles de SEDHV étaient bien nouées d'un lien suffisant et c'est à tort que le Tribunal de commerce en a jugé autrement. C'est tout aussi à tort qu'il a, pour motivé l'irrecevabilité de ces demandes, jugé qu'un examen de ces demandes risquait de retarder à l'excès le jugement, alors que ces

---

[8] C. Tirvaudey-Bourdin, « Prorogation de compétence », *JCl. Procédure civile : fasc. 600-85*, spéc. n° 90 citant Solus H. et Perrot R., Droit judiciaire privé, t. III, Sirey, 1991, n° 1034.

20

demandes reconventionnelles ont été soulevées par SEDHV dès ses premières conclusions devant le Tribunal de commerce.

> Sur l'absence de créance au titre de la prétendue retenue de garantie pour un montant de 8.880.000 euros TTC

140. Selon l'article 25 du Contrat SOF :

« *Une retenue de garantie de 5% sera appliquée sur les sommes dues au Contractant Général au titre de son Contrat, y compris sur les travaux supplémentaires, pour la garantie de parfait achèvement.* »

141. SOF chiffre cette retenue de garantie à 8.800.000 euros TTC (soit un montant de 7.400.000 euros HT correspondant à 5% de 148.000.000 euros HT). SOF prétend que cette somme lui serait due en complément du prétendu solde de travaux.

**Toutefois, le raisonnement de SOF est manifestement erroné.**

142. Conformément aux termes de la loi n° 71-584 du 16 juillet 1971 et de l'article 25 du Contrat SOF, la retenue de garantie est une retenue à hauteur de 5%, sur les sommes dues à SOF. Cette retenue de garantie a en pratique vocation à être appliquée sur chaque facture réglée par SEDHV à SOF, avant d'être libérée après la levée des réserves. Or, en l'occurrence, SEDHV n'a pas procédé à cette retenue de garantie à hauteur de 5% sur les factures réglées à SOF, mais a payé l'intégralité des montants visés dans ces factures. Il n'y a donc aucune somme due par SEDHV au titre d'une quelconque retenue de garantie.

143. Surtout, il doit être rappelé, à toutes fins utiles, que dans un arrêt du 16 novembre 2011, la Cour d'appel de Paris a jugé que les conclusions du maître de l'ouvrage présentées dans une procédure judiciaire peuvent valoir opposition en application de l'article 2 de la loi n° 71-584 du 16 juillet 1971[9].

**En l'espèce, une telle opposition est justifiée et circonstanciée dans les écritures et les pièces versées au débat par SEDHV.**

144. Dans ses conclusions récapitulatives, SEDHV précisait ainsi que :

« *Le rapport de M. Guerpillon évalue à ce jour les coûts de remise en conformité, levée des réserves et désordres à 16.161.677,67 euros HT, dont 12.893.868,15 euros HT de désordres et non-conformités résultant des travaux incombant à SOF, étant précisé que les travaux sont toujours en cours et SEDHV continue à recevoir des devis et factures à ce titre.* » (souligné par nos soins)

**Pièce n° 32 : Conclusions récapitulatives de SEDHV régularisées devant le Tribunal de commerce de Paris le 30 mai 2024, p. 23**

145. **La prétendue créance de SOF au titre de la retenue de garantie, ainsi qu'au titre du prétendu solde de travaux n'est donc aucunement fondée en son principe.**

(b)     Sur l'absence de menaces de recouvrement

146. En application de l'article L. 511-1 du Code des procédures civiles d'exécution applicable aux mesures conservatoires, il appartient au créancier saisissant de justifier de l'existence de menaces pour le recouvrement

---

[9] CA Paris, pôle 4 - ch. 5, 16 nov. 2011, n° 10/14049. Lire en ligne :
https://www.doctrine.fr/d/CA/Paris/2011/RC8F68D5A20717F2DDE5A

21

**Exhibit B
Page 88**

de sa créance[10]. La jurisprudence considère que l'importance du montant de la créance ne saurait suffire à caractériser l'existence d'un péril[11].

147. La mainlevée doit ainsi être ordonnée dans le cas où le débiteur justifie de garanties de solvabilité[12]. Un bénéfice inférieur au montant de la créance réclamée et l'absence de trésorerie disponible ne suffisent pas à caractériser un risque de recouvrement.

148. En l'espèce, SOF soutient que le recouvrement de sa créance est menacé aux motifs que les comptes de SEDHV pour l'exercice 2023 font apparaître une perte comptable de 24,7 millions d'euros et que, selon ses dires, cette situation financière ferait « *peser un risque d'insolvabilité incontestable sur ses créanciers* ». SOF omet de préciser que cette perte comptable est quasi-exclusivement induite par de simples écritures comptables ne se traduisant *in fine* par aucun décaissement effectif de ses liquidités telles que les amortissements, les dépréciations et les intérêts courus non payés au titre de son endettement intragroupe. Le montant de ses seules charges comptables non décaissées s'élève ainsi à plus de 21.7 millions d'euros, remettant ainsi singulièrement en cause tant le sérieux de l'analyse de SOF que le prétendu risque de recouvrement dont elle entend se prévaloir.

149. Selon SOF, ce risque se caractériserait également par le fait que l'Hôtel sera fermé au premier semestre 2025. Ce faisant, SOF lie la solvabilité de SEDHV à la rentabilité de l'Hôtel, omettant de préciser que SEDHV fait partie d'un groupe dont la solidité financière n'est aucunement contestable.

150. De tels propos sont particulièrement malvenus lorsque l'on sait que la fermeture de l'Hôtel au premier semestre 2025 est précisément due à la mauvaise exécution des travaux par SOF et à la violation tant par cette dernière que par HSMC des réglementations du Code de l'Urbanisme.

151. Suite à la découverte des très nombreuses non-conformités et l'établissement par la DDTM du Procès-verbal d'infraction, SEDHV, accompagnée de la Mairie et de la Préfecture a dû déposer un Permis de Construire Modificatif n°4 ayant pour objet la régularisation de l'ensemble des infractions reprochées et imputables à SOF et HSMC. SEDHV se trouve en effet contrainte de procéder à la réalisation de travaux de remise en conformité, de levée des réserves et des désordres imposant la fermeture de l'hôtel pour cinq mois.

152. Ces travaux de remise en conformité et de levée des réserves – qui résultent des défaillances de SOF et d'HSMC et devront donc être mis à leur charge dans le cadre de l'instance au fond – s'élèvent à ce jour à plus de 18 millions d'euros.

153. Par ailleurs, il importe de rappeler que SEDHV est indirectement détenue par son Altesse Hamad bin Khalifa Al Thani, ancien Emir du Qatar, et père de l'actuel Emir, son Altesse Hamad bin Khalifa Al Thani.

154. SOF ne peut donc pas invoquer sérieusement des difficultés de trésorerie de la part de SEDHV.

155. Cela est d'autant plus vrai que le soutien financier de H.H. Hamad bin Khalifa Al Thani à SEDHV a été contractualisé par une convention de trésorerie signée par plusieurs sociétés de son groupe dont SEDHV (la « **Convention de Trésorerie** ») le 30 juin 2021.

> **Pièce n° 45 : Convention de trésorerie entre SEDHV et Azolla Finance du 30 juin 2021**

156. Aux termes de la Convention de Trésorerie, chaque société signataire dispose de la faculté de solliciter une ou plusieurs avances de trésorerie de la société Azolla Finance (la « *Société Centralisatrice* ») en cas de nécessité :

---

[10] TGI Paris, JEX, 28 avr. 2005, n° 05/80250. Lire en ligne :
https://www.doctrine.fr/d/TGI/Paris/2005/FRA6DCA48D09CE404B2938;
[11] CA Versailles, 16e ch., 4 nov. 2010, n° 10/04141. Lire en ligne :
https://www.doctrine.fr/d/CA/Versailles/2010/B672F8B6983AA01345646
[12] TGI Paris, JEX, 19 mars 2008, n° 08/80494. Lire en ligne : https://www.doctrine.fr/d/TGI/Paris/2008/FR956E6AA711146B884E93

22

1.3    Dans l'hypothèse où une Société Participante n'aurait pas la trésorerie suffisante pour effectuer une opération donnée, cette dernière pourra demander à la Société Centralisatrice de lui consentir une ou plusieurs avances de trésorerie soumises aux termes et conditions ci-après, au moyen d'avances en compte courant consenties à la Société Centralisatrice par une ou plusieurs autres Sociétés Participantes, disposant à cette date de trésorerie excédentaire, lesdites avances devant être prélevées par la Société Centralisatrice sur les comptes des Sociétés Participantes, dans les conditions ci-dessous.

157. Or, les comptes de la Société Centralisatrice font apparaître une trésorerie disponible de plus de 116.000.000 euros au 31 décembre 2023.

> **Pièce n° 46 : Comptes de la société Azolla Finance au titre de l'exercice 2023**

158. De plus, SEDHV bénéficie du soutien financier de son bénéficiaire effectif final, son Altesse Hamad bin Khalifa Al Thani, lequel a matérialisé son engagement par lettre en date du 8 février 2024.

> **Pièce n° 47 : Lettre de soutien du 8 février 2024**

159. Par ailleurs, SEDHV fait partie d'un groupe consolidé dont les comptes consolidés au titre de l'exercice 2023 font apparaitre un montant de liquidités disponibles de plus de 190 millions d'euros, un montant d'actifs bruts en juste valeur de plus de 2.8 milliards d'euros, un montant de chiffre d'affaires net de plus de 120 millions d'euros.

> **Pièce n° 48 : Comptes consolidés de Lys Holding 1 S.à r.l. au titre de l'exercice 2023**

160. Dès lors, il est manifeste que SEDHV est garantie de disposer de la trésorerie nécessaire à la poursuite de son activité, de sorte que la prétendue créance de SOF ne fait en réalité face à aucune menace de recouvrement.

161. A l'inverse, il est établi que Monsieur Patrick McKillen, bénéficiaire ultime de SOF, rencontre de très sérieuses difficultés financières, lesquelles ont notamment conduit à la saisie de son appartement place Vendôme à Paris[13]. Cette saisie n'ayant été révélée au public qu'en raison des violences à l'encontre de la commissaire de justice dont est accusé Monsieur Patrick McKillen, il est très probable qu'il existe également d'autres saisies sur les biens immobiliers de ce dernier.

162. Pour preuve de sa solidité financière, SEDHV a versé sans difficulté plus de 239 millions d'euros pour la réalisation du Projet sur une période de six ans pendant laquelle l'Hôtel était en travaux et ne dégageait aucun bénéfice. SOF reconnait elle-même que SEDHV lui a déjà réglé la somme de 132.051.249 HT (soit 165.064.062 euros TTC) au titre des acomptes pendant cette même période où l'Hôtel n'avait aucune activité.

163. Il importe à cet égard de souligner que la somme de 132.051.249 euros HT résulte d'une erreur de calcul. Le Montant TTC de 165.064.062 euros TTC est pour sa part correct. En réalité, SEDHV a réglé la somme de 137.753.385 euros HT (165.064.062 euros TTC).De surcroit, la solvabilité de SEDHV n'est, de toute évidence, pas corrélée à la rentabilité actuelle de l'Hôtel.

164. Lorsque SEDHV a été condamnée par le Tribunal de commerce de Paris à payer à SOF la somme de 4.688.877,77 euros et la somme de 25.000 euros au titre de l'article 700, SEDHV s'est acquittée de ce montant.

165. **Enfin,** selon la jurisprudence, il n'existe aucun risque de recouvrement lorsque le débiteur dispose d'un patrimoine immobilier dont la valeur excède le montant de la créance en cause[14]. Or, en l'occurrence, SEDHV est propriétaire de l'Hôtel dont la valeur est bien supérieure au montant de la créance alléguée par SOF.

---

[13] Pièce n° 47
[14] CA Paris, pôle 1 ch. 5, 29 mars 2023, n° 22/20765. Lire en ligne :
https://www.doctrine.fr/d/CA/Paris/2023/CAPAB3DE696BC50346B1D2B

23

**Exhibit B
Page 90**

166. Le simple fait que les conseils de SEDHV aient établi une étude sur les options de structuration du groupe en France et analysant in abstracto les avantages et inconvénients de la cession de cet Hôtel dans le cadre d'une restructuration interne (cession qui n'a d'ailleurs pas eu lieu) ne suffit pas à remettre en question cette évidence : la valeur du patrimoine immobilier de SEDHV excède largement le montant de la prétendue créance de SOF, d'autant plus que SEDHV n'a aucun endettement bancaire et n'a de dettes que vis-à-vis des autres sociétés de son groupe.

167. C'est une preuve supplémentaire de l'absence totale de menaces au recouvrement vis-à-vis de la prétendue créance de SOF, SEDHV ayant toujours acquitté ses dettes avec ponctualité.

168. SOF ne peut dès lors sérieusement soutenir que le risque serait caractérisé par une résistance abusive de SEDHV à reconnaître une dette.

169. SEDHV ne tend qu'à obtenir l'exécution du Contrat SOF convenu entre les Parties. La position de SEDHV est d'autant plus légitime compte tenu (i) des nombreuses incohérences dans les projets de DGD communiqués par SOF, (ii) du fait que SOF a changé le quantum de ses réclamations financières au titre des travaux tout au long la première instance devant le Tribunal de commerce de Paris (iii) et des 6.000 réserves, des nombreuses malfaçons et les non-conformités urbanistiques qui ont été constatées sur les travaux réalisés par SOF, contraignant SEDHV à fermer l'Hôtel au premier semestre 2025 pour y remédier.

> **Pièce n° 36 : Permis de construire modificatif n° 3 délivré le 15 décembre 2023**

170. **Dans ces conditions, SOF ne justifie nullement de l'existence d'une menace au recouvrement de sa prétendue créance. A supposer que la créance de SOF soit fondée (ce qui est contesté), SEDHV n'est pas dans une situation financière mettant en péril son recouvrement.**

171. Par ailleurs, en application de l'article 10 du Code civil, la Cour de cassation considère que le principe de la loyauté des exige que le requérant « *fasse preuve de loyauté **dans l'exposé des faits au soutien de sa requête*** »[15]. D'après la Cour d'appel de Paris, cette exigence s'impose en raison du caractère exorbitant de la mesure obtenue de manière non contradictoire[16].

172. Dans un jugement du 20 décembre 2024, le Tribunal judiciaire de Paris a ainsi rétracté une ordonnance sur requête et annulé un procès-verbal de saisie réalisé en exécution de cette ordonnance au motif que le requérant avait dissimulé une information déterminante qui n'avait pas permis au juge d'appréhender objectivement les enjeux de la requête.

*« en dissimulant cette information, qu'elle ne pouvait pas ignorer, étant déposante de la demande de base en Turquie, la société Gök triko **n'a pas présenté, au soutien de sa requête, l'ensemble des faits objectifs de nature à permettre au juge d'appréhender complètement les enjeux du procès en vue duquel était demandée une saisie-contrefaçon. Elle a ainsi manqué de loyauté à l'occasion de la présentation sa requête et privé le juge d'exercer pleinement son pouvoir d'appréciation des circonstances de la cause afin d'autoriser une mesure proportionnée.***

*Par conséquent, l'ordonnance prise sur cette requête doit être rétractée et, par suite, le procès-verbal de saisie-contrefaçon réalisé en exécution de cette ordonnance, annulé. »*

> **Pièce n° 38 : Tribunal judiciaire de Paris, 3ᵉ ch, 2ᵉ sect, 20 décembre 2024, RG n° 24/09419**

---

[15] Cass. com., 6 décembre 2023, n° 22-11.071 (souligné par nos soins).

[16] CA Paris, 6 novembre 2020, RG n° 20/01647. Lire en ligne : https://www.doctrine.fr/d/CA/Paris/2020/C60C991111CA69E9E0E43 : « *le caractère exorbitant [d'une] mesure, **obtenue de manière non contradictoire** et autorisant des investigations ou des mesures conservatoires chez un tiers, sans son assentiment, **ce qui impose au requérant d'agir avec loyauté et de faire au juge, une présentation fidèle des faits motivant sa requête*** » (souligné par nos soins).

24

173. En l'espèce, SOF a procédé à une présentation particulièrement biaisée des faits de l'espèce et a notamment omis à de faire état dans sa requête de l'existence de deux procédures relatives à l'exécution des travaux qui sont **actuellement pendantes** devant la Cour d'appel et devant le Tribunal des activités économiques de Paris et ce, afin de prétendre détenir une créance fondée en son principe à l'égard de SEDHV.

**174.** SOF s'est ainsi livrée à une présentation déloyale des faits qui justifie la rétractation de l'ordonnance.

### (c)  Sur la réparation du préjudice subi par SEDHV

175. Selon l'article L. 512-2 du Code des procédures civiles d'exécution, lorsque la mainlevée a été ordonnée par le juge, le saisissant peut être condamné à réparer le préjudice causé par la mesure conservatoire.

176. Dans un arrêt du 24 mars 2023, la Cour d'appel de Paris a jugé que les mesures de saisie conservatoire pratiquées alors que les conditions de leur réalisation n'étaient pas réunies causent nécessairement un préjudice à la partie saisie[17].

177. L'abus est caractérisé lorsqu'une saisie réalisée à titre conservatoire porte sur des sommes si importantes qu'elle paralyse le fonctionnement de la société prétendument débitrice en la privant de son actif disponible[18].

178. Les saisies conservatoires pratiquées à hauteur de 12.535.939 euros ont été à l'évidence intentées, pour partie à la veille des fêtes de fin d'année, avec l'intention de nuire aux intérêts de SEDHV. Elles sont abusives tant par leur objet que par leur effet.

179. En réalité, SOF a cherché à obtenir par le biais de sa requête aux fins de saisie ce qu'elle n'a pas pu obtenir du Tribunal à savoir le paiement d'une somme d'environ 20.000.000 euros.

**180. Pour l'ensemble des raisons exposées ci-dessus, SEDHV sollicite la rétractation de l'ordonnance du Juge de l'exécution du 9 décembre 2024, la mainlevée de l'ensemble des mesures conservatoires pratiquées par SOF sur le fondement de cette ordonnance, et la condamnation de SOF au paiement de la somme de 50.000 euros à titre de dommages et intérêts pour saisie abusive.**

\* \* \*

Enfin, parce qu'il serait inéquitable de laisser à la charge de SEDHV les frais qu'elle a été contrainte d'engager pour assurer la défense de ses droits, il est demandé à Madame, Monsieur le Juge de l'exécution de condamner SOF à lui verser la somme de 15.000 euros au titre de l'article 700 du Code de procédure civile, ainsi qu'aux entiers dépens.

---

[17] CA Paris, pôle 1 ch. 5, 29 mars 2023, n° 22/20765. Lire en ligne : https://www.doctrine.fr/d/CA/Paris/2023/CAPAB3DE696BC50346B1D2B

[18] CA Dijon, 16 déc. 2008, n° 08/00693. Lire en ligne : https://www.doctrine.fr/d/CA/Dijon/2008/SKF847A00045A68E78C6B1 : « *il a à bon droit retenu que les menaces pesant sur le recouvrement de la créance n'étaient pas établies en l'espèce, l'équilibre de la société DYN'AERO n'étant pas compromis, que les incidents survenus lors d'une autre procédure de saisie conservatoire devraient être traités séparément, que le transfert de stocks et d'activité à l'étranger n'était pas démontré, que la procédure d'alerte n'était pas significative, que la saisie en cause avait pour effet de paralyser la société DYN'AERO et de la condamner à brève échéance en la privant de toute trésorerie* »

25

**Exhibit B**
**Page 92**

– **CONDAMNER** la société SOF CONSTRUCTION SA à payer à la SOCIETE D'EXPLOITATION ET DE DETENTION HOTELIERE VISTA la somme de 50.000 euros au titre de dommages et intérêts pour saisie abusive ;

– **CONDAMNER** la société SOF CONSTRUCTION SA à payer à la SOCIETE D'EXPLOITATION ET DE DETENTION HOTELIERE VISTA la somme de 15.000 euros au titre de l'article 700 du Code de procédure civile ;

– **CONDAMNER** la société SOF CONSTRUCTION SA aux entiers dépens.

*SOUS TOUTES RESERVES.*

27

**Bordereau des pièces communiquées à l'appui de l'assignation**

**Pièce n° 1 :**   Extrait Kbis de SEDHV

**Pièce n° 2 :**   Extrait Kbis de SOF

**Pièce n° 3 :**   Contrat de maîtrise d'ouvrage déléguée conclu entre SEDHV et HSMC le 20 septembre 2019 et sa traduction

**Pièce n° 4 :**   Contrat de contractant général conclu entre SEDHV et SOF le 5 février 2021

**Pièce n° 5 :**   Arrêté du 10 septembre 2021 du Maire de Roquebrune-Cap-Martin

**Pièce n° 6 :**   Email de HSMC du 25 mars 2022 et sa traduction

**Pièce n° 7 :**   Lettre des conseils de HSMC du 14 avril 2022 et sa traduction

**Pièce n° 8 :**   Lettre de SOF à SEDHV du 19 avril 2022 et sa traduction

**Pièce n° 9 :**   Lettre des conseils de SEDHV du 20 avril 2022

**Pièce n° 10 :**   Lettre de HSMC à SEDHV du 20 avril 2022 et sa traduction.

**Pièce n° 11 :**   Lettre de SEDHV à SOF du 21 avril 2022

**Pièce n° 12 :**   Lettre de SEDHV à SOF du 22 avril 2022

**Pièce n° 13 :**   Arrêté autorisant l'ouverture au public du 3 mai 2022

**Pièce n° 14 :**   Lettre de SEDHV à HSMC du 6 mai 2022

**Pièce n° 15 :**   Compte fournisseur SOF - livres comptables SEDHV

**Pièce n° 16 :**   Projet de DGD établi par SOF le 16 juin 2022

**Pièce n° 17 :**   Lettre de SEDHV à SOF du 15 juillet 2022

**Pièce n° 18 :**   Lettre de SEDHV à SOF du 23 décembre 2022

**Pièce n° 19 :**   Lettre de SEDHV à SOF du 11 janvier 2023

**Pièce n° 20 :**   Permis de construire modificatif n° 1

**Pièce n° 21 :**   Lettre du Préfet des Alpes-Maritimes du 30 janvier 2023

**Pièce n° 22 :**   Jugement du Tribunal de commerce de Paris du 5 juillet 2024

**Pièce n° 23 :**   Acte d'acquiescement de SEDHV à la saisie-attribution pratiquée par SOF entre les mains de QNB, en date du 18 juillet 2024

**Pièce n° 24 :**   Procès-verbaux de signification de mainlevée de saisie attribution sur les comptes bancaires de SEDHV dans les livres de Qatar National Bank Centrale Entrep et BNP Paribas des 23 et 29 juillet 2024

**Pièce n° 25 :**   Assignation en appel provoqué délivrée par SEDHV à SOF le 4 octobre 2024

**Pièce n° 26 :**   Conclusions d'appel provoqué de SEDHV à l'encontre de SOF

28

**Pièce n° 27 :** Assignation devant le Tribunal de commerce de Paris délivrée par SOF à SEDHV le 7 octobre 2024

**Pièce n° 28 :** Acte de dénonciation à SEDHV d'une saisie conservatoire de créance du 24 décembre 2024 sur les comptes bancaires de SEDHV dans les livres de Qatar National Bank Centrale Entrep

**Pièce n° 29 :** Acte de dénonciation à SEDHV d'une saisie conservatoire de créance du 24 décembre 2024 sur les comptes bancaires de SEDHV dans les livres de BNP Paribas

**Pièce n° 30 :** Emails du 27 janvier 2021 relatifs à la clause prix du Contrat SOF

**Pièce n° 31 :** Lettre de SEDHV à SOF du 7 septembre 2022

**Pièce n° 32 :** Conclusions récapitulatives de SEDHV régularisées devant le Tribunal de commerce de Paris le 30 mai 2024

**Pièce n° 33 :** Rapport du cabinet Lynkea du 13 décembre 2023 communiqué par SOF

**Pièce n° 34 :** Rapport financier n° 2 du cabinet ProRevise sur l'analyse des éléments comptables et financiers communiqués par SOF et HSMC du 30 janvier 2024

**Pièce n° 35 :** Rapport n° 1 de M. Guerpillon de décembre 2023 relatif aux désordres et non-conformités de l'hôtel Maybourne Riviera

**Pièce n° 36 :** Permis de construire modificatif n° 3 délivré le 15 décembre 2023

**Pièce n° 37 :** Echanges officiels entre les conseils de SEDHV et SOF du 15 au 20 janvier 2025

**Pièce n° 38 :** Tribunal judiciaire de Paris, 3e ch, 2e sect, 20 décembre 2024, RG n° 24/09419

**Pièce n° 39 :** Acte de dénonciation à SEDHV d'une saisie conservatoire de créance du 24 février 2025 sur les comptes bancaires de SEDHV dans les livres de Qatar National Bank Centrale Entrep

**Pièce n° 40 :** Acte de dénonciation à SEDHV d'une saisie conservatoire de créance du 24 février 2025 sur les comptes bancaires de SEDHV dans les livres de BNP Paribas

**Pièce n° 41 :** Acte de dénonciation à SEDHV d'une saisie conservatoire de créance du 7 mars 2025 sur les comptes bancaires de SEDHV dans les livres de Qatar National Bank Centrale Entrep

**Pièce n° 42 :** Acte de dénonciation à SEDHV d'une hypothèque judiciaire provisoire du 7 mars 2025 au service de la publicité foncière de Nice 1

**Pièce n° 43 :** Requête de SDHV aux fins d'être autorisée à assigner SOF à heure indiquée

**Pièce n° 44 :** Ordonnance du Juge de l'exécution du Tribunal judiciaire de Paris du 31 mars 2025

**Pièce n° 45 :** Convention de trésorerie entre SEDHV et Azolla Finance du 30 juin 2021

**Pièce n° 46 :** Comptes de la société Azolla Finance au titre de l'exercice 2023

**Pièce n° 47 :** Article de presse du 22 janvier 2025 : « La saisie dans son appartement place Vendôme à Paris dérape : un millionnaire face aux juges pour violences » - Actu.fr

**Pièce n° 48 :** Comptes consolidés de Lys Holding 1 S.à r.l. au 31 décembre 2023

29

## ORDONNANCE SUR REQUETE

Nous, juge de l'exécution du tribunal judiciaire de Paris,

Marie CORNET

Juge

*Vu la requête qui précède, les motifs exposés et les pièces produites,*
*Vu l'article R. 121-12 du code des procédures civiles d'exécution,*
*Vu l'urgence,*

AUTORISONS  la SOCIÉTÉ D'EXPLOITATION ET DE DÉTENTION HÔTELIÈRE VISTA à assigner la société SOF CONSTRUCTION SA devant le juge de l'exécution du tribunal judiciaire :

A L'AUDIENCE DU 8/04/2025 à 15h00

DISONS que l'assignation devra être délivrée au plus tard le 5/04/2025

DISONS que la copie des pièces jointes à la requête devra être notifiée avec l'assignation,

DISONS que la présente Ordonnance sera déposée au greffe de ce tribunal,

Fait à Paris, le 31/03/2-25

Pour le juge de l'exécution du tribunal judiciaire de Paris

Pour le Greffier

6

**Exhibit B**
**Page 96**

25/649

*À Madame, Monsieur le juge de l'exécution du tribunal judiciaire de Paris*

---

REQUÊTE AUX FINS D'ÊTRE AUTORISÉ

À ASSIGNER À HEURE INDIQUÉE

DEVANT LE JUGE DE L'EXÉCUTION DU TRIBUNAL JUDICIAIRE DE PARIS

---

À LA REQUÊTE DE :

La SOCIÉTÉ D'EXPLOITATION ET DE DÉTENTION HÔTELIÈRE VISTA, société par actions simplifiée au capital social de 100.001.000,00 euros, immatriculée au Registre du Commerce et des Sociétés de Paris sous le numéro 805.264.082, dont le siège social est sis 23 rue François Ier à Paris (75008), prise en la personne de son Président domicilié en cette qualité audit siège

Ayant pour avocat constitué :     **Baker & McKenzie A.A.R.P.I**
Me Eric Lasry
Avocat au Barreau de Paris
1 rue Paul Baudry - 75008 Paris
Tél. : 01 44 17 53 00
Toque P 445

COURRIER ARRIVÉ

Le   3 1 MARS 2025

juge de l'éxécution

*Lequel se constitue sur la présente et ses suites et au cabinet duquel la demanderesse élit domicile,*

**Sollicite de Madame ou Monsieur le juge de l'exécution du tribunal judiciaire de Paris l'autorisation de délivrer à heure indiquée, en raison de l'urgence et pour les motifs ci-après exposés, l'assignation ainsi que les pièces désignées ci-après.**

EXPOSÉ DES MOTIFS

La Société d'Exploitation et de Détention Hôtelière Vista (ci-après « **SEDHV** ») est propriétaire de l'hôtel Maybourne Riviera situé à Roquebrune-Cap-Martin sur la Côte d'Azur (ci-après l'« **Hôtel** »).

SEDHV a mandaté les sociétés SOF Construction (ci-après « **SOF** »), en qualité de contractant général, et Hume St Management Consultants (ci-après « **HSMC** »), en qualité de maître d'ouvrage délégué, en vue de réaliser des travaux de rénovation et d'extension de l'Hôtel.

Alors que SEDHV, SOF et HSMC sont engagées depuis 2022 dans une procédure contentieuse portant notamment sur la mauvaise exécution des travaux et sur les rémunérations alléguées par SOF et HSMC et qu'une instance est actuellement pendante devant la Cour d'appel de Paris, SOF a cru devoir saisir le juge de l'exécution du tribunal judiciaire de Paris en vue d'obtenir une autorisation de procéder à des mesures conservatoires.

Suivant ordonnance sur requête en date du 9 décembre 2024, rendue sur la base d'une présentation tronquée et inexacte des faits par SOF, le juge de l'exécution a autorisé un commissaire de justice à (i)

1

**Exhibit B**
**Page 97**

consulter le FICHIER NATIONAL DES COMPTES BANCAIRES ASSIMILES (FICOBA) afin d'identifier les comptes bancaires ouverts aux noms de SEDHV, (ii) pratiquer des saisies conservatoires de créances entre les mains de tout établissement bancaire au sein duquel SEDHV est susceptible de détenir des comptes à hauteur de 12.535.939 euros en principal et intérêts, et (iii) inscrire une hypothèque judiciaire à titre conservatoire sur certains biens immobiliers appartenant à SEDHV.

Le 20 décembre 2024, SOF a fait pratiquer deux saisies sur les comptes de SEDHV dans les livres des banques Qatar National Bank Centrale Entrep et BNP Paribas à hauteur de la somme de 5.583.490,85 euros.

Ces deux saisies ont été dénoncées à SEDHV le 24 décembre 2024, la veille de Noël.

Par exploit de commissaire de justice du 18 janvier 2025, SEDHV s'est empressée d'assigner SOF en mainlevée de ces saisies conservatoires devant le juge de l'exécution du tribunal judiciaire de Paris.

Initialement prévue le 19 février 2025, l'audience de plaidoiries sur la demande de mainlevée formulée par SOF a été renvoyée au 21 mai 2025, compte-tenu de la communication par SOF de ses conclusions la veille de l'audience initialement prévue.

Alors même que SOF a parfaitement conscience des contestations élevées par SEDHV et de cette procédure en cours, elle continue à multiplier les mesures conservatoires à l'encontre de SEDHV, profitant ainsi du renvoi qui a été prononcé du fait de la communication délibérément tardive de ses conclusions.

Une telle attitude est parfaitement inacceptable et constitue un véritable acharnement à l'encontre de SEDHV.

Ainsi, le 24 février 2025, SOF a fait pratiquer deux nouvelles saisies conservatoires sur les comptes de SEDHV dans les livres des deux banques précitées à hauteur de 828.791,34 euros.

Ces deux saisies ont été dénoncées à SEDHV le 27 février 2025.

Le 7 mars 2025, SOF a de nouveau pratiqué une saisie conservatoire sur le compte de SEDHV dans les livres de la banque Qatar National Bank pour un montant de 2.000,69 euros.

Le même jour, SOF a notifié a SEDHV l'inscription d'une hypothèque judiciaire à titre conservatoire d'un montant de 1.200.000 euros sur deux de ses immeubles respectivement situés 1551 route de la Turbie à Roquebrune-Cap-Martin 06190 et 42 avenue Winston Churchill à Roquebrune-Cap-Martin 06190.

Cette saisie et l'inscription de cette hypothèque judiciaire provisoire ont toutes deux été dénoncées à SEDHV le 11 mars 2025.

Ainsi, il ressort clairement des faits ci-dessus que SOF multiplie les mesures conservatoires, afin de saisir entre les mains de SEDHV la somme de 12.535.939 euros, alors même que les conditions pour l'octroi de mesures susvisées ne sont pas réunies. En effet, SOF a, pour solliciter l'autorisation de pratique des mesures conservatoires, dénaturé les faits et dissimulé l'existence d'actions actuellement pendantes au fond, pour prétendre détenir une créance fondée en son principe. Elle a de surcroit procédé à une présentation inexacte de la situation financière de SEDHV et du groupe auquel elle appartient pour justifier de prétendues menaces de recouvrement comme cela est amplement démontré dans le projet d'assignation joint à la présente requête.

De surcroit, la multiplication de ces mesures et les sommes très importantes sur lesquelles elles portent sont manifestement de nature à paralyser le fonctionnement de la société SEDHV.

2

**Exhibit B**
**Page 98**

Ces mesures, tant par leur nombre que leur ampleur, désorganisent et perturbent gravement le fonctionnement de SEDHV, laquelle est empêchée de faire face aux dépenses normales de fonctionnement de l'Hôtel, de procéder au règlement des différentes charges qui lui incombent, en ce compris les salaires du personnel de l'Hôtel, et de régler les factures correspondant aux travaux que SEDHV a été contrainte d'engager en raison de la violation SOF et HSMC de leurs engagements.

SEDHV étant sans moyen de défense jusqu'au 21 mai, date à laquelle l'audience de plaidoiries a été fixée par le juge de l'exécution du tribunal judiciaire de Paris, elle se trouve exposée à la multiplication des mesures conservatoires prises par SOF.

Dès lors, il y a véritablement urgence à ce que SEDHV obtienne dès que possible la rétractation de l'ordonnance sur requête rendue par le juge de l'exécution du tribunal judiciaire de Paris en date du 9 décembre 2024, et la mainlevée de l'ensemble des mesures conservatoires prises par SOF sur le fondement de cette ordonnance.

**Compte-tenu de l'urgence caractérisée, des dommages et risques auxquels SEDHV se trouve exposée, cette dernière sollicite donc de Madame ou Monsieur le juge de l'exécution du tribunal judiciaire de Paris l'autorisation d'assigner SOF à heure indiquée <u>à la première audience disponible</u>, en rétractation de l'ordonnance sur requête rendue par le juge de l'exécution du tribunal judiciaire de Paris en date du 9 décembre 2024, et en mainlevée de l'ensemble des mesures conservatoires prises par SOF sur le fondement de cette ordonnance.**

Fait à Paris, le 28 mars 2025,

Eric Lasry

3

**Liste des pièces jointes à la requête**

**Pièce n° 1 :**  Extrait Kbis de SEDHV

**Pièce n° 2 :**  Extrait Kbis de SOF

**Pièce n° 3 :**  Contrat de maîtrise d'ouvrage déléguée conclu entre SEDHV et HSMC le 20 septembre 2019 et sa traduction

**Pièce n° 4 :**  Contrat de contractant général conclu entre SEDHV et SOF le 5 février 2021

**Pièce n° 5 :**  Arrêté du 10 septembre 2021 du Maire de Roquebrune-Cap-Martin

**Pièce n° 6 :**  Email de HSMC du 25 mars 2022 et sa traduction

**Pièce n° 7 :**  Lettre des conseils de HSMC du 14 avril 2022 et sa traduction

**Pièce n° 8 :**  Lettre de SOF à SEDHV du 19 avril 2022 et sa traduction

**Pièce n° 9 :**  Lettre des conseils de SEDHV du 20 avril 2022

**Pièce n° 10 :**  Lettre de HSMC à SEDHV du 20 avril 2022 et sa traduction.

**Pièce n° 11 :**  Lettre de SEDHV à SOF du 21 avril 2022

**Pièce n° 12 :**  Lettre de SEDHV à SOF du 22 avril 2022

**Pièce n° 13 :**  Arrêté autorisant l'ouverture au public du 3 mai 2022

**Pièce n° 14 :**  Lettre de SEDHV à HSMC du 6 mai 2022

**Pièce n° 15 :**  Compte fournisseur SOF - livres comptables SEDHV

**Pièce n° 16 :**  Projet de DGD établi par SOF le 16 juin 2022

**Pièce n° 17 :**  Lettre de SEDHV à SOF du 15 juillet 2022

**Pièce n° 18 :**  Lettre de SEDHV à SOF du 23 décembre 2022

**Pièce n° 19 :**  Lettre de SEDHV à SOF du 11 janvier 2023

**Pièce n° 20 :**  Permis de construire modificatif n° 1

**Pièce n° 21 :**  Lettre du Préfet des Alpes-Maritimes du 30 janvier 2023

**Pièce n° 22 :**  Jugement du Tribunal de commerce de Paris du 5 juillet 2024

**Pièce n° 23 :**  Acte d'acquiescement de SEDHV à la saisie-attribution pratiquée par SOF entre les mains de QNB, en date du 18 juillet 2024

**Pièce n° 24 :**  Procès-verbaux de signification de mainlevée de saisie attribution sur les comptes bancaires de SEDHV dans les livres de Qatar National Bank Centrale Entrep et BNP Paribas des 23 et 29 juillet 2024

**Pièce n° 25 :**  Assignation en appel provoqué délivrée par SEDHV à SOF le 4 octobre 2024

**Pièce n° 26 :**  Conclusions d'appel provoqué de SEDHV à l'encontre de SOF

**Pièce n° 27 :**  Assignation devant le Tribunal de commerce de Paris délivrée par SOF à SEDHV le 7 octobre 2024

4

**Pièce n° 28 :**    Acte de dénonciation à SEDHV d'une saisie conservatoire de créance du 24 décembre 2024 sur les comptes bancaires de SEDHV dans les livres de Qatar National Bank Centrale Entrep

**Pièce n° 29 :**    Acte de dénonciation à SEDHV d'une saisie conservatoire de créance du 24 décembre 2024 sur les comptes bancaires de SEDHV dans les livres de BNP Paribas

**Pièce n° 30 :**    Emails du 27 janvier 2021 relatifs à la clause prix du Contrat SOF

**Pièce n° 31 :**    Lettre de SEDHV à SOF du 7 septembre 2022

**Pièce n° 32 :**    Conclusions récapitulatives de SEDHV régularisées devant le Tribunal de commerce de Paris le 30 mai 2024

**Pièce n° 33 :**    Rapport du cabinet Lynkea du 13 décembre 2023 communiqué par SOF

**Pièce n° 34 :**    Rapport financier n° 2 du cabinet ProRevise sur l'analyse des éléments comptables et financiers communiqués par SOF et HSMC du 30 janvier 2024

**Pièce n° 35 :**    Rapport n° 1 de M. Guerpillon de décembre 2023 relatif aux désordres et non-conformités de l'hôtel Maybourne Riviera

**Pièce n° 36 :**    Permis de construire modificatif n° 3 délivré le 15 décembre 2023

**Pièce n° 37 :**    Echanges officiels entre les conseils de SEDHV et SOF du 15 au 20 janvier 2025

**Pièce n° 38 :**    Tribunal judiciaire de Paris, 3e ch, 2e sect, 20 décembre 2024, RG n° 24/09419

**Pièce n° 39 :**    Acte de dénonciation à SEDHV d'une saisie conservatoire de créance du 24 février 2025 sur les comptes bancaires de SEDHV dans les livres de Qatar National Bank Centrale Entrep

**Pièce n° 40 :**    Acte de dénonciation à SEDHV d'une saisie conservatoire de créance du 24 février 2025 sur les comptes bancaires de SEDHV dans les livres de BNP Paribas

**Pièce n° 41 :**    Acte de dénonciation à SEDHV d'une saisie conservatoire de créance du 7 mars 2025 sur les comptes bancaires de SEDHV dans les livres de Qatar National Bank Centrale Entrep

**Pièce n° 42 :**    Acte de dénonciation à SEDHV d'une hypothèque judiciaire provisoire du 7 mars 2025 au service de la publicité foncière de Nice 1

**Pièce n° 43 :**    *Réservée*

**Pièce n° 44 :**    *Réservée*

**Pièce n° 45 :**    Convention de trésorerie entre SEDHV et Azolla Finance du 30 juin 2021

**Pièce n° 46 :**    Comptes de la société Azolla Finance au titre de l'exercice 2023

**Pièce n° 47 :**    Article de presse du 22 janvier 2025 : « La saisie dans son appartement place Vendôme à Paris dérape : un millionnaire face aux juges pour violences » - Actu.fr

**Pièce n° 48 :**    Comptes consolidés de Lys Holding 1 S.à r.l. au 31 décembre 2023

**Pièce n° 49 :**    Projet d'assignation à heure indiquée devant le juge de l'exécution du tribunal judiciaire de Paris

5

**Exhibit B
Page 101**

ORDONNANCE SUR REQUETE

**Nous, juge de l'exécution du tribunal judiciaire de Paris,**

*Vu la requête qui précède, les motifs exposés et les pièces produites,*
*Vu l'article R. 121-12 du code des procédures civiles d'exécution,*
*Vu l'urgence,*

AUTORISONS la SOCIÉTÉ D'EXPLOITATION ET DE DÉTENTION HÔTELIÈRE VISTA à assigner la société SOF CONSTRUCTION SA devant le juge de l'exécution du tribunal judiciaire :

A L'AUDIENCE DU _____

DISONS que l'assignation devra être délivrée au plus tard le _____,

DISONS que la copie des pièces jointes à la requête devra être notifiée avec l'assignation,

DISONS que la présente Ordonnance sera déposée au greffe de ce tribunal,

**Fait à Paris, le**

**Pour le juge de l'exécution du tribunal judiciaire de Paris**

**Pour le Greffier**

6

**Exhibit B**
**Page 102**



**KALIACT HUISSIERS PROVENCE COTE D'AZUR**

OFFICE D'AIX EN PROVENCE

**Michel Frédéric COUTANT**

**Julien THIRY**

Commissaires de Justice associés

47 bis B Boulevard Carnot

13100 AIX EN PROVENCE

☎ : 04 42 38 02 16

🖷 : 04 42 38 05 42

✉ : aix@huissiers-khpca.fr

Site web: www.maitre-coutant.fr

# ACTE DE COMMISSAIRE DE JUSTICE

*EXPEDITION*

| COUT DE L'ACTE | |
|---|---|
| Décret n°2016-230 du 26 février 2016 Arrêté du 28 février 2024 fixant les tarifs règlementés des huissiers de justice | |
| Emolument majoré d'urgence (Art A444-12) | 178,56 |
| Honoraires (Art L444-1) COPIE PIECES | 343,20 |
| Frais de déplacement (Art A444-48) | 9,40 |
| **Total HT** | 531,16 |
| TVA (20,00 %) | 106,23 |
| **Total hors affranchissement** | 637,39 |
| Affranchissement (Art R444-3) | |
| Affranchissement LS | 5,06 |
| **Total TTC** | 642,45 |
| **Acte dispensé de la taxe** | |



Références : V – 32377

Mandat n°65 - MRCPM

# MODALITE DE REMISE A PERSONNE (PERSONNE MORALE)

LE : MARDI PREMIER AVRIL DEUX MILLE VINGT CINQ à neuf heures cinquante cinq

A la demande de :

S.A.S SOCIÉTÉ D'EXPLOITATION ET DE DÉTENTION HÔTELIERE VISTA

Etant mandaté à l'effet de signifier un acte de : Assignation AIX

Celui-ci a été remis par le commissaire de justice soussigné selon les déclarations qui lui ont été faites, à :

**S.A.S SOF CONSTRUCTION SAS, inscrite sous le N° 883588212 au registre du commerce et des sociétés de AIX EN PROVENCE, dont le siège social est à (13610) LE PUY-SAINTE-RÉPARADE, Château La Coste, agissant poursuites et diligences de par son Président en exercice domicilié en cette qualité audit siège**

suivant les modalités ci-après indiquées.

Je me suis transporté à l'adresse ci-dessus, et là étant, la copie du présent a été remise à **Léa GANGLOFF Acheteuse ainsi déclaré(e),**

qui a affirmé être habilité(e) à recevoir copie de l'acte, et confirmé que le domicile ou siège social du destinataire était toujours à cette adresse.

La lettre prévue à l'article 658 du Code de procédure civile a été adressée ce jour ou le premier jour ouvrable suivant la date du présent, au domicile du destinataire ci-dessus, avec copie de l'acte. Le cachet de l'huissier est apposé sur l'enveloppe.

Le présent acte a été établi en 765 feuillets.

Le coût de l'acte est détaillé ci-contre.

Visées par moi les mentions relatives à la signification.

Nicolas HUMBERT



**Exhibit B**

**Page 103**