# EXHIBIT E



City of New York, State of New York, County of New York

I, Jacqueline Yorke, hereby certify that the document "**2025.10.09. Jugement sur le sursis à statuer**" is, to the best of my knowledge and belief, a true and accurate translation from French into English.

_____
Jacqueline Yorke

Sworn to before me this
April 10, 2026

_____
Signature, Notary Public

WENDY POON
Notary Public - State of New York
No. 01PO0000184
Qualified in Queens County
My Commission Expires February 02, 20 **27**

_____
Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS

1250 BROADWAY, 32ND FLOOR, NEW YORK, NY 10001  |  T 212.400.8840  |  F 212.689.1059  |  WWW.TRANSPERFECT.COM

OFFICES IN 90 CITIES WORLDWIDE

**Exhibit E**
**Page 259**

[bar code]

**FRENCH REPUBLIC**

Enforceable duplicate: Herné Pierre
Duplicate to the claimants: 2
Duplicate to the defendants: 2

**ON BEHALF OF THE PEOPLE OF FRANCE**

**PARIS ECONOMIC ACTIVITIES COURT**

**ROOM 1-8**

**JUDGMENT RENDERED ON 10/09/2025**
**by making it available it to the Clerk's Office**

RG 2024031830

BETWEEN:

HUME STREET MANAGEMENT CONSULTANTS LIMITED, a company incorporated under Irish law, with its registered office at 15 Hume Street, D02C678, Dublin 2, Ireland, and having elected domicile at the offices of ABPA – 7 rue Gustave Flaubert, 75017 Paris
Plaintiff: represented by Michaël BENDAVID and David APELBAUM of the law firm ABPA - APELBAUM BENDAVID POINCLOUX ASSOCIES AARPI - Attorney (R258) and appearing through Nicole DELAY-PEUCH, Attorney (A377)

AND:

SAS CONSTELLATION PARIS, whose registered office is at Place André Malraux, 75001 Paris - RCS B 850286451
Respondent: represented by Pierre PIC and Gonzague D'AUBIGNY of SELAS TEYNIER PIC Avocats (J053) and appearing through Pierre HERNE, Attorney at Law (B835)

**<ins>AFTER DELIBERATION</ins>**

**<ins>The facts - Subject matter of the dispute</ins>**

1.  Mr. Patrick McKillen, an Irish national, is a real estate developer and luxury hotel manager. Hume Management Consultants Limited, a company incorporated under Irish law (hereinafter HSMC), is one of the companies he controls and manages and through which he collects his fees. Mr. McKillen relies in particular on a long-time colleague, Mr. Liam Cunningham, an Irish national, as well as on his personal secretary, Ms. Annemarie Ryan, an Irish national.

2.  His Excellency Sheikh Hamad bin Jassim bin Jaber Al Thani (hereinafter "HBJ"), who is not a party to this case, is a member of the Qatari royal family, served as Minister of Foreign Affairs from 1992 to 2013, and served as Prime Minister of Qatar from April 3, 2007, to June 26, 2013. In particular, he controls Séléné, a company incorporated under Luxembourg law that is not a party to this case, and, indirectly, the Luxembourg-based company Constellation Hotels Holding Ltd SCA, which owns other hotels in France through special-purpose companies held by a holding company, Constellation Hotels France, including Constellation Paris, established in 2019 to carry out a real estate and hotel project in the 7th arrondissement of Paris.

3.  In 2004, Mr. McKillen, along with other investors, formed the Maybourne Group, which includes Maybourne Hotels Limited, a company incorporated under the laws of England and Wales, that acquired several major London hotels (the Connaught, Claridge's, and the Berkeley). This company, which is not a party to the case, is responsible for the centralized management of these establishments.

**Exhibit E**
**Page 260**

LPS20752232

PARIS ECONOMIC AFFAIRS COURT                                                RG NO.: 2024031830
JUDGMENT OF THURSDAY 10/09/2025
CHAMBER 1-8                                                                        CS- PAGE 2

4.  In 2012–2013, Maybourne encountered financial difficulties, and in 2015, Séléné took control of Maybourne Hotels Limited by purchasing all of Mr. McKillen's shares; In addition, Séléné granted Mr. Mc Killen a loan of $50 million and entered into a management agreement with him covering the aforementioned London hotels, reserving for Mr. Mc Killen a future price supplement based on changes in the value of the hotels that he was to renovate and operate. Mr. McKillen and Mr. Cunningham served on the board of directors of Maybourne Hotels Limited until April 2022.

5.  In 2019, Constellation Paris purchased the former Ministry of Defense building in Paris's 7th arrondissement, on Boulevard Saint-Germain, with the intention of opening a luxury hotel there; this project will be known as the "Saint-Germain Project"; Constellation Paris states that it has engaged Gleeds France, which is not a party to this case, as project management consultant; a specialized division of the VINCI Group, which is not a party to this case, as real estate developer; in addition to an architect, the firm COS, which is not a party to this case; and a consultant, the firm JLL, which is not a party to this case.

6.  On September 16, 2021, HSMC, in a letter from Mr. Mc Killen, offered its services to Constellation Paris as a project management assistant, for a fee of 2 million euros per quarter; On September 28, 2021, Constellation Paris rejected this proposal, and on October 1, 2021, HSMC, through a letter from Mr. Cunningham, renewed its offer of services, to no avail, and made financial demands.

7.  Starting in late 2021, relations between the companies affiliated with HBJ and Mr. McKillen became strained over the determination of the additional payment due to Mr. McKillen in connection with the 2015 purchase of shares in Maybourne Hotels Limited.

8.  In early April 2022, Mr. McKillen and Mr. Cunningham were removed from the board of directors of Maybourne Hotels Limited, and HSMC initiated several legal proceedings against both Maybourne Hotels Limited and other companies within the HBJ group in various jurisdictions, including England and Wales and the United States of America.

9.  On June 16, 2023, HSMC, alleging that Mr. McKillen worked on the "Saint Germain project" without receiving any compensation or reimbursement, filed a motion with the presiding judge of the Paris Commercial Court seeking injunctive relief, which, according to the company, aims to "confirm the direct involvement of H.E. Sheikh Hamad bin Jassim bin Jaber Al Thani in the Saint-Germain project and, in particular, in the refusal to pay the sums owed by Constellation France to HSMC in this regard, to establish the bad faith of the prospective defendants, and to supplement the evidence demonstrating the contractual nature of the relationship established between HSMC and the project owner, Constellation France, as well as the amount of the sums owed to it".

10. By order dated June 23, 2023, under case number RG 2023035359, the presiding judge of the Paris Commercial Court dismissed this motion, and HSMC filed an informal appeal against this decision.

11. By order dated July 28, 2023, No. RG 2023035359-1, the presiding judge of the Paris Commercial Court authorized preliminary investigative measures in respect of Constellation Paris; he found that there was a legitimate basis for seeking additional evidence of HSMC's involvement in the Saint-Germain project but that, conversely, the petitioner had provided no grounds for bringing an action against HBJ. Investigative measures were authorized at the headquarters of Constellation Paris, as well as at its offices and those of Vinci Immobilier. They encountered resistance from the people they met, as reported by the judicial officer.

**Exhibit E
Page 261**

PARIS ECONOMIC AFFAIRS COURT                                          RG NO.: 2024031830
JUDGMENT OF THURSDAY 10/09/2025
CHAMBER 1-8                                                           CS- PAGE 3

12. By a petition filed on October 13, 2023, Constellation Paris brought an action against HSMC before the judge presiding over summary proceedings at the Paris Judicial Court seeking, in particular: "to set aside the judge's order of July 28, 2023; order the bailiff to return all documents seized pursuant to the order of July 28, 2023, and placed under sequestration."

13. On the same day, HSMC filed a complaint against Constellation Paris with this court, seeking, among other things, an order requiring Constellation Paris to cooperate in the enforcement of the order dated July 28, 2023; this case was registered under case number RG 2023058288.

14. By order dated January 12, 2024, under case no. RG 2023058753, the presiding judge of the Paris Judicial Court, now the Paris Economic Activities Court, revoked their order of July 28, 2023, and ordered that the seizure remain in effect until the Paris Court of Appeals renders its decision, in the event of an appeal of the order.

15. On January 24, 2024, HSMC served a formal notice on Constellation Paris demanding payment of 24 million euros, which it claims corresponds to 12 quarters of consulting and support services provided in connection with the Saint Germain project. On March 2, 2024, Constellation Paris rejected this request.

16. On May 6, 2024, HSMC and Mr. McKillen filed a motion with the "United States District Court, C.D. California" with a non-adversarial motion, seeking, in the context of the litigation concerning Constellation Paris, on the one hand, a discovery order for the production of documents, and on the other hand, to compel HBJ to testify.

17. This proceeding, No. RG 2024031830, was initiated by a summons dated May 17, 2024, and HSMC has claimed at least 24 million euros from Constellation Paris.

18. In its ruling of May 30, 2024, under No. 24/01820, the Paris Court of Appeal upheld the order of January 12, 2024, No. RG 2023058753. On June 19, 2024, HSMC filed an appeal to the Court of Cassation against this ruling; it submitted its brief in support of the appeal, and Constellation Paris filed a reply. The case is listed under case numbers 24-16.669 and 24-16.670;

19. On August 5, 2024, the United States District Court for the Central District of California granted the motion filed by HSMC and Mr. McKillen, who, having been unable to serve the decision on HBJ, filed a new motion on September 25, 2024, seeking authorization to serve the document via email; As HBJ objected, the California court denied this motion; the proceedings continue before the United States District Court, C.D. California, which held a hearing on the case on January 31, 2025, before adjourning it to a date not yet known.

20. Finally, in connection with the claim it asserts against Constellation Paris, HSMC requested and obtained from the enforcement judge of the Paris Judicial Court three provisional attachments: by motion dated July 25, 2024, resulting in an order dated July 26, 2024, in the amount of 20 million euros, which Constellation Paris opposed on September 23, 2024, seeking its release; then by a motion dated October 14, 2024, granted on the same day, in the amount of €16,025,847.92, resulting in two provisional attachments on October 17 and 29, 2024.

21. Constellation Paris filed a lawsuit against HSMC on November 8, 2024, seeking the release of these three provisional attachments, but the judge presiding over preliminary matters at the Paris Judicial Court dismissed the request on February 12, 2025, pending a decision by the trial judge.

22. Constellation Paris appealed this decision on February 14, 2025, and as of the date of the hearing, the case is pending before the Paris Court of Appeals.

23. In addition, HSMC has initiated further legal proceedings against entities affiliated with HBJ, notably in France (against Mr. Landrin and Mr. Bakhos, respectively the CFO and chairman of Constellation Paris), in the United Kingdom, and in the United States.

LPS20752232

**Exhibit E**
**Page 262**

PARIS ECONOMIC AFFAIRS COURT                                      RG No.: 2024031830
JUDGMENT OF THURSDAY 10/09/2025
CHAMBER 1-8                                                       CS- PAGE 4

24. In this case, the defendant, Constellation Paris, filed its statement of defense on October 23, 2024; then, at the hearing on January 29, 2025, HSMC - following an order to file its brief at the pretrial hearing on December 4, 2024 - first requested a stay of proceedings pending the decisions of the Court of Cassation and the California court; it reiterated this request on February 26, April 9, and July 2, 2025.

25. At the hearing on February 26, 2025, Constellation Paris objected to the stay of proceedings, arguing that HSMC's motion should be dismissed as inadmissible or, alternatively, denied; it reiterated this position on May 21, 2025, requesting in any event that all of HSMC's motions be denied.

26. The payment of the price adjustment related to Séléné's purchase of Mr. McKillen's shares in Maybourne Hotels Limited is the subject of arbitration proceedings in London, which were still ongoing as of the date of the hearing, and the outcome of which is unknown.

27. This is the state of the proceedings.

**<u>Proceedings</u>**

28. By a non-judicial document dated May 17, 2024, served on Constellation Paris, a legal entity, HSMC is suing the company and requesting that the court:

*Pursuant to Articles 1113 and 1165 of the Code of Civil Procedure,*
- ORDER Constellation Paris to pay HSMC the sum of 24,000,000 euros, subject to further clarification;
- ORDER Constellation Paris to pay HSMC 25,000 euros pursuant to Article 700 of the Code of Civil Procedure, subject to adjustment, as well as all costs.

29. Then, at the hearing on July 2, 2025, they ask the court to:

*Pursuant to Articles 377 et seq. of the Code of Civil Procedure,*
- SUSPEND THE PROCEEDINGS pending the final outcome of the proceedings relating to the investigative measures requested by HSMC, currently pending before the Court of Cassation under case numbers 24-16.669 and 24-16.670;
- SUSPEND THE PROCEEDINGS pending the final outcome of the "Article 1782" proceeding pending before the United States District Court for the Central District of California, under case number 2:24-mc-00062-JFW-PD;
- RESERVE the costs.

30. At the hearing on May 21, 2025, Constellation Paris requests that the court:

*Pursuant to Articles 73, 74, and 378 of the Code of Civil Procedure,*
*Pursuant to Articles 1240 and 1353 of the Civil Code,*
*Pursuant to Article 32-1 of the Code of Civil Procedure,*
Primarily,
- DECLARE INADMISSIBLE the motion for a stay of proceedings filed by Hume Street Management Consultants Limited,
Subsidiarily,
- DENY the request for a stay of proceedings filed by Hume Street Management Consultants Limited,
In any event,

**Exhibit E**
**Page 263**

LPS20752232

PARIS ECONOMIC AFFAIRS COURT                                                    RG NO.: 2024031830
JUDGMENT OF THURSDAY 10/09/2025
CHAMBER 1-8                                                                     CS- PAGE 5

- DISMISS all claims brought by Hume Street Management Consultants Limited,
- ORDER Hume Street Management Consultants Limited to pay Constellation Paris the sum of 300,000 euros in damages for abusive litigation,
- ORDER Hume Street Management Consultants Limited to pay Constellation Paris the sum of 75,000 euros pursuant to Article 700 of the CPC,
- ORDER Hume Street Management Consultants Limited to pay all costs.

31.  The parties, having been duly summoned to the hearing on September 17, 2025, regarding the stay of proceedings, are represented by their counsel; after hearing their explanations and observations, the judge presiding over the case closes the proceedings, reserves judgment, and states that the judgment will be rendered by its filing with the court clerk's office on October 9, 2025, of which the parties have been notified pursuant to Article 450, paragraph 2, of the Code of Civil Procedure.

**Means of the parties**

32.  After reviewing all the arguments and evidence presented by the parties in their briefs, the court will summarize them briefly as follows. They will be developed further as they are discussed.

33.  HSMC, the petitioner for a stay of proceedings and the plaintiff in the main action, argues that:
- There is no statute or case law that precludes a plaintiff from seeking a stay of proceedings during the course of the proceedings;
- The subject matter of the dispute is HSMC's claim for payment against Constellation Paris, which, according to HSMC, owes it the sum of 24 million euros (to be finalized);
- HSMC has initiated several legal proceedings, both in France, where a case has been brought before the Paris Court of Appeal, and in the United States, in order to obtain the evidence necessary to support its claims;
- HSMC was not aware of the Paris Court of Appeal's decision as of the date of the summons, May 17, 2024, and the Paris Court of Appeal did not issue its rulings until May 30, 2024; the case was appealed to the Court of Cassation in June 2024;
- Similarly, as of the date of the summons, HSMC was unaware of the California court's decision, which was not issued until August 5, 2024; the related proceedings are ongoing;
- The likelihood of success or failure in the main proceedings must not influence the decision to grant a stay; conversely, the evidence sought by HSMC carries decisive weight in this proceeding;
- The time taken for both procedures is not manifestly excessive;
- The requested measure does not impede the proper administration of justice;

34.  As the defendant in the motion to stay proceedings and in the main action, Constellation Paris argues that:
- HSMC cannot seek a stay of proceedings, which is a procedural exception, because it failed to file such a motion *in limine litis*;
- As of the date of the summons, HSMC knew that the Paris Court of Appeal's decision might go against it; it could have reserved its rights at that time but did not do so;

**Exhibit E
Page 264**

LPS20752232

PARIS ECONOMIC AFFAIRS COURT                                          RG NO.: 2024031830
JUDGMENT OF THURSDAY 10/09/2025
CHAMBER 1-8                                                           CS- PAGE 6

- As of the date of the summons, HSMC had already initiated the U.S. proceedings, the outcome of which was unknown; it could have reserved its rights at that time but did not do so;
- HSMC does not provide a justification for the delay in its request;
- The documents at issue in the pending case before the Court of Cassation are not relevant to the proceedings on the merits: HSMC already has a large number of documents, sufficient to support its claims;
- The U.S. discovery proceedings are intended to artificially involve HBJ in a dispute that, in France, concerns only Constellation Paris (as has been ruled); they are therefore unrelated to the present proceedings, and the corresponding claim is without merit;
- The motion to stay the proceedings merely delays a case that should be resolved as soon as possible;
- In substance, the motion to stay the proceedings concerns documents that would purportedly substantiate a quasi-contract whose existence is explicitly denied in the complaint; this contradiction must be noted; HSMC did not participate in the "Saint-Germain project"; if there was any involvement - which remains to be proven - it was on the part of Maybourne Hotels Limited;
- This baseless lawsuit, which is part of a legal battle between Mr. McKillen and the HBJ entities, is abusive and must be sanctioned;


ON THIS

35. The Code of Civil Procedure provides that,
   - In Article 56: *"The summons must, on pain of nullity, in addition to the information required for bailiff's documents and that set forth in Article 54: 1. The place, date, and time of the hearing at which the case will be called; 2. A statement of the facts and legal grounds; 3. A list of the documents on which the petition is based, set forth in a schedule attached thereto; 4. A statement of the procedures for appearing before the court and a warning that, if the defendant fails to appear, he or she risks having a judgment rendered against him or her based solely on the evidence provided by the opposing party. The summons also specifies, if applicable, the designated chamber. It constitutes pleadings.",*
   - In Article 73: *"Any motion seeking either to have the proceedings declared invalid or terminated, or to have them stayed, constitutes a procedural objection."*
   - In Article 74: *"Objections must, on pain of being deemed inadmissible, be raised simultaneously and prior to any defense on the merits or motion to dismiss. This is the case even though the rules invoked in support of the objection are matters of public policy. A request for the production of documents does not render the objections inadmissible."*

36. The court notes that the summons dated May 17, 2024, provides a detailed account of the various disputes between the parties, as well as the legal actions brought against HBJ by Mr. McKillen in France and in various jurisdictions; it merely states, in the body of the summons, regarding the two judgments cited here: *"These two cases are pending before the Paris Court of Appeal, having been heard at the hearing on April 25, 2024; the judgments will be handed down on May 30, 2024,"* without requesting, in its operative part, a stay of proceedings;

37. The summons makes no mention of the proceedings initiated on May 6, 2024 (11 days prior to the summons) before the United States District Court of California, which HSMC states it could not disclose at the time because they are non-adversarial and confidential; the court notes that in its order RG 2023035539-1, the presiding judge stated that *"with regard to Mr. Hamad Bin Jassim bin Jaber al Thani, the*

**Exhibit E**
**Page 265**

LPS20752232

PARIS ECONOMIC AFFAIRS COURT

JUDGMENT OF THURSDAY 10/09/2025

CHAMBER 1-8

RG NO.: 2024031830

CS- PAGE 7

*plaintiff provides no evidence to support a legal action against him; therefore, there is no basis to revoke the order on this point*"; the court finds them irrelevant to the present dispute between Constellation Paris and HSMC;

38.  Since the complaint sets forth claims on the merits without a motion to stay proceedings, the court will declare HSMC's motion to stay proceedings inadmissible and will direct the parties to prepare their arguments on the merits for the pretrial conference on November 5, 2025;

### On Article 700 CPC and the costs

39.  In order to assert its rights, Constellation Paris was required to incur expenses not included in the costs of the proceedings; consequently, the court will order HSMC to pay Constellation Paris the sum of 50,000 euros pursuant to Article 700 of the Code of Civil Procedure, and will dismiss the remainder of the claim;

### On these grounds,

40.  The court, ruling at first instance by an adversarial judgment,

- Dismisses as inadmissible the motion for a stay of proceedings filed by HUME STREET MANAGEMENT CONSULTANTS LIMITED, a company incorporated under Irish law,
- Orders the parties to submit their arguments on the merits by the pretrial hearing of Chamber 1-8 on November 5, 2025, at 2:00 p.m.,
- Orders HUME STREET MANAGEMENT
- CONSULTANTS LIMITED, a company incorporated under Irish law, to pay SAS CONSTELLATION PARIS the
- sum of 50,000 euros pursuant to Article 700 of the CPC,
- Orders HUME STREET MANAGEMENT CONSULTANTS LIMITED, a company incorporated under Irish law, to pay the full costs, including those to be recovered by the clerk's office, in the amount of €58.50, of which €9.54 is VAT.

Pursuant to the provisions of Article 871 of the Code of Civil Procedure, the case was heard on September 17, 2025, in open court, before Mr. Olivier Brossollet, the judge in charge of the case, as the parties' representatives did not object.

This judge summarized the arguments in the court's deliberations, which were conducted by: Mr. Olivier Brossollet, Ms. Fabienne Lederer, and Ms. Isabelle Reux-Brown

Decided on September 24, 2025, by the same judges.

Declares that this judgment is rendered by its availability at the clerk's office of this court, the parties having been previously notified during the proceedings under the conditions provided for in the second paragraph of Article 450 of the Code of Civil Procedure.

The judgment is signed by Mr. Olivier Brossollet, presiding over the deliberations, and Ms. Catherine Soyez, court clerk.

The clerk                                                                 The president

Signed electronically by

Ms. Catherine Soyez

Signed electronically by

Mr. Olivier Brossollet

LPS20752232

**Exhibit E**
**Page 266**

Copie exécutoire : Herné Pierre
Copie aux demandeurs : 2
Copie aux défendeurs : 2

**REPUBLIQUE FRANCAISE**

**AU NOM DU PEUPLE FRANCAIS**

**TRIBUNAL DES ACTIVITES ECONOMIQUES DE PARIS**

**CHAMBRE 1-8**

**JUGEMENT PRONONCE LE 09/10/2025
par sa mise à disposition au Greffe**

RG 2024031830

ENTRE :
Société de droit Irlandais HUME STREET MANAGEMENT CONSULTANTS LIMITED, dont le siège social est 15, Hume Street, D02C678, Dublin 2, Irlande élisant domicile au Cabinet ABPA – 7 rue Gustave Flaubert 75017 Paris
Partie demanderesse : assistée de Maîtres Michaël BENDAVID et David APELBAUM du cabinet ABPA - APELBAUM BENDAVID POINCLOUX ASSOCIES AARPI - Avocat (R258) et comparant par Me DELAY-PEUCH Nicole Avocat (A377)

ET :
SAS CONSTELLATION PARIS, dont le siège social est Place André Malraux, 75001 Paris - RCS B 850286451
Partie défenderesse : assistée de Maîtres Pierre PIC et Gonzague D'AUBIGNY de la SELAS TEYNIER PIC Avocats (J053) et comparant par Me HERNE Pierre Avocat (B835)

**APRES EN AVOIR DELIBERE**

**Les faits –Objet du litige**

1. M. Patrick Mc Killen, de nationalité irlandaise, est un promoteur immobilier et gestionnaire d'hôtels de luxe. La société de droit irlandais Hume Management Consultants Limited (ci-après HSMC) est une des sociétés qu'il contrôle et dirige et qui collecte ses honoraires. M. Mc Killen s'appuie notamment sur un collaborateur de longue date, M. Liam Cunningham, de nationalité irlandaise, ainsi que sur sa secrétaire particulière, Mme Annemarie Ryan, de nationalité irlandaise.
2. S. E. Sheikh Hamad bin Jassim bin Jaber Al Thani (ci-après « HBJ »), qui n'est pas dans la cause, est un membre de la famille princière du Qatar, ministre des Affaires étrangères de 1992 à 2013 et Premier ministre du Qatar du 3 avril 2007 au 26 juin 2013. Il contrôle notamment la société de droit luxembourgeois Séléné, qui n'est pas dans la cause, et, indirectement, la société de droit luxembourgeois Constellation Hotels Holding Ltd SCA, qui possède d'autres hôtels en France au travers de sociétés ad hoc détenues par une société holding Constellation Hotels France, dont la société Constellation Paris, crée en 2019 pour mener à bien un projet immobilier et hôtelier à Paris 7e.
3. En 2004, M. Mc Killen a constitué, avec d'autres investisseurs, le groupe Maybourne, dont la société Maybourne Hotels Limited, société de droit d'Angleterre et du Pays de Galles, qui a fait l'acquisition de plusieurs grands hôtels londoniens (le Connaught, le Claridge's et le Berkeley). Cette société, qui n'est pas dans la cause, assure la gestion centralisée de ces établissements.

**Exhibit E
Page 267**

TRIBUNAL DES ACTIVITES ECONOMIQUES DE PARIS
JUGEMENT DU JEUDI 09/10/2025
CHAMBRE 1-8

N° RG : 2024031830

CS - PAGE 2

4.  En 2012/3, la société Maybourne a rencontré des difficultés financières, et en 2015, la société Séléné a pris le contrôle de la société Maybourne Hotels Limited en achetant la totalité des parts de M. Mc Killen ; en outre, la société Séléné a consenti à M. Mc Killen un prêt de 50 millions USD, et a conclu avec lui un contrat de gestion portant sur les hôtels londoniens déjà cités, et réservant à M. Mc Killen un complément de prix à venir en fonction de l'évolution de la valeur des hôtels que ce dernier allait rénover et exploiter. MM. Mc Killen et Cunningham ont siégé au « board » (conseil d'administration) de la société Maybourne Hotels Limited jusqu'à avril 2022.

5.  En 2019, Constellation Paris a acheté les locaux de l'ancien ministère de la Défense à Paris 7e, boulevard Saint-Germain, avec l'intention d'y ouvrir un hôtel de luxe ; cette opération sera dénommée « projet Saint-Germain » ; Constellation Paris dit avoir pris comme AMO-Assistant Maîtrise d'ouvrage la société Gleeds France, qui n'est pas dans la cause, comme promoteur immobilier un département spécialisé du groupe VINCI, qui n'est pas dans la cause, outre un architecte, le cabinet COS, qui n'est pas dans la cause, et un consultant, le cabinet JLL, qui n'est pas dans la cause.

6.  Le 16 septembre 2021, la société HSMC, sous la plume de M. Mc Killen, a proposé ses services à Constellation Paris comme assistant à la maîtrise d'ouvrage, moyennant une rémunération de 2 millions d'euros par trimestre ; le 28 septembre 2021, Constellation Paris a rejeté cette proposition, et le 1er octobre 2021, la société HSMC – sous la plume de M. Cunningham – a renouvelé son offre de services, en vain, et formé des demandes pécuniaires.

7.  A compter de la fin 2021, les relations anciennes entre les sociétés de la mouvance d'HBJ et M. McKillen se sont tendues, autour de la fixation du complément de prix revenant à ce dernier dans le cadre de l'achat des titres de Maybourne Hotels Limited en 2015.

8.  Début avril 2022, MM. Mc Killen et Cunningham ont été révoqués du « board » (conseil d'administration) de Maybourne Hotels Limited, et la société HSMC a engagé plusieurs litiges tant contre Maybourne Hotels Limited que d'autres sociétés relevant de HBJ, et ce devant diverses juridictions, notamment d'Angleterre et du Pays de Galles, et des États-Unis d'Amérique.

9.  Le 16 juin 2023, la société HSMC, alléguant que M. Mc Killen a travaillé pour le « projet Saint Germain », sans être rémunéré ni défrayé, a déposé une requête devant le président du tribunal de commerce de Paris pour l'exécution de mesures *in futurum*, visant, selon elle, à « *confirmer l'implication directe de S. E. Sheikh Hamad bin Jassim bin Jaber Al Thani dans le projet Saint-Germain et notamment dans le refus de payer les sommes dues par la société Constellation France à la société HSMC à cet égard, à établir la mauvaise foi des défendeurs pressentis et compléter les éléments démontrant le caractère contractuel des relations qui se sont nouées entre la société HSMC et le maître de l'ouvrage, la société Constellation France, ainsi que le montant des sommes qui lui sont dues.* ».

10. Par ordonnance rendue le 23 juin 2023 sous le n°RG 2023035359, le président du tribunal de commerce de Paris a rejeté cette requête, et la société HSMC a interjeté appel gracieux contre cette décision.

11. Par ordonnance du 28 juillet 2023 n°RG 2023035359-1, le président du tribunal de commerce de Paris a autorisé des mesures d'instruction *in futurum* en ce qui concerne la société Constellation Paris ; il a retenu qu'il existait un motif légitime pour rechercher des preuves supplémentaires de l'implication de la société HSMC dans le projet Saint-Germain mais qu'en revanche, le requérant ne donnait aucun élément permettant de fonder une action contre HBJ. Les mesures d'instruction ont été autorisées au siège social de la société Constellation Paris ainsi que dans ses bureaux et ceux de la société Vinci Immobilier. Elles se sont heurtées à des résistances de la part des personnes rencontrées, dont le commissaire de justice a rendu compte.

**Exhibit E**
**Page 268**

LPS20752232

12. Par acte du 13 octobre 2023, la société Constellation Paris a assigné la société HSMC devant le juge des référés du tribunal de commerce de Paris aux fins de, notamment : « *rétracter son ordonnance du 28 juillet 2023 ; ordonner la restitution par l'huissier de l'ensemble des pièces saisies en application de l'ordonnance du 28 juillet 2023 et placés sous séquestre.* ».

13. Le même jour, la société HSMC a assigné la société Constellation Paris devant ce tribunal afin, notamment de lui enjoindre de coopérer à l'exécution de l'ordonnance du 28 juillet 2023 ; cette instance a été enrôlée sous le n°RG 2023058288.

14. Par ordonnance du 12 janvier 2024, sous le n°RG 2023058753, le président du tribunal de commerce de Paris – devenu Tribunal des activités économiques de Paris - a rétracté son ordonnance du 28 juillet 2023 et ordonné le maintien du séquestre jusqu'à la décision de la cour d'appel de Paris, en cas d'appel de l'ordonnance.

15. Le 24 janvier 2024, la société HSMC a mis en demeure la société Constellation Paris de lui régler la somme de 24 millions d'euros, correspondant, selon elle, à la facturation de 12 trimestres de conseil et d'assistance dans le cadre du projet Saint Germain. Le 02 mars 2024, la société Constellation Paris a rejeté cette demande.

16. Le 06 mai 2024, la société HSMC et M. Mc Killen ont saisi la « United States District Court, C.D. California » (tribunal de district des États-Unis pour le district central de Californie) par une mesure non contradictoire, afin d'obtenir, dans le cadre du litige concernant la société Constellation Paris, d'une part, une mesure d'instruction de saisie de documents, et d'autre part de contraindre HBJ à témoigner.

17. La présente instance n°RG 2024031830 a été engagée par assignation du 17 mai 2024, et HSMC a réclamé à la société Constellation Paris la somme de 24 millions d'euros a minima.

18. Par arrêt du 30 mai 2024 sous le n°24/01820, la Cour d'appel de Paris a confirmé l'ordonnance du 12 janvier 2024 n° RG 2023058753. Le 19 juin 2024, la société HSMC s'est pourvue en cassation contre cet arrêt ; elle a déposé son mémoire ampliatif et Constellation Paris y a répliqué. L'affaire est enrôlée sous le numéro 24-16.669 et sous le numéro 24-16.670 ;

19. Le 5 août 2024, la « United States District Court, C.D. California » a fait droit à la demande de HSMC et M. Mc Killen, qui, n'étant pas parvenus à signifier la décision à HBJ, ont introduit le 25 septembre 2024 une nouvelle demande afin d'être autorisés à signifier par courriel ; HBJ ayant fait opposition, la juridiction californienne a rejeté cette demande ; l'instance se poursuit devant la « United States District Court, C.D. California », qui avait audiencé l'affaire au 31 janvier 2025, avant de la renvoyer à une date non encore connue.

20. Enfin, au titre de la créance qu'elle prétend sur la société Constellation Paris, HSMC a demandé et obtenu du juge de l'exécution du tribunal judiciaire de Paris trois saisies conservatoires : par requête du 25 juillet 2024, donnant lieu à une ordonnance du 26 juillet 2024, à hauteur de 20 millions d'euros, à laquelle la société Constellation Paris a fait opposition le 23 septembre 2024 en réclamant mainlevée ; puis par requête du 14 octobre 2024, satisfaite le même jour, à hauteur de 16 025 847,92 euros, donnant lieu à deux saisies conservatoires des 17 et 29 octobre 2024.

21. La société Constellation Paris a assigné la société HSMC le 8 novembre 2024 afin d'obtenir mainlevée de ces 3 saisies conservatoires, mais le JEX près le tribunal judiciaire de Paris a rejeté sa demande le 12 février 2025, dans l'attente d'une décision du juge du fond.

22. La société Constellation Paris a fait appel de cette décision le 14 février 2025, et l'affaire est, à la date de l'audience, pendante devant la cour d'appel de Paris.

23. Par ailleurs, HSMC a engagé d'autres procédures contre des entités liées à HBJ, notamment en France (contre MM. Landrin et Bakhos, respectivement directeur financier et président de Constellation Paris), au Royaume-Uni et aux États-Unis.

**Exhibit E
Page 269**

LPS20752232

TRIBUNAL DES ACTIVITES ECONOMIQUES DE PARIS                    N° RG : 2024031830
JUGEMENT DU JEUDI 09/10/2025
CHAMBRE 1-8                                                               CS - PAGE 4

24. Dans la présente instance, la société Constellation Paris, défendeur, a conclu au fond le 23 octobre 2024 ; puis, à l'audience du 29 janvier 2025, la société HSMC – à la suite d'une injonction de conclure à l'audience de mise en état du 04 décembre 2024 – a sollicité une première fois le sursis à statuer dans l'attente des décisions de la Cour de cassation et de la juridiction californienne ; elle a réitéré cette demande les 26 février, 09 avril et 02 juillet 2025.

25. La société Constellation Paris s'est opposée au sursis à statuer à l'audience du 26 février 2025, en demandant l'irrecevabilité ou subsidiairement le rejet de cette demande de HSMC, ce qu'elle a réitéré le 21 mai 2025, demandant en tout état de cause le rejet de l'ensemble des demandes de la société HSMC.

26. Le règlement du complément de prix correspondant à l'achat par la société Séléné des parts de M. Mc Killen dans la société Maybourne Hotels Limited fait l'objet d'une procédure d'arbitrage à Londres, toujours en cours à la date de l'audience, et dont l'issue n'est pas connue.

27. C'est dans ces conditions que se trouve l'instance.

**Procédure**

28. Par acte extrajudiciaire du 17 mai 2024, signifié à la société Constellation Paris, à personne morale, HSMC l'assigne et demande au tribunal de :

*Vu les articles 1113 et 1165 du Code de procédure civile,*
- CONDAMNER Constellation Paris à verser à HSMC la somme de 24 000 000 euros, sauf à parfaire ;
- CONDAMNER Constellation Paris à verser 25 000 euros à HSMC au titre de l'article 700 du code de procédure civile, sauf à parfaire, ainsi qu'aux entiers dépens.

29. Puis, à l'audience du 02 juillet 2025, elle demande au tribunal de :

*Vu les articles 377 et suivants du code de procédure civile,*
- SURSEOIR À STATUER dans l'attente de l'issue définitive des procédures afférentes aux mesures d'instruction sollicitées par HSMC, actuellement pendantes devant la Cour de cassation sous le numéro 24-16.669 et sous le numéro 24-16.670 ;
- SURSEOIR À STATUER dans l'attente de l'issue définitive de la procédure " Article 1782 " pendante devant United States District Court for the Central District of California, sous le numéro 2:24-mc-00062-JFW-PD ;
- RESERVER les dépens.

30. A l'audience du 21 mai 2025, la société Constellation Paris demande au tribunal de :

*Vu les articles 73, 74 et 378 du Code de procédure civile,*
*Vu les articles 1240 et 1353 du Code civil,*
*Vu l'article 32-1 du Code de procédure civile,*
A titre principal,
- DECLARER IRRECEVABLE la demande de sursis à statuer de la société Hume Street Management Consultants Limited,
A titre subsidiaire,
- REJETER la demande de sursis à statuer de la société Hume Street Management Consultants Limited,
En tout état de cause,

**Exhibit E**
**Page 270**

LPS20752232

- DEBOUTER la société Hume Street Management Consultants Limited de toutes ses demandes,
- CONDAMNER la société Hume Street Management Consultants Limited à verser à la société Constellation Paris la somme de 300 000 euros au titre de dommages-intérêts pour procédure abusive,
- CONDAMNER la société Hume Street Management Consultants Limited à verser à la société Constellation Paris la somme de 75 000 euros en application de l'article 700 du CPC,
- CONDAMNER la société Hume Street Management Consultants Limited aux entiers dépens.

31. Les parties régulièrement convoquées à l'audience du 17 septembre 2025 sur le sursis à statuer sont présentes par leurs conseils ; après les avoir entendues en leurs explications et observations, le juge chargé d'instruire l'affaire clôt les débats, met l'affaire en délibéré et dit que le jugement sera prononcé par sa mise à disposition au greffe le 09 octobre 2025 ce dont les parties ont été avisées en application de l'article 450, alinéa 2 du code de procédure civile.

**Moyens des parties**

32. Après avoir pris connaissance de tous les moyens et arguments développés par les parties dans leurs écritures, le tribunal les résumera succinctement de la manière suivante. Ils seront plus amplement développés en même temps qu'ils seront discutés.

33. HSMC, demandeur au sursis à statuer et demandeur en principal, fait valoir que :
- Aucun texte, aucune jurisprudence ne s'opposent à l'introduction du SAS par un demandeur en cours de l'instance ;
- Le fond du litige est la demande en paiement de HSMC à l'encontre de Constellation Paris, qui, selon HSMC, lui est redevable de la somme de 24 millions d'euros (à parfaire) ;
- HSMC a engagé plusieurs procédures, tant en France – où une affaire a été portée devant la cour d'appel de Paris - qu'aux Etats-Unis, afin de disposer d'éléments de preuve indispensables au succès de ses prétentions ;
- HSMC ne connaissait pas la décision de la cour d'appel de Paris à la date de l'assignation, le 17 mai 2024, et la cour d'appel de Paris n'a rendu ses arrêts que le 30 mai 2024 ; le dossier a fait l'objet d'un pourvoi en cassation en juin 2024 ;
- De même, à date de l'assignation, HSMC ne connaissait pas la décision du tribunal californien, celle-ci n'étant intervenue que le 05 août 2024 ; la procédure correspondante se poursuit ;
- Les perspectives de succès ou d'échec de la procédure au fond ne doivent pas influer sur la décision de sursis ; a contrario, les preuves recherchées par HSMC ont un poids déterminant dans cette instance ;
- Les délais des deux procédures ne sont pas manifestement excessifs ;
- La mesure demandée ne fait pas obstacle à la bonne administration de la justice ;

34. Défendeur au sursis à statuer et en principal, Constellation Paris soutient que :
- HSMC ne peut solliciter le sursis à statuer, qui est une exception de procédure, faute d'avoir formé cette demande *in limine litis* ;
- A la date de l'assignation, HSMC savait que la décision de la cour d'appel de Paris pouvait lui être contraire ; elle pouvait réserver ses droits à cette occasion et ne l'a pas fait ;

**Exhibit E**
**Page 271**

LPS20752232

- A la date de l'assignation, HSMC avait déjà engagé la procédure états-unienne, dont la date de l'issue était inconnue ; elle pouvait réserver ses droits à cette occasion et ne l'a pas fait ;
- HSMC ne justifie pas la tardiveté de sa demande ;
- Les documents en cause dans le litige pendant devant la Cour de cassation ne sont pas utiles dans le cadre de la procédure au fond : HSMC dispose déjà de nombreuses pièces, suffisantes pour soutenir ses prétentions ;
- La procédure probatoire états-unienne vise à impliquer artificiellement HBJ dans un litige, qui, en France, ne concerne que la société Constellation Paris (ce qui a été statué) ; elle n'est donc pas liée avec la présente instance et la demande correspondante est sans fondement ;
- La demande de sursis à statuer ne fait que retarder une procédure qui devrait être tranchée au plus vite ;
- Sur le fond, la demande de sursis à statuer porte sur des pièces qui viendraient compléter un quasi-contrat dont l'assignation nie explicitement l'existence ; cette contradiction doit être relevée ; HSMC n'est pas intervenue dans le « projet Saint-Germain » ; s'il y a eu une intervention – ce qui reste à prouver – c'est par la société Maybourne Hotels Limited ;
- La présente procédure, non fondée et qui fait partie d'une guérilla judiciaire entre M. Mc Killen et les entités HBJ, est abusive et doit être sanctionnée ;

SUR CE

35. Le Code de procédure civile dispose,
- A l'article 56 : « *L'assignation contient à peine de nullité, outre les mentions prescrites pour les actes d'huissier de justice et celles énoncées à l'article 54 : 1° Les lieu, jour et heure de l'audience à laquelle l'affaire sera appelée ; 2° Un exposé des moyens en fait et en droit ; 3° La liste des pièces sur lesquelles la demande est fondée dans un bordereau qui lui est annexé ; 4° L'indication des modalités de comparution devant la juridiction et la précision que, faute pour le défendeur de comparaître, il s'expose à ce qu'un jugement soit rendu contre lui sur les seuls éléments fournis par son adversaire. L'assignation précise également, le cas échéant, la chambre désignée. Elle vaut conclusions.* »,
- A l'article 73 : « *Constitue une exception de procédure tout moyen qui tend soit à faire déclarer la procédure irrégulière ou éteinte, soit à en suspendre le cours.* »,
- A l'article 74 : « *Les exceptions doivent, à peine d'irrecevabilité, être soulevées simultanément et avant toute défense au fond ou fin de non-recevoir. Il en est ainsi alors même que les règles invoquées au soutien de l'exception seraient d'ordre public. La demande de communication de pièces ne constitue pas une cause d'irrecevabilité des exceptions.* »
36. Le tribunal relève que l'assignation du 17 mai 2024 décrit de manière circonstanciée différents contentieux qui opposent les parties, ainsi que la mise en cause de HBJ par M. Mc Killen en France et dans divers juridictions ; elle se borne à indiquer, dans le cours de l'assignation, au sujet des deux arrêts invoqués ici : « *Ces deux contentieux sont pendants devant la cour d'appel de Paris, ayant été plaidés à l'audience du 25 avril 2024 ; les arrêts seront rendus le 30 mai 2024.* », sans demander, dans son dispositif, de sursis à statuer ;
37. Il n'est pas fait mention dans l'assignation des procédures engagées le 06 mai 2024 (11 jours avant l'assignation) devant la United States District Court of California, dont HSMC dit qu'elle ne pouvait alors en faire état car elles sont non contradictoires et secrètes ; le tribunal relève que dans son ordonnance RG 2023035539-1, le président du tribunal a dit que « *que s'agissant de M. Hamad Bin Jassim bin Jaber al Thani, le*

**Exhibit E**
**Page 272**

LPS20752232

*requérant ne donne aucun élément permettant de fonder une action en justice contre lui ; qu'il n'y a donc pas lieu de rétracter l'ordonnance sur ce point* » ; le tribunal les dit non pertinentes au regard du présent litige entre Constellation Paris et HSMC ;

38. L'assignation présentant des demandes au fond, sans demande de sursis à statuer, le tribunal dira irrecevable la demande de sursis à statuer présentée par HSMC, et enjoindra aux parties de conclure au fond pour l'audience de mise en état du 5 novembre 2025 ;

**Sur l'article 700 CPC et les dépens**

39. Constellation Paris a dû, pour faire valoir ses droits, engager des frais non compris dans les dépens ; en conséquence le tribunal condamnera HSMC à lui payer la somme de 50 000 euros au titre de l'article 700 du Code de procédure civile, déboutant pour le surplus ;

**Par ces motifs,**

40. Le tribunal, statuant en premier ressort par jugement contradictoire,

- Dit irrecevable la demande de sursis à statuer de la Société de droit Irlandais HUME STREET MANAGEMENT CONSULTANTS LIMITED,
- Enjoint les parties de conclure au fond pour l'audience de mise en état de la chambre 1-8 du 5 novembre 2025 à 14 heures,
- Condamne la Société de droit Irlandais HUME STREET MANAGEMENT CONSULTANTS LIMITED à verser à la SAS CONSTELLATION PARIS la somme de 50 000 euros en application de l'article 700 du CPC,
- Condamne la Société de droit Irlandais HUME STREET MANAGEMENT CONSULTANTS LIMITED aux entiers dépens, dont ceux à recouvrer par le greffe, liquidés à la somme de 58,50 € dont 9,54 € de TVA.

En application des dispositions de l'article 871 du code de procédure civile, l'affaire a été débattue le 17 septembre 2025, en audience publique, devant M. Olivier Brossollet, juge chargé d'instruire l'affaire, les représentants des parties ne s'y étant pas opposés.
Ce juge a rendu compte des plaidoiries dans le délibéré du tribunal, composé de : M. Olivier Brossollet, Mme Fabienne Lederer et Mme Isabelle Reux-Brown
Délibéré le 24 septembre 2025 par les mêmes juges.
Dit que le présent jugement est prononcé par sa mise à disposition au greffe de ce tribunal, les parties en ayant été préalablement avisées lors des débats dans les conditions prévues au deuxième alinéa de l'article 450 du code de procédure civile.

La minute du jugement est signée par M. Olivier Brossollet, président du délibéré et par Mme Catherine Soyez, greffier.

Le greffier                                        Le président

LPS20752232